Page 2

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

0 6 - 6 6

| United States District Court | District | Delaware |
|---|---|---|

| Name (under which you were convicted): Andrew E. Warrington | Docket or Case No.: |
|---|---|

| Place of Confinement: Delaware Correctional Center | Prisoner No.: 00339043 |
|---|---|

Petitioner (include the name under which you were convicted)          Respondent (authorized person having custody of petitioner)

Andrew E. Warrington          v.          Warden Thomas Carrol

The Attorney General of the State of Delaware, Jane Brady

PETITION

JAN 31 2006

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
   Superior Court Of The State Of Delaware In and For
   Sussex County

   (b) Criminal docket or case number (if you know): ID No. 0008014979

2. (a) Date of the judgment of conviction (if you know): November 27, 2001

   (b) Date of sentencing: January 18, 2002

3. Length of sentence: Natural Life plus Twenty-Five years

4. In this case, were you convicted on more than one count or of more than one crime? Yes ☒ No ☐

5. Identify all crimes of which you were convicted and sentenced in this case:
   Murder 1st degree
   Possession of deadly weapon - Fireplace poker
   Conspiracy 1st degree

6. (a) What was your plea? (Check one)

   (1) Not guilty ☒          (3) Nolo contendere (no contest) ☐

   (2) Guilty ☐          (4) Insanity plea ☐

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury ☒    Judge only ☐

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

Yes ☒  No ☐

8. Did you appeal from the judgment of conviction?

Yes ☒  No ☐

9. If you did appeal, answer the following:

(a) Name of court:  Supreme Court Of The State OF Delaware

(b) Docket or case number (if you know):  No, 74, 2002

(c) Result:  Denied

(d) Date of result (if you know):  3-10-03

·(e) Citation to the case (if you know): _____

(f) Grounds raised:  Improper Jury Instructions

(g) Did you seek further review by a higher state court?   Yes ☐  No ☒

If yes, answer the following:

(1) Name of court:  N/A

(2) Docket or case number (if you know):  N/A

(3) Result:  N/A

(4) Date of result (if you know):  N/A

(5) Citation to the case (if you know):  N/A

(6) Grounds raised:  N/A

(h) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐  No ☒

If yes, answer the following:

(1) Docket or case number (if you know):  N/A

Page 4

(2) Result: __N/A__

(3) Date of result (if you know): ____N/A____
(4) Citation to the case (if you know): __N/A__

10. Other than the direct appeals listed above. have you previously filed any other petitions. applications. or motions concerning this judgment of conviction in any state court?

Yes ☒  No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: __Superior Court Of The State Of Delaware In and For Sussex County__
(2) Docket or case number (if you know): __ID No. 0008014979 (R-1)__
(3) Date of filing (if you know): __3-8-04__
(4) Nature of the proceeding: __Super. Ct. Cr. R. Rule 61 motion for Post-Conviction Relief__
(5) Grounds raised: __Ineffective assistance of counsel at the pre-trial__
__Stage, during opening arguments, at the trial stage, and__
__at the appeal stage.__
__Faulty Indictment and denied chance to testify at Grand Jury__
__Vindictive Prosecution__
__Conviction obtained by way of inadmissable evidence__
__Brady violations__
__Out of court statements__

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?   Yes ☒  No ☐
(7) Result: __Denied__
(8) Date of result (if you know): __1-6-05__

(b) If you filed any second petition, application, or motion, give the same information:
(1) Name of court: __N/A__
(2) Docket or case number (if you know): __N/A__
(3) Date of filing (if you know): __N/A__
(4) Nature of the proceeding: __N/A__
(5) Grounds raised: __N/A__

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition. application. or

motion?        Yes ❑   No ❑

(7) Result: __N/A__

(8) Date of result (if you know): __N/A__

(c) If you filed any third petition. application. or motion. give the same information:

(1) Name of court: __N/A__

(2) Docket or case number (if you know): __N/A__

(3) Date of filing (if you know): __N/A__

(4) Nature of the proceeding: __N/A__

(5) Grounds raised: __N/A__

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or

motion?        Yes ❑ No ❑

(7) Result: __N/A__

(8) Date of result (if you know): __N/A__

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your

petition, application, or motion?

(1) First petition:      Yes ☒  No ❑

(2) Second petition:    Yes ❑   No ❑

(3) Third petition:     Yes ❑   No ❑

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

__N/A__

_____

_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

<u>CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

GROUND ONE: _Denial of effective assistance of counsel_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
_The petitioner's Sixth Amendment rights were violated when counsel failed in his feduciary duty to investigate all avenues that would lead to his client's best interest. Counsel failed to file motions to sever, to change venue, and to suppress statements elicited while under the influence of narcotics. Counsel failed to investigate evidence that was improperly collected, and that would have supported the petitioners claim of self-defense. Counsel was ineffective for numerous other reasons, including at the appeal level._

(b) If you did not exhaust your state remedies on Ground One, explain why: __N/A__

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑  No ☒

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _The proper venue to raise this issue was at the Rule 61 post-conviction relief stage, which was where the petitioner first raised this issue_

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?    Yes ☒  No ❑

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _Super. Ct. Cr. R. Rule 61 motion for Post-Conviction Relief_

Name and location of the court where the motion or petition was filed: _In the Superior Court of The State Of Delaware In and For Sussex County_

Docket or case number (if you know): __I.D. No. 0008014979 (R-1)__

Date of the court's decision: __1-6-05__

Result (attach a copy of the court's opinion or order, if available): __Copy attached__

(3) Did you receive a hearing on your motion or petition?

    Yes ☒  No ☐

(4) Did you appeal from the denial of your motion or petition?

    Yes ☒  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☒  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: __In The Supreme Court of The State of Delaware__

Docket or case number (if you know): __No. 34, 2005__

Date of the court's decision: __January 24, 2006__

Result (attach a copy of the court's opinion or order, if available): __Affirmed__

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: __N/A__

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: __N/A__

GROUND TWO: __Faulty Grand-Jury indictment__

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The indictment was obtained through the use of improperly collected, as well as statements elicited from petitioner while under the influence of marijuana. The use of a 911 phone call tape (call made by Co-defendant) was enhanced" to emphasise portions intended to harm the petitioners claim.

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: __N/A__

_____

_____

(c) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction. did you raise this issue?

      Yes ❏  No ☒

    (2) If you did _not_ raise this issue in your direct appeal, explain why: __Counsel for trial__
__failed to investigate this avenue, and failed to respond to__
__petitioner's communication on this matter at the appeal stage.__

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

      Yes ☒  No ❏

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: __Super. Ct. Cr. R. Rule 61 motion for Post-Conviction Relief.__

    Name and location of the court where the motion or petition was filed: __In the Superior__
__Court of The State Of Delaware In and For Sussex County__

    Docket or case number (if you know): __I.D. No. 0008014979 (A-1)__

    Date of the court's decision: __1-6-05__

    Result (attach a copy of the court's opinion or order, if available): __Copy attached.__

_____

(3) Did you receive a hearing on your motion or petition?

    Yes ☒  No ❏

(4) Did you appeal from the denial of your motion or petition?

    Yes ☒  No ❏

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☒  No ❏

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: __In The Supreme Court__
__Of The State Of Delaware__

Page 9

Docket or case number (if you know): __No. 34, 2005__

Date of the court's decision: __January 24, 2006__

Result (attach a copy of the court's opinion or order, if available): __Affirmed__

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this
issue: __N/A__

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative
remedies, etc.) that you have used to exhaust your state remedies on Ground Two: __N/A__

GROUND THREE: __The prosecution was vindictive in nature.__

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
__The prosecution utilized the event as a means to convict two__
__young men who at one time were drug dealers. The prosecution__
__had full knowledge that the petitioner acted in defense of his__
__self, his family, in his own home and that the petitioner's co-defendant__
__called 911 for help. Despite this knowledge, the prosecution claimed__
__homocide and that the deceased made the call in question__

(b) If you did not exhaust your state remedies on Ground Three, explain why: __N/A__

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑  No ☒

(2) If you did not raise this issue in your direct appeal, explain why: __Appelant counsel__
__failed to respond to petitioner's communication on this matter.__

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?          Yes ☒  No ☐

(2) If your answer to Question (d)(1) is "Yes." state:

Type of motion or petition: _Super. Ct. Cr. R. Rule 61 motion for Post-Conviction Relief_

Name and location of the court where the motion or petition was filed: _In the Superior Court Of The State Of Delaware In and For Sussex County_

Docket or case number (if you know): _I.D. No. 0008014979 (R-1)_

Date of the court's decision: _1-6-05_

Result (attach a copy of the court's opinion or order, if available): _Copy attached_

_____

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☒  No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☒  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _In The Supreme Court Of The State Of Delaware_

Docket or case number (if you know): _No. 34, 2005_

Date of the court's decision: _January 24, 2006_

Result (attach a copy of the court's opinion or order, if available): _Affirmed_

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _N/A_

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _N/A_

_____

_____

GROUND FOUR: _The Conviction was obtained by way of inadmissable evidence_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
_The conviction was obtained through the use of testimony from an uncertified "expert" witness, through the use of a statement elicited from the petitioner while under the influence of narcotics, and through the use of improperly collected evidence._

(b) If you did not exhaust your state remedies on Ground Four, explain why: __N/A__

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why: _Appelant counsel failed to respond to petitioner's communication on this matter._

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?    Yes ☒ No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _Super. Ct. Cr. R. Rule 61 motion for Post-Conviction Relief_

Name and location of the court where the motion or petition was filed: _In The Superior Court Of The State Of Delaware In and For Sussex County_

Docket or case number (if you know): _I.D. No. 0008014979 (R-1)_

Date of the court's decision: _1-6-05_

Result (attach a copy of the court's opinion or order, if available): _Copy attached_

(3) Did you receive a hearing on your motion or petition?

Yes ☒   No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☒   No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒ No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _In The Supreme Court Of The State Of Delaware_

Docket or case number (if you know): _No. 34, 2005_

Date of the court's decision: _January 24, 2006_

Result (attach a copy of the court's opinion or order, if available): _Affirmed_

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _N/A_

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _N/A_

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?        Yes ☒ No ☐

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _No_

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?        Yes ☐ No ☒

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND Five   Insufficient evidence to support conviction

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The evidence supported the petitioner's claim of self-defense. The prosecution claimed that the petitioner intended to kill the deceased and that the deceased called 911 after entering the petitioner's home uninvited and unexpected, and during the course of events, used a phone with actively bleeding wounded hands and leaving a clean phone. Evidence which was untested that supported the petitioner's claim of self-defense.

(b) If you did not exhaust your state remedies on Ground One, explain why:  N/A

(c) **Direct Appeal of Ground Five**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:  Appelant Counsel failed to respond to the petitioner's communication on this matter.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?       Yes ☒   No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:  Super. Ct. Cr. R. Rule 61 motion for Post-Conviction Relief

Name and location of the court where the motion or petition was filed:  In The Superior Court Of The State Of Delaware In and For Sussex County

Docket or case number (if you know): __I. D. No. 0008014979 (R-1)__

Date of the court's decision: __1-6-05__

Result (attach a copy of the court's opinion or order, if available): __Copy attached__

(3) Did you receive a hearing on your motion or petition?

　　Yes ☒　No ☐

(4) Did you appeal from the denial of your motion or petition?

　　Yes ☒　No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

　　Yes ☒　No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: __In The Supreme Court Of The State Of Delaware__

Docket or case number (if you know): __No. 34, 2005__

Date of the court's decision: __January 24, 2006__

Result (attach a copy of the court's opinion or order, if available): __Affirmed__

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: __N/A__

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: __N/A__

GROUND ~~TWO~~ Six __Brady Violations__

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): __Prosecution failed to disclose through discovery notes that their expert witnesses would testify to at trial.__

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: ____N/A_____

_____

_____

(c) Direct Appeal of Ground ~~Two~~ Six

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐  No ☒

(2) If you did not raise this issue in your direct appeal, explain why: __Appelant Counsel__ __failed to respond to petitioner's Communication on this__ __matter__

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☒  No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: __Super. Ct. Cr. R. Rule 61 motion for Post-Conviction Relief__

Name and location of the court where the motion or petition was filed: __In The Superior__ __Court Of The State Of Delaware In and For Sussex County__

Docket or case number (if you know): __I.D. No. 0008014979 (R-1)__

Date of the court's decision: __1-6-05__

Result (attach a copy of the court's opinion or order, if available): __Copy attached__

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☒  No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☒  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: __In The Supreme__ __Court Of The State Of Delaware__

Docket or case number (if you know): _No. 34, 2005_

Date of the court's decision: _January 24, 2006_

Result (attach a copy of the court's opinion or order, if available): _Affirmed_

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _N/A_

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _N/A_

GROUND ~~TWELVE~~ Seven _Out of Court Statements_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _Prosecution Witness testified to notes taken by a trainee who was doing tests under the supervision of yet another person?_

(b) If you did not exhaust your state remedies on Ground Three, explain why: _N/A_

(c) **Direct Appeal of Ground ~~Three~~** Seven

   (1) If you appealed from the judgment of conviction, did you raise this issue?
      Yes ❑ No ☒

   (2) If you did not raise this issue in your direct appeal, explain why: _Appellant Counsel failed to respond to petitioner's communication on this matter._

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?          Yes ☒  No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Super. Ct. Cr. R. Rule 61 motion for Post-Conviction Relief

Name and location of the court where the motion or petition was filed: In The Superior Court Of The State Of Delaware In and For Sussex County

Docket or case number (if you know): I.D. No. 0008014979 (R-1)0

Date of the court's decision: 1-6-05

Result (attach a copy of the court's opinion or order, if available): Copy attached

(3) Did you receive a hearing on your motion or petition?

Yes ☒  No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☒  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: In The Supreme Court Of The State Of Delaware

Docket or case number (if you know): No. 34, 2005

Date of the court's decision: January 24, 2006

Result (attach a copy of the court's opinion or order, if available): Affirmed

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: N/A

GROUND ~~FOUR~~ _eight_: Faulty Jury Instructions

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The jury was instructed improperly as to defense of self and family in one's own home

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

(c) **Direct Appeal of Ground ~~Four~~** _eight_:

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☒  No ☐

    (2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?    Yes ☒  No ☐

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: Super. Ct. Cr. R. Rule 61 motion for Post Conviction Relief

    Name and location of the court where the motion or petition was filed: In The Superior Court Of The State Of Delaware In and For Sussex County

    Docket or case number (if you know): I.D. No. 0008014979 (R-1)

    Date of the court's decision: 1-6-05

    Result (attach a copy of the court's opinion or order, if available): Copy attached

    (3) Did you receive a hearing on your motion or petition?

        Yes ☒  No ☐

    (4) Did you appeal from the denial of your motion or petition?

        Yes ☐  No ☒

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☒ No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Supreme Court of the State of Delaware

Docket or case number (if you know): No. 34, 2005

Date of the court's decision: January 24, 2006

Result (attach a copy of the court's opinion or order, if available): Affirmed

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: Procedurally proceedurly barred.

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: N/A

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    Yes ☒  No ☐

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: N/A

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: N/A

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    Yes ☐  No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. __N/A__

_____

_____

_____

_____

_____

15. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    Yes ❑   No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. __N/A__

_____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: __Office Of The Public Defender Of The State Of Delaware, 14 The Circle, 2nd Fl., Georgetown DE 19947__

(b) At arraignment and plea: __Karl Haller, Office Of The Public Defender Of The State of Delaware.__

(c) At trial: __Karl Haller, Public Defender__

(d) At sentencing: __Karl Haller, Public Defender__

(e) On appeal: __Karl Haller, Public Defender__

(f) In any post-conviction proceeding: __Pro Se__

(g) On appeal from any ruling against you in a post-conviction proceeding: __Pro Se__

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ❑   No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _N/A_

(b) Give the date the other sentence was imposed: _N/A_

(c) Give the length of the other sentence: _N/A_

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    Yes ☐  No ☒

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.* _This petition is filed within the one year statute of limitations if the time-stop is taken into account, effective while the petitioner exhausted all state remedies. The date of conviction was 11-27-01. The date of sentencing was 1-18-02. A notice of appeal was filed by attorney Karl Haller in the Supreme Court Of The State Of Delaware on 2-13-02, and the appeal was submitted 11-26-02. The petitioner was notified of its denial on 3-10-03, and then prepared a Rule 61 petition for Post-Conviction Relief, which was in turn submitted on 3-8-04, less than one year from the decision. The relief was denied on 1-3-05, after which the petitioner filed a notice of appeal to The Supreme Court Of The State Of Delaware on 1-31-05. The appeal was denied on Jan. 24, 2006 after which the petitioner prepared this writ of Habeas Corpus and mailed it in a timely manner on Jan. 24, 2006. If, through inexperience, the petitioner is in excess of the one-year statute of limitation, the petition should be heard and granted in the interest of justice._

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

  (1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(continued...)

GROUND Nine: Denial of Counsel at Rule 61 Post-Conviction Relief evidentiary hearings.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
The Lower Court failed to appoint counsel at hearings where testimony from the petitioner would be added to the permanent record. This failure, combined with the inexperience of the petitioner, rendered the evidentiary hearings insufficient to explore the claims.

(b) If you did not exhaust your state remedies on Ground Four, explain why: __N/A__

(c) **Direct Appeal of Ground Nine:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ☒

    (2) If you did not raise this issue in your direct appeal, explain why: __Evidentiary hearings had not occured yet__

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?        Yes ❑   No ☒

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: __N/A__

    Name and location of the court where the motion or petition was filed: __N/A__

    Docket or case number (if you know): __N/A__

    Date of the court's decision: __N/A__

    Result (attach a copy of the court's opinion or order, if available): __N/A__

    (3) Did you receive a hearing on your motion or petition?

        Yes ❑   No ❑

    (4) Did you appeal from the denial of your motion or petition?

        Yes ❑   No ❑

Page 23

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ❏ No ❏

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: ___N/A_____

Docket or case number (if you know): ___N/A_____

Date of the court's decision: ___N/A_____

Result (attach a copy of the court's opinion or order, if available): ___N/A_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: ___State trial court was improper venue for this issue.___

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground ~~Many~~ Nine ___An Appeal was placed in the Supreme Court of Delaware on this issue. No. 34, 2005___

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?       Yes ☒ No ❏

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: ___N/A_____

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: ___No_____

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?       Yes ❏ No ☒

Page 24

Therefore, petitioner asks that the Court grant the following relief: _The granting of a new trial, in the interest of justice_

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _Jan, 28, 2006_ (month, date, year).

Executed (signed) on _Jan, 27, 2006_ (date).

_Andrew Wangton_

Signature of Petitioner

---

*(...continued)

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREW E. WARRINGTON, | § | |
| | § | No. 34, 2005 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | in and for Sussex County |
| STATE OF DELAWARE, | § | Cr.ID No. 0008014979 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: November 4, 2005
Decided: January 24, 2006

Before **STEELE**, Chief Justice, **BERGER** and **JACOBS**, Justices

### O R D E R

This 24th day of January 2006, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1)     The defendant-appellant, Andrew E. Warrington, filed an appeal from the Superior Court's January 6, 2005 order denying his motion for postconviction relief pursuant to Superior Court Criminal Rule 61.  We find no merit to the appeal. Accordingly, we AFFIRM.

(2)     In November 2001, Warrington was found guilty by a Superior Court jury of Murder in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony, and Conspiracy in the First Degree.  He

was sentenced to life imprisonment plus 25 years. Warrington's convictions and sentences were affirmed by this Court on direct appeal.[1]

(3)    In this appeal, Warrington claims that: a) the Superior Court abused its discretion by refusing to appoint counsel to represent him in the postconviction proceeding; b) his trial counsel provided ineffective assistance by failing to investigate the basis for the indictment, move for a change of venue, move to sever his trial from that of his co-defendant brother, move to suppress his statements to police, object to the State's expert testimony, and make appropriate arguments to the jury; c) his indictment was defective because tainted evidence was presented to the grand jury; d) he was denied his right to testify before the grand jury; e) he was the victim of a vindictive prosecution; f) there was insufficient evidence presented at trial to support his convictions; g) exculpatory evidence was illegally withheld by the State; and h) inadmissible hearsay was admitted into evidence at trial.

(4)    Warrington's first claim is that the Superior Court abused its discretion by refusing to appoint counsel to represent him in the postconviction proceeding.    A defendant does not have a right to the

---

[1] *Warrington v. State*, 840 A.2d 590 (Del. 2003).

2

appointment of counsel in postconviction proceedings.[2]   Counsel will be appointed only for good cause shown.[3]  In this case, the Superior Court held an evidentiary hearing on Warrington's postconviction motion solely to clarify his claims and his trial counsel's affidavit. Based upon the evidence presented, the Superior Court confirmed that there was no factual basis for any of Warrington's claims. In the absence of a showing of "good cause," we find that the Superior Court acted within its discretion in determining that there was no need to appoint counsel for Warrington in that proceeding.

(5)   Warrington's second claim is that his trial counsel provided ineffective assistance. In order to prevail on this claim, Warrington must demonstrate that his counsel's representation fell below an objective standard of reasonableness and that, but for his counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[4]  Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable."[5]  Our review of the record does not support Warrington's claim of ineffective assistance. He has not

---

[2] *Cropper v. State*, Del. Supr., No. 309, 2001, Walsh, J. (Dec. 10, 2001) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).

[3] Super. Ct. Crim. R. 61(e) (1).

[4] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[5] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

3

demonstrated that any alleged error on the part of his counsel resulted in prejudice to him.

(6)    Warrington next claims that the indictment handed down by the grand jury was defective because it was based upon tainted evidence. Specifically, he argues that he was under the influence of marijuana when he gave his statement to the police, there were irregularities in the collection and preservation of the evidence, and he was denied his right to testify before the grand jury.    Because this claim was never raised in the proceedings leading to the judgment of conviction, it is barred[6] unless Warrington can establish cause for the procedural default and prejudice.[7] The record in this case does not support Warrington's claim of irregularities in the evidence presented to the grand jury. Moreover, no defendant has a right to testify before the grand jury.[8]   As such, Warrington has failed to overcome the procedural bar and his claim must be denied.

(7)    Next Warrington claims, for the first time in this proceeding, that he was the victim of a vindictive prosecution. He contends that the prosecutors turned his acts of self-defense into a murder charge when they learned that he and his co-defendant brother were drug dealers and users.

---

[6] Super. Ct. Crim. R. 61(i) (3).

[7] Super. Ct. Crim. R. 61(i) (3) (A) and (B).

[8] *Steigler v. Superior Court*, 252 A.2d 300, 304 (Del. 1969).

4

This claim is procedurally barred[9] as there is no evidence in the record of any vindictive or improper motive on the part of the prosecution.

(8)    Warrington's next claim, which he also raises for the first time in this proceeding, is that there was insufficient evidence presented at trial to support his convictions.    In reviewing a claim of insufficiency of the evidence, this Court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[10]    In so doing, we make no distinction between direct and circumstantial evidence.[11] Moreover, it is for the jury to weigh the relative credibility of the witnesses and reconcile any conflicting testimony.[12]    The record in this case reflects that there was ample evidence presented at trial to support Warrington's convictions of Murder in the First Degree,[13] Possession of a Deadly Weapon During the Commission of a Felony,[14] and Conspiracy in the First Degree.[15] In the absence of any evidence of cause and prejudice,[16] this claim, too, is procedurally barred.

---

[9] Super. Ct. Crim. R. 61(i)(3).

[10] *Barnett v. State*, 691 A.2d 614, 618 (Del. 1997).

[11] *Skinner v. State*, 575 A.2d 1108, 1121 (Del. 1990).

[12] *Chao v. State*, 604 A.2d 1351, 1363 (Del. 1992).

[13] Del. Code Ann. tit. 11, § 636.

[14] Del. Code Ann. tit. 11, § 1447.

[15] Del. Code Ann. tit. 11, § 513.

[16] Super. Ct. Crim. R. 61(i)(3)(A) and (B).

(9)    Warrington's final two claims, also raised for the first time in this proceeding, are that exculpatory evidence was improperly withheld by the State and that inadmissible hearsay in the form of testimony by a DNA expert was admitted at trial. Our review of the record does not reflect any factual basis whatsoever for these assertions. As such, Warrington's final two claims also must be denied.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

Carolyn Berger

Justice

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT W. WARRINGTON, | § | |
| | § | No. 72, 2002 |
| Defendant Below, | § | Cr. ID No. 0008014970 |
| Appellant, | § | |
| | § | |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |
| | § | CONSOLIDATED |
| | § | |
| ANDREW WARRINGTON, | § | |
| | § | No. 74, 2002 |
| Defendant Below, | § | Cr. ID No. 0008014979 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: Superior |
| | § | Court of the State of |
| STATE OF DELAWARE, | § | Delaware in and for |
| | § | Sussex County |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: November 26, 2002
Decided: February 13, 2003

Before **HOLLAND, BERGER,** and **STEELE** Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

Thomas D. H. Barnett, Esquire, Georgetown, Delaware, for Appellant Robert Warrington.

Karl Haller, Esquire, Office of the Public Defender, Georgetown, Delaware, for Appellant Andrew Warrington.

Kim Ayvazian, Esquire, Department of Justice, Georgetown, Delaware, for Appellee.

**BERGER**, Justice:

At issue in this criminal appeal is the scope of the self-defense within a dwelling defense. Defendants below argue for reversal of their first degree murder convictions on the basis that the defense, once triggered, endures even after the intruder no longer poses a threat. We disagree. The relevant statute requires that the defendant have a reasonable belief that the intruder will injure someone within the dwelling. That reasonable belief must exist at the time a defendant acts in self-defense. Thus, after an intruder has been subdued, a jury could properly find that a killing is not justified as an act of self-defense.

## Factual and Procedural Background

### A. The Death of Jesse Pecco

Robert Wesley Warrington ("Wes"), then 22, and Andrew Warrington ("Drew"), then 18, are brothers who lived with their father at 100 Port Lewes in Sussex County. Wes owed an acquaintance, Jesse Pecco, approximately $800 for drugs that Wes had consumed instead of selling. In order to partially repay the debt, Wes forged a check from his father's bank account, making it out to himself in the amount of $700. Wes gave the check to Pecco on Friday, August 11, 2000, and the two men agreed to meet on Monday to cash the check.

3

Pecco did not go to the meeting place. Instead, he drove to 100 Port Lewes, and parked his car directly behind Wes's car so as to immobilize it. Pecco then entered the dwelling through its unlocked front door. Drew, who was upstairs watching television, heard shouts coming from the first floor. When he went downstairs to see what was happening, he found Pecco involved in a physical struggle with Wes. Drew soon realized that the two were fighting over control of a knife that Pecco was holding. Drew struck Pecco from behind, causing him to release the knife. According to Wes, Pecco then had the opportunity to leave the house, but instead chased Drew, who fled up the stairs. Both brothers maintain that Pecco was the aggressor in the fight, and that they believed he posed a threat.

The two brothers testified that they gained the upper hand as Wes stabbed Pecco repeatedly with the knife and Drew struck him repeatedly with a fireplace poker. Ultimately it was determined that Pecco sustained 13 stab wounds, including one that penetrated his left lung, and one that penetrated his heart. Expert testimony at trial revealed that he also suffered eight blunt-force blows to the head, causing a fractured skull and subdural hemorrhaging. Among

4

Pecco's injuries were deep incise stabs to his hands, characteristic of defensive wounds.

During the altercation, a 911 call was made from the Warrington residence. DNA from blood marks found on the telephone used to make the call matched Pecco's DNA. One of these marks was located next to the "one" button on the telephone, indicating that it was Pecco who dialed the emergency number. Drew gave a conflicting account, saying that it was he who dialed the number, only to have Pecco knock the phone from his hands. The jury listened to the sounds of the fight, as recorded on the 911 tape, before reaching its conclusion regarding self-defense. The tape revealed that, towards the end of the fight, Pecco was pleading with the brothers to stop attacking him. He asked, "Why are you guys trying to kill me?" to which one of the brothers responded, "Good reasons." As he died, Pecco said, "Wes, show me some love. Give me a hug before I die. Give me a hug." Testimony demonstrated that Drew responded by kicking him in the face and telling him to shut up.

5

B. Jury Instructions Below

Wes and Drew's (collectively "defendants") defense to the Pecco murder

charges was self-defense within a dwelling. Accordingly, the trial judge

instructed the jury:

> A defense raised in this case is justification.... The defense stems
> from the defendants' assertion that, at the time in question, their
> actions were justified. The elements of the defense of justification,
> in this case, are as follows: (1) That the defendants were in their
> own dwelling at the time of the incident. (2) That Mr. Pecco was
> [an] intruder unlawfully in defendants' dwelling at the time of the
> incident.    (3(b)) That the defendants reasonably believed that
> Mr. Pecco would inflict [personal] injury upon them.
>     In considering the [defendants'] reasonable belief    you may
> consider whether a reasonable man in the defendants'
> circumstances would have reasonably believed that the intruder
> would inflict personal injury upon them. You should, however
> keep in mind, that it is the defendants' state of mind which is at
> issue here and that it is only required that they, in fact, believed the
> intruder would inflict personal injury upon them. If, after
> considering all the evidence to support the defense of justification,
> you find that such evidence raises a reasonable doubt in your minds
> as to the defendants' guilt, you should find the [defendants] not
> guilty of the crime charged.

At another point in the instruction, the judge clarified,

> As to the justification defense of a person unlawfully in a dwelling,
> if you find Mr. Pecco an intruder unlawfully in the defendants'
> dwelling and if the defendant overcame Jesse Pecco so that the
> defendant no longer believed he was in danger of physical injury or
> personal injury, and therefore, the defendant knew the use of deadly
> force was no longer necessary, then the continued use of deadly

6

force was not justified. In other words, *if a person is initially
justified in defending himself, but then knows that the danger to him
has passed then the subsequent use of deadly force is not justified.*
(Emphasis added.)

The jury found both Drew and Wes guilty of murder in the first degree,

possession of a deadly weapon during the commission of a felony, and

conspiracy in the first degree.

## Discussion

Delaware's statute defining self-defense within a dwelling provides:

In the prosecution of an occupant of a dwelling charged with
killing or injuring an intruder who was unlawfully in said dwelling,
it shall be a defense that the occupant was in the occupant's own
dwelling at the time of the offense, and:

(1) The encounter between the occupant and intruder
was sudden and unexpected, compelling the occupant
to act instantly; or
(2) The occupant reasonably believed that the intruder
would inflict personal injury upon the occupant or
others in the dwelling; or
(3) The occupant demanded that the intruder disarm or
surrender, and the intruder refused to do so.[1]

The question presented in this case is whether the reasonable belief that the

intruder would inflict injury must be contemporaneous with the forceful actions

taken against the intruder. Defendants contend that, once both intrusion and

---

[1] 11 *Del.C.* §*469*

7

reasonable belief of danger have occurred, the rightful occupant of the dwelling has "license to slay the intruder" without considering whether the intruder has been disabled so as to no longer pose a threat.

The doctrine of self-defense within a dwelling differs from self-defense in other contexts. A defendant attacked outside her home must retreat rather than use deadly force, but inside her own dwelling she has no duty to retreat, even if she could do so with "complete safety."[2] An early phrasing of this doctrine can be found in *State v. Talley*[3]: "As every man's dwelling house is also his castle of defense, in the eye of the law, he need not retreat at all (he being, in contemplation of law, in the same situation as one attacked elsewhere than in his own house who has retreated until he can do so no further, by reason of a wall or other obstruction that prevents him), but may slay his adversary thus attacking him."[4]

In Delaware, the added protection granted to the occupant of a dwelling is not absolute. The statute provides a defense only in three circumstances: when

---

[2] 11 *Del.C.* §464(e)(2).

[3] 33 A. 181 (Del. 1886)

[4] *Id.* at 182-83; see also *State v. Mills*, 69 A. 841, 843-44 (Del. Super. Ct. 1908) ("The owner and occupant may kill the trespasser, if he honestly believes, on reasonable grounds, such killing to be necessary to protect his life or his person against a felonious assault by the trespasser in the course of the conflict with him in the rightful defense of his dwelling house and property").

8

the occupant 1) encounters the intruder suddenly and must act "instantly;" 2) reasonably believes that the intruder will inflict injury; or 3) demands that the intruder disarm or surrender and the intruder refuses. These three circumstances share a common element -- the occupant is being placed in immediate peril. The plain meaning of this immediacy requirement is that the statute only affords protection if the occupant is confronted with one of the three circumstances *at the time* the occupant uses deadly force on the intruder.[5]

Nothing in the statutory language or Delaware case law supports defendants' contention that what begins as self-defense can be turned into a license to kill. Defendants rely on several extremely broad self-defense within a dwelling statutes from other jurisdictions in arguing their position. For example, the California statute provides: "[a]ny person using force intended or likely to cause death... within his or her residence shall be presumed to have held a reasonable fear of imminent peril of death or great bodily injury ... when that force is used...."[6] Colorado's so-called "make my day" statute provides the occupant of a dwelling immunity from prosecution:

_____

[5]*See Ryan v. State*, 791 A.2d 742,743 (Del. 2002)(Language of unambiguous statute is given its plain meaning.)
[6]Cal.Penal Code §198.5

9

[A]ny occupant of a dwelling is justified in using...deadly force[] against another person when that other person has made an unlawful entry into the dwelling and when the occupant has a reasonable belief that such other person has committed a crime in the dwelling in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry and when the occupant reasonably believes that such other person might use any physical force, no matter how slight, against any occupant.[7]

Delaware's statute, however, is not comparable to either of these statutes. Moreover, defendants have failed to identify any jurisdiction, including California and Colorado, where an occupant of a dwelling is justified in using deadly force after the intruder has been totally subdued.

## Conclusion

Based on the foregoing, we conclude that the "added" jury instruction explaining the limitation on the defense of self-defense within a dwelling correctly stated the law. Accordingly, the judgements of the Superior Court are hereby AFFIRMED.

---

[7]§18-1-704.5, 8B C.R.S. (1986).

10

SUPERIOR COURT
OF THE
STATE OF DELAWARE

T. HENLEY GRAVES
*RESIDENT JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5257

January 6, 2005

N440
Andrew Warrington
SBI No. 00339043
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

> RE: State v. Andrew Warrington
> Defendant ID No. 0008014979(R-1)

Dear Mr. Warrington:

On March 8, 2004, you filed your Motion for Postconviction Relief. It consists of 21 pages raising 12 separate grounds for relief. It also includes a 155 page appendix. The Court expanded the record pursuant to Rule 61(g). I have received submissions under affidavit from your defense attorney, the State, and from you. On December 20, 2004, I received an additional submission from you containing information you wanted me to consider and I have done so.

On October 28, 2004, the Court began an evidentiary hearing as to the factual disputes between you and your attorney. Unfortunately, we quickly learned that your attorney had not provided you with copies of his submissions to the Court and therefore, the matter was rescheduled for December 2, 2004.

-1-

$Ex. B$

On that date, there were other problems. You desired to call your brother, Robert, as a witness, but he was not brought in from the prison. Additionally, the Court wanted more detailed testimony from defense counsel concerning one of your allegations. Therefore, we met again on December 9, 2004. I am satisfied that everyone has presented their respective positions concerning the allegations raised in the Rule 61 Motion. As to the issues raised in which there is a factual dispute, it is necessary for the Court to make credibility determinations based upon not only the testimony of the respective witnesses, but on all the evidence presented both at trial and during the evidentiary hearings and Andrew Warrington's December 20, 2004 submission.

## FACTUAL BACKGROUND

The Defendant was convicted of murder in the 1st degree and sentenced to life without parole. He was also convicted of possession of a deadly weapon during the commission of a felony and conspiracy. His brother and co-defendant, Robert Warrington, was convicted of the same offenses. The Defendant's conviction was affirmed on appeal. Warrington v. State, 840 A.2d 590 (Del. 2003). As noted in the decision of this Court concerning Robert Warrington's postconviction application, the Supreme Court reviewed the evidence in a light most favorable to the Defendants in detailing the factual background of the events leading to their conviction. The Supreme Court basically concluded that even if the victim had come to the Defendants' dwelling and was the initial aggressor, and even if the victim threatened the Defendant with a knife, there came a point in time that the victim was overpowered and was helpless. At that time, when the victim was no longer a

-2-

threat to either of the Defendants, and when the Defendants had complete control over the situation, they intentionally killed him.

The evidence at trial established that the victim was able to break free of the Defendants and briefly secure himself in a room on the first floor of the dwelling. While there, he used a portable house phone to call 911, but before he could communicate anything, the Defendants broke through the door. The phone was knocked aside, but the 911 call had gone through and a connection had been made. The Defendants were obviously unaware of this. The 911 tape recording evidences pleas by the victim for help, his confusion as to why they were killing him, and his prayers when he knew he was dying. The tape also evidences the continued beating the victim received while asking for help in his defenseless state. Whether or not this homicide was premeditated, or whether events took place as the Defendants testified concerning the victim being the initial aggressor, it is clear, as I stated at sentencing, that the Defendants made the decision to kill Mr. Peco and thereby made the decision to commit cold-blooded murder.

Andrew Warrington was represented by the Public Defenders' Office during his trial and appeal. His brother, Robert, was represented by private counsel up until his conviction. He then fired his attorney and a conflict attorney was appointed for both sentencing and appeal.

The appeal of both cases involved the same single issue. Both Defendants claimed that once the right of self-defense was triggered due to an aggressor being in their dwelling, then that right continued and the Defendants had a "license to kill" even after the intruder had been totally subdued. The Supreme Court did not accept that argument and held that

-3-

if an intruder has been disabled so as to no longer pose a threat, then the continued use of deadly force was not justifiable. The Supreme Court upheld this Court's instruction stating same.

In his postconviction relief motion, the Defendant's allegations are frequently a stream of consciousness which mix potentially relevant legal concepts with issues that are totally irrelevant. Nevertheless, I am satisfied that with the benefit of the Rule 61(g) submissions and the evidentiary hearing, the Court can adequately address the grounds raised.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Many of the claims are based on allegations of ineffective assistance of counsel. Claims of ineffective assistance of counsel require that the movant establish deficient performance on the part of his attorney which actually prejudice the Defendant. The movant must establish a reasonable probability that but for his attorney's unprofessional errors, there is a reasonable probability that the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine the confidence of the outcome of the trial. Strickland v. Washington, 466 U. S. 668 (1984). The movant must establish both deficient performance and prejudice in order to present a successful claim of ineffective assistance of counsel. Simply put, if the movant fails to establish either the deficient performance prong or the prejudice prong, then the claim fails.

Movant's allegations as to deficient performance on the part of his attorney must be concrete and specific. Conclusory allegations do not support a claim. Younger v. State, Del. Supr., 580 A.2d 552 (1990)

-4-

## GROUND #1

The Defendant complains that no record exists that he was indicted by the Grand Jury. He further claims that he was not indicted by a vote of 12 grand jurors.

The Court's file contains the indictment which was handed down by the Sussex County Grand Jury on October 17, 2000. It is signed both by the foreman of the Grand Jury and the secretary. There is no factual basis for the Defendant's claim that he was not properly indicted by the Sussex County Grand Jury. The Defendant mistakenly believes there must be a Grand Jury vote of 12 or more persons in order for the Defendant to be indicted. Pursuant to statute, the Sussex County Grand Jury shall consist of 10 members and it is necessary to have an affirmative vote of 7 members in order for the Grand Jury to return a true bill of indictment. 10 Del. C. §4505. This claim is denied.

## GROUND 2

The Defendant complains that he was denied the opportunity to present his self defense theory to the Grand Jury. The purpose of the Grand Jury is to review the State's evidence to determine if there is probable cause that a crime was committed and probable cause that the Defendant committed the crime.

While the Defendant may have wanted to inject self-defense into the Grand Jury process, he presents no legal authority as to his right or entitlement to present testimony before the Grand Jury. He properly presented this defense at his trial.

This claim is dismissed.

-5-

## GROUND 3

The Defendant complains that he received ineffective assistance of counsel in the pretrial stages of the proceedings leading to his conviction. Specifically, he alleges that his attorney was ineffective for failing to attempt to dismiss the State's vindictive prosecution; failing to attack the indictment; failing to move to dismiss the charges; failing to move for a change in venue; and the failure to file a Motion to Sever. As contained in the Rule 61 Motion, these are conclusory claims and state nothing more in support of them than what the Court has stated above.

All claims of ineffective counsel require allegations of specific deficient performance by counsel which were unreasonable from an objective viewpoint. The movant must show how and why his attorney did not perform up to reasonable performance standards and he must show that the deficient performance was likely to have negatively influenced the outcome of the trial. Since these claims are conclusory, they must be dismissed.

I note that some of these claims are raised in later claims of this same motion. Thus, to the extent the Defendant seeks to incorporate other portions of his Motion into Ground 3, I likewise incorporate the Court's rulings into denying same in Ground 3.

Finally, I will rule upon those claims that were raised in the testimony.

The complaint concerning the failure to move for a change of venue was addressed through testimony during the evidentiary hearing. Defense counsel testified he thought that a change of venue motion would have been futile and that the defense resources were better spent on other aspects of the Defendant's case. The Court notes that this was not a case that created such county-wide publicity that it was difficult for the Court to seat 12 impartial

-6-

jurors. Any murder case generates a certain amount of publicity. This case was no different. Despite the Defendant's feelings, the publicity involved in this case did not prejudice the Defendant. Therefore, had a Motion for Change of Venue been made, it would not have been granted.

Also raised at the hearing was testimony concerning the complaint that defense counsel did not adequately follow through on a Motion to Sever. Presumably the Defendant means a Motion to Sever his trial from that of his brother's charges. But the evidence presented at the evidentiary hearing was that both attorneys thought it best to try the case together. Andrew's attorney thought that they should join forces and that two heads were better than one. There was a sharing of resources. As will be seen later in this decision, the lawyers cooperated in the pretrial investigative portions of the cases as well as during trial. I note there were no antagonistic defenses. Andrew's attorney also was concerned that if a severance was granted, and Andrew's case was scheduled for trial first, that this would put his client at a strategic disadvantage because there was no guarantee that Robert would have testified at his trial.

Defendant has not established that his attorney was deficient in not seeking the severance, nor has he shown that he has been prejudiced.

These claims are denied.

## GROUND 4 - VINDICTIVE PROSECUTION

The Defendant alleges the State knew or should have known that the victim had a history of dealing drugs and was a violent individual. The assumption, not stated, is that

-7-

he got what was coming to him. Therefore, the Defendant argues that it was vindictive for the State to have brought criminal charges against the Defendant and his brother.

It appears that this claim is based solely on the State's comment in the opening statement that Defendants were "cold-blooded killers". The term "cold-blooded killers" was used by the State but I find there was nothing wrong with the use of that term based upon the context in which it was used. "Cold-blooded" means a lack of feeling or emotion. The State's characterization of the killing of Mr. Peco in cold blood was not unreasonable when one considers the evidence in the case, especially the chilling events which are recorded on the 911 tape. Mr. Peco was executed intentionally and cruelly. Thus the use by the prosecutor of the reference to the Defendants being "cold-blooded killers" was not misconduct. This claim fails.

### GROUND 5

The Defendant's next claim is also based upon the State's reference to the Defendants as "cold-blooded killers". He claims the use of these words was plain error and the Court should have *sua sponte* given a curative instruction or granted a mistrial. For the reasons stated in Ground 4, I find that it was not misconduct on the prosecutor's part to reference the killing as having been done by "cold-blooded killers". Additionally I note, that Mr. Peco had 8 blunt force injuries to his head. He had 25 knife wounds, 13 of which were determined by the medical examiner to be stab wounds. Robert Warrington had a small cut on his finger and Andrew Warrington had a small cut on his leg. Based upon the gruesome manner of Mr. Peco's death and the 911 tape evidencing his pleas for help, his questions as to why he was being killed, and his pleas for mercy while the beating was taking place

-8-

evidence that the killing took place with a lack of feeling or emotion. Again, I do not find the use of "cold-blooded killers" to be improper in this context.

GROUND 6

CONVICTION OBTAINED BY INADMISSIBLE EVIDENCE

The Defendant makes a general and conclusory complaint that he was convicted based upon inadmissible evidence. The Defendant claims that the events captured in the 911 tape and the fingerprint testimony was prejudicial and misleading and therefore should have been excluded. This evidence had substantial probative value and a D.R.E. 403 analysis would not have excluded this evidence had an objection been made.

The fingerprint testimony excluded both Defendants as having been the person who left the single print, in blood, on the phone. Mr. Peco could not be determined to have made the print nor was he excluded, based upon the quality of the print records of Mr. Peco.

The 911 recording of the final minutes of Mr. Peco's life was factually prejudicial to the defense. It allowed the jury to understand what took place and to make reasonable conclusions as to the events. It was chilling to listen to, but such is the nature of such relevant evidence. Its D.R.E. 403 prejudice did not outweigh its relevance.

Therefore, the attorney was not ineffective for not objecting to this evidence and these claims fail.

-9-

## GROUND 7

## INEFFECTIVE ASSISTANCE OF COUNSEL FOR
## FAILURE TO INVESTIGATE THE STATE'S FORENSIC EVIDENCE

Ground 7 is a general complaint against defense counsel for not investigating the State's evidence. This claim is conclusory and it is denied. To the extent that it was developed at the hearings, I find that Andrew Warrington's defense attorney, and Robert Warrington's defense attorney, and their respective investigators, conducted a great deal of investigation prior to trial and were prepared for trial. The defense teams worked together effectively. Much work was done by both defense teams and their efforts were shared in an effort to present their common defense theory. That theory was that Mr. Peco attacked them and they had no choice but to kill him. Robert Warrington's attorney noted the only difference of opinion they had as to their approach to the case was that he thought Andrew Warrington's defense team's efforts in pursuing the investigation and attack on the DNA evidence were futile.

It is only Andrew Warrington's opinion that the adversarial process broke down due to a failure of his defense team to make investigations.

Also contained in this allegation is a complaint his defense attorney should have filed a pretrial motion to dismiss his charges because the evidence was mishandled. The Defendant alleges that the 911 tape was tampered with. He is correct in the sense that it was enhanced through technology, but it was not altered in any deceitful manner. The attorney representing Robert Warrington also sought technological assistance in enhancing the tape. It was the joint conclusion of both defense teams that the enhanced tape provided

-10-

to them by the State was accurate. There is no factual basis to conclude the State "tampered with" the evidence.

Finally, to the extent the Defendant injects Superior Court Criminal Rule 48 into the case as being a grounds for dismissal, I note that this case was prosecuted in a timely fashion, based upon it being first degree murder and also the time requirements for DNA evidence to be analyzed. These claims are dismissed.

### GROUND 7(A) - FAILURE TO INVESTIGATE MR. PECO

Mr. Warrington complained that there was insufficient investigation into Jesse Peco's alleged propensities for violence and fighting. Robert Warrington made a similar claim. At the hearing on December 2, 2004, Andrew Warrington specifically mentioned three names of people who should have been called. These were Ed Freck, Elwood Johnson, and John Ternaham.

At the December 9, 2004 hearing, Robert Warrington's attorney and Andrew Warrington's attorney addressed these allegations. I reference both the attorneys because they were working together as a team, communicating with each other, and exchanging information concerning the witnesses and strategy.

As to Ed Freck, he would not cooperate and speak with counsel.

As to John Ternaham, it was noted that he was in jail in Maryland. An out-of-state witness subpoena, was prepared but it was ultimately determined that this witness would not be helpful because his testimony might be perceived that Mr. Peco was "all bark and no bite". He knew of Mr. Peco's drug involvement but that was not an issue because it was fully presented to the jury through other testimony.

-11-

As to Elwood Johnson, the testimony was that Mr. Johnson was incarcerated in prison in Delaware. Defense counsel for Robert Warrington interviewed him but was not satisfied that he was a credible witness. While he did offer testimony concerning Mr. Peco's propensities, counsel knew that he had not seen Mr. Peco since 1996. The conclusion was that he was not a strong enough witness to take a risk on him.

It was also revealed that numerous other witnesses were investigated in a search to paint Mr. Peco as being a violent individual. Those witnesses either would not cooperate, did not have information which was helpful, or placed Mr. Peco in the "hot-shot", "loud mouth", or "all bark and no bite" category.

I note that both the attorneys for Robert Warrington and Andrew Warrington were aware of this Court's ruling on the use of allegations of a victim's prior aggression or prior violent conduct and how it may be used as self defense.

Finally, I note that there has been no proffer offered by either Defendant as to the testimony of any person who was not called at trial who would support this claim. The claim is dismissed as the Defendant has not proven deficient performance nor prejudice.

## GROUND 8

### INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.

In this claim, Andrew Warrington alleges that his defense attorney did not communicate with him sufficiently so that the Defendant could make informed choices as to whether or not to attack the evidence presented by the State at trial.

I am satisfied that the defense team of Mr. Andrew Warrington met with him on numerous times and communicated with him regularly.

-12-

While the Defendant may allege that he would have liked to have had more information, this does not establish a claim that his defense attorney was deficient nor has he established that had he received additional information, how that would have helped his case. There has been no showing that the claimed lack of communications in any way allowed inadmissible evidence to be introduced at trial. The conclusory claim that trial counsel was ineffective for his failure to communicate with the Defendant fails, and it is dismissed.

## GROUND 9

## INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL

The Defendant argues that his attorney failed to communicate with him as to the issues which should have been raised on appeal. He also argues that his defense attorney's argument "was not put well enough into perspective". Basically, he argues that his defense attorney should have reargued the facts of the case to justify self defense.

The Defendant continues to be unwilling to accept the jury's verdict. He is unwilling to accept the legal proposition that he does not have a "license to kill" any intruder after that intruder has been rendered harmless. The Defendant fails to present any authority or argument as to what should have been argued to the Supreme Court in order to support the Defendant's present theories. The Defendant has not shown deficient performance nor has he shown any prejudice as to the work product of his appellate counsel, and therefore this claim is denied.

To the extent the Defendant interweaves the failure to challenge a change of venue issue on appeal, this claim is denied as it has been previously dealt with in this decision.

-13-

Finally, to the extent the Defendant argues that the trial judge should have recused

himself due to the sentencing remarks, I note that he does not cite which remarks he feels

were prejudicial, but I'll assume it is the Court's comment that the killing was done in cold

blood. I am satisfied that the sentencing remarks were appropriate under the factual

circumstances of this case. This claim is denied.

Finally, the Defendant makes another unrelated allegation. He argues that since a

person can't plead guilty while under the influence of alcohol or drugs, the 911 tape should

have been excluded because Mr. Peco had previously used drugs and/or was under the

influence of drugs. This is a frivolous argument and it is denied.

## GROUND 10

## INSUFFICIENT EVIDENCE TO SUPPORT CONVICTION

In this ground, the Defendant argues that there was insufficient evidence to support

his conviction. The Defendant is mistaken. There was ample circumstantial evidence to

support a one-sided fight. That combined with the direct evidence contained in the 911 tape

evidence an intention to kill.

This claim is denied.

## GROUND 11 - BRADY VIOLATIONS

The Defendant alleges that there were Brady and discovery violations. He alleges

that there were witnesses' notes that were never produced to the defense. This is a

conclusory allegation and therefore a conclusory response is appropriate. Even though there

are no specific allegations, trial counsel was asked at the evidentiary hearing if he knew any

basis for making such a claim. Trial counsel informed the Court he knew of no basis but

-14-

recognized his recollection was based on a case that was tried several years ago. With these same limitations, this Judge does not recall any problems relating to the failure of the State to meet its obligations under the discovery rules or Brady v. Maryland, 373 U. S. 83 (1963). It is the Defendant's burden to make specific allegations. He has not done so. This conclusory allegation is denied.

## GROUND 12

## OUT-OF-COURT STATEMENTS

In this claim, the Defendant alleges that the DNA expert that testified for the State commented that certain portions of the testing process were conducted by others while under her supervision. The Defendant complains that this testimony should not have been permitted as it was hearsay and further that his attorney was ineffective for not objecting to the DNA expert's testimony based on these grounds. This ground is denied because under DRE 703, the expert is entitled to rely upon information which would normally be used in the field of expertise of that particular expert. The fact that a lab assistant assisted the expert in preparing the samples and in conducting the test does not mean that the DNA expert's opinion should be excluded.

I do not find that trial counsel was ineffective for not objecting to the testimony concerning the expert's use of the work product of her assistants.

-15-

For the aforementioned reasons, the Defendant's Motion for Postconviction Relief is denied.

IT IS SO ORDERED.

Yours very truly,

T. Henley Graves

THG:baj
cc:    Karl Haller, Esquire
       James W. Adkins, Esquire
       Adam D. Gelof, Esquire
       David M. Hume, Esquire