# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **ANDREW E. WARRINGTON**, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 06-66-GMS |
| | : | |
| **THOMAS L. CARROLL**, | : | |
| Warden, and **CARL C. DANBERG**, | : | |
| Attorney General for the State of Delaware, | : | |
| | : | |
| Respondents. | : | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In September 2000, the petitioner, Andrew Warrington ("Warrington"), and his brother, Robert Warrington, were arrested, and the two were subsequently indicted on charges of first degree murder, two weapons offenses, and first degree conspiracy.  *See* Del. Super. Ct. Crim. Dkt. Items 1 & 2 in case no. 0008014979.  In November 2001, both Warrington brothers were found guilty by a Superior Court jury of first degree murder, possession of a deadly weapon during the commission of a felony, and first degree conspiracy.  *Warrington v. State*, 2006 WL 196437, *1 (Del. Jan. 24, 2006).  Warrington was sentenced to life imprisonment plus twenty-five years.  *Id*.  Warrington's convictions and sentence were affirmed on direct appeal.  *Warrington v. State*, 840 A.2d 590 (Del. 2003).

In March 2004, Warrington moved for postconviction relief under Superior Court Criminal Rule 61.  In January 2005, after consideration of defense counsel's response, the prosecution's answer and an evidentiary hearing, Superior Court denied Warrington's

postconviction motion and Warrington appealed.  *See Warrington*, 2006 WL 196437 at *1.  The

Delaware Supreme Court affirmed the decision of the Superior Court on January 24, 2006.  *Id*.

Facts

As detailed by the Delaware Supreme Court in *Warrington v. State*, 840 A.2d 590, 591

(Del. 2003), the facts leading to Warrington's arrest and conviction are as follows:

> Robert Wesley Warrington ("Wes"), then 22, and Andrew Warrington ("Drew"),
> then 18, are brothers who lived with their father at 100 Port Lewes in Sussex
> County.  Wes owed an acquaintance, Jesse Pecco, approximately $800 for drugs
> that Wes had consumed instead of selling.  In order to partially repay the debt,
> Wes forged a check from his father's bank account, making it out to himself in the
> amount of $700.  Wes gave the check to Pecco on Friday, August 11, 2000, and
> the two men agreed to meet on Monday to cash the check.
>
> Pecco did not go to the meeting place.  Instead, he drove to 100 Port Lewes, and
> parked his car directly behind Wes's car so as to immobilize it.  Pecco then
> entered the dwelling through its unlocked front door.  Drew, who was upstairs
> watching television, heard shouts coming from the first floor.  When he went
> downstairs to see what was happening, he found Pecco involved in a physical
> struggle with Wes.  Drew soon realized that the two were fighting over control of
> a knife that Pecco was holding.  Drew struck Pecco from behind, causing him to
> release the knife.  According to Wes, Pecco then had the opportunity to leave the
> house, but instead chased Drew, who had fled up the stairs.  Both brothers
> maintain that Pecco was the aggressor in the fight, and that they believed he posed
> a threat.
>
> The two brothers testified that they gained the upper hand as Wes stabbed Pecco
> repeatedly with the knife and Drew struck him repeatedly with a fireplace poker.
> Ultimately it was determined that Pecco sustained 13 stab wounds, including one
> that penetrated his left lung, and one that penetrated his heart.  Expert testimony at
> trial revealed that he also suffered eight blunt-force blows to the head, causing a
> fractured skull and subdural hemorrhaging.  Among Pecco's injuries were deep
> incise stabs to his hands, characteristic of defensive wounds.
>
> During the altercation, a 911 call was made from the Warrington residence.  DNA
> from blood marks found on the telephone used to make the call matched Pecco's
> DNA.  One of these marks was located next to the "one" button on the telephone,
> indicating that it was Pecco who dialed the emergency number.  Drew gave a
> conflicting account, saying that it was he who dialed the number, only to have
> Pecco knock the phone from his hands.  The jury listened to the sounds of the
> fight, as recorded on the 911 tape, before reaching its conclusion regarding self-
> defense.  The tape revealed that, towards the end of the fight, Pecco was pleading

with the brothers to stop attacking him.  He asked, "Why are you guys trying to kill me?" to which one of the brothers responded, "good reasons."  As he died, Pecco said, "Wes, show me some love.  Give me a hug before I die.  Give me a hug."  Testimony demonstrated that Drew responded by kicking him in the face and telling him to shut up.

## Discussion

In his petition for federal habeas relief, Warrington raises nine grounds for relief:  (1) his counsel provided ineffective assistance for a variety of reasons at trial and on appeal (D.I. 1 at 6; D.I. 5 at 10); (2) his grand jury indictment was faulty (D.I. 1 at 7; D.I. 5 at 11); (3) the prosecution was vindictive in nature (D.I. 1 at 9; D.I. 5 at 12); (4) his conviction was obtained by way of inadmissible evidence (D.I. 1 at 11; D.I. 5 at 13); (5) there was insufficient evidence to support the conviction (D.I. 1 at 13; D.I. 5 at 14); (6) *Brady* violations (D.I. 1 at 14; D.I. 5 at 15); (7) his conviction was obtained through use of out of court statements (D.I. 1 at 16; D.I. 5 at 16); (8) jury instructions on self defense were faulty (D.I. 1 at 18; D.I. 5 at 17); and (9) he was improperly denied counsel at the postconviction evidentiary hearing (D.I. 1 at 22; D.I. 5 at 18).

*Claim 1 – Ineffective assistance of trial and appellate counsel*

A state petitioner seeking federal habeas relief must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Alston v. Redman*, 34 F.3d 1237, 1241-42 (3d Cir. 1994).  Warrington presented the following claims of ineffective assistance of counsel to the Delaware Supreme Court on appeal from the denial of his state postconviction motion, thus exhausting these claims:  trial counsel failed to properly investigate and challenge the grand jury indictment; trial counsel failed to challenge the admissibility of improperly collected evidence; trial counsel failed to move for a change of venue; trial counsel failed to move for severance; trial counsel failed to adequately prepare Warrington for trial

3

because counsel was on vacation; trial counsel failed to object to a statement made under the influence of marijuana; and counsel was ineffective on appeal by representing that Warrington believed the intruder deserved to die. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). These claims, however, do not provide a basis for relief.

Section 104 of Title I of the Antiterrorism and Effective Death Penalty Act of 1996, codified as 28 U.S.C. § 2254, restricts the scope of collateral review of convictions and sentences for persons in custody pursuant to the judgment of a state court. As amended, § 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim--
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir. 2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999) (determining the standard of review governing petitions for a writ of habeas corpus under revised § 2254(d)). Thus, under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir.), *cert. denied*, 537 U.S. 1049 (2002); *Matteo*, 171 F.3d at 885; *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434

(D. Del. 1998).  "A state court decision is contrary to Supreme Court precedent under §
2254(d)(1) where the state court reached a conclusion opposite to that reached by the Supreme
Court on a question of law or if the state court decides a case differently than the Supreme Court
has on a set of materially indistinguishable facts."  *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir.
2005) (citations and internal quotations omitted).  A state court decision is an unreasonable
application if the court identifies the correct governing legal rule based on Supreme Court
precedent but unreasonably applies it to the facts of the particular case.  *Id.* (citations omitted).
Moreover, factual determinations by state trial and appellate courts are presumed correct absent
clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state
court and based on a factual determination will not be overturned on factual grounds unless
objectively unreasonable in light of the evidence presented in the state-court proceeding.  *See* 28
U.S.C. §§ 2254(d)(2), (e)(1).  *See also Williams,* 529 U.S. at 402-13; *Affinito v. Hendricks*, 366
F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000), *cert.
denied*, 531 U.S. 1084 (2001).

The clearly established federal law which governs ineffective assistance of counsel
claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984)
and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).  In *Strickland*, the United States
Supreme Court articulated a two-part test for evaluating an ineffective assistance of counsel
claim. First, a petitioner must demonstrate that counsel's performance at trial or on appeal fell
below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  In evaluating
whether counsel performed reasonably, a court "must be highly deferential."  *Id*. at 689.
Therefore, a petitioner "must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy." *Id*. (quotation omitted).  Second, a

petitioner must illustrate that counsel's ineffective performance caused prejudice. *See Strickland*, 466 U.S. at 687. In order to demonstrate prejudice, the petitioner must show that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694. In this case, the Delaware state courts correctly identified the two-prong *Strickland* standard applicable to Warrington's ineffectiveness claims. Thus the state supreme court's denial of the claims was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406; *Jacobs*, 395 F.3d at 100.

Moreover, the state courts reasonably applied the rule to the specific facts of Warrington's case. *See* 28 U.S.C. § 2254(d)(1). In the first instance, Warrington complains that trial counsel failed to investigate or challenge the admissibility of improperly collected evidence. D.I. 1 at 6; D.I. 5 at 10. This claim was denied by the trial court as conclusory. *See State v. Warrington*, ID No. 0008014979, letter op. at 10 (Del. Super. Ct. Jan. 6, 2005). The record shows that counsel for both defendants objected to the admission of two sweatshirts (State's Ex. Nos. 7 & 8) on the basis of the Warrington brothers' contention that the clothing had been mislabeled by police, but were overruled. *See State's Appendix* at B-28-46, in Del. Supr. Ct. No. 34, 2005. Without a basis in the record for the claim, the state court properly denied Warrington's claim under *Strickland*. Warrington also complains that trial counsel failed to challenge the grand jury's indictment, which was allegedly obtained by way of "fruit of the poisonous tree." D.I. 5 at 10. In his postconviction motion, Warrington presented several claims regarding the grand jury indictment, including a related ineffectiveness claim, which were denied by the trial court as without factual or legal merit or dismissed as conclusory. *See Warrington*, letter op. at 5-6. The state court's application of the *Strickland* standard was not unreasonable based upon the record.

6

Warrington also asserts his trial attorney was ineffective in failing to move for a change of venue in the face of massive pre-trial publicity. D.I. 5 at 10. Trial counsel testified at the evidentiary hearing that he did not consider filing such a motion because they were never granted in his experience, and he preferred to use his time on other efforts. *See State's Appendix* at B-144-46, 148, 150-51, in Del. Supr. Ct. No. 34, 2005. The trial court agreed with this assessment, ruling that despite some publicity, it was not difficult to seat 12 impartial jurors, and a motion for change of venue would have been denied. *See Warrington*, letter op. at 6-7; *see also Riley v. Taylor*, 277 F.3d 261, 273 n.1 (3d Cir.) (*en banc*), *approving*, 237 F.3d 300, 322 (3d Cir. 2001) (holding that state court finding of impartiality after pre-trial publicity was entitled to deference). Because Warrington was unable to demonstrate any prejudice, the trial court denied this ineffectiveness claim. *Id.* Similarly, trial counsel did not consider filing a motion for severance because it was his impression the brothers wanted to be tried together, there was an advantage in having the cases tried together, and a risk in severing them because Warrington might not have the benefit of his brother's testimony if Warrington was tried first. *See State's Appendix* at B-145, 172, in Del. Supr. Ct. No. 34, 2005. The trial court found no deficiency on trial counsel's part in not filing a severance motion, nor did Warrington establish any prejudice. *Warrington*, letter op. at 7. Based on the record, the state court's determination that Warrington had not demonstrated that his trial counsel was constitutionally ineffective was not an unreasonable application of the *Strickland* framework.

Warrington complains that trial counsel failed to prepare himself or his client for trial because counsel was on vacation for three months prior to trial. D.I. 5 at 10. To the extent this claim was developed during the evidentiary hearing, the trial court rejected the notion that trial counsel failed to adequately communicate with Warrington or that the defense team failed to

conduct investigations prior to trial. *Warrington*, letter op. at 10, 12-13. The trial court found that trial counsel was prepared for trial, and worked effectively with the defense team of Warrington's brother. *Id.* at 10. Moreover, as to his general claim of unpreparedness by trial counsel, Warrington failed to allege what additional preparations his counsel should have made or how those preparations would have altered the outcome of the trial. As to specific allegations of his trial counsel's lack of preparation, Warrington claims that trial counsel should have objected to statements given while under the influence of narcotics or marijuana. D.I. 1 at 6; D.I. 5 at 10. Warrington's claim that trial counsel should have objected to his statement to police that was allegedly given while under the influence of marijuana was presented to the state supreme court on appeal from the denial of Warrington's postconviction motion, and is therefore exhausted. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. The state supreme court rejected all of Warrington's ineffectiveness claims, finding that Warrington had failed to demonstrate prejudice. *Warrington v. State*, 2006 WL 196437, *1 (Del. Jan. 24, 2006). Warrington's statement was used in the State's case-in-chief only to establish that he admitted having possession of a fireplace poker during the incident. *See State's Appendix* at B-76-77, in Del. Supr. No. 34, 2005. Warrington testified that he used the poker to knock the knife out of the victim's hand. *Id.* at B-131-32. The issue at trial was whether the victim's death was the result of self-defense or murder. Ultimately, it was the tape recording of the 911 call, in which the victim could be heard pleading for his life, *see Warrington*, 840 A.2d at 591, that apparently convinced the jury to find Warrington guilty of murder. Warrington's statement, on the other hand, most probably resulted in his acquittal on the second deadly weapon count involving the knife. The state supreme court's decision that Warrington failed to demonstrate prejudice from this claim was, therefore, a reasonable application of *Strickland*.

Finally, Warrington alleges that appellate counsel "appealed from the standpoint that the petitioner willed the intruder's death, which is not true." D.I. 5 at 10. In other words, Warrington argues that his appellate counsel should have reargued the self defense justification presented at trial. The trial court rejected this claim, ruling that Warrington failed to establish either deficient performance or prejudice as to the work product of appellate counsel. *Warrington*, letter op. at 13. The record shows that Warrington and his brother testified in support of their claim of self-defense that the victim continued to lunge at them and refused to leave their home, despite his injuries. *See State's Appendix* at B-112-22, 134-35, in Del. Supr. Ct. No. 34, 2005. The jury apparently believed otherwise after hearing the 911 tape. Rather than attempt to reargue the self defense claim, Warrington's counsel elected to present a claim that the jury instruction concerning the self defense claim was inadequate. *See Appellant's Opening Brief* in Del. Supr. Ct. Nos. 72, 2002 & 74, 2002. Appellate counsel had no obligation to raise any particular claim; to the contrary, counsel was obliged to present the issue or issues he deemed most likely to be successful on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983) (appellate counsel need not raise every non-frivolous claim). Given the trial record, including the 911 tape, the state court's rejection of Warrington's claim of ineffective assistance of appellate counsel was a reasonable application of *Strickland*. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (*Strickland* is proper standard for evaluating effectiveness of appellate counsel).

*Claim 2 – Faulty grand jury indictment*

Warrington contends that he was subjected to a faulty grand jury indictment because it was not "perfected," and the evidence allegedly presented to the grand jury was improperly collected, "enhanced" to his detriment, and included statements elicited from Warrington while under the influence of marijuana. (D.I. 1 at 7; D.I. 5 at 11). However, claims of deficiencies in

state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (relying on *United States v. Mechanik*, 475 U.S. 66 (1986)); *Campbell v. Greene*, 2006 WL 2040062 (N.D.N.Y. July 19, 2006) (citing cases). *See also Hurtado v. California*, 110 U.S. 516 (1884) (indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment). Furthermore, Warrington presented his claim of a faulty indictment without having presented the issue on direct appeal. Under Delaware Superior Court Criminal Rule 61(i)(3), any ground for relief that was not asserted in the proceedings leading to the judgment of conviction is thereafter barred unless the petitioner shows cause for the procedural default and actual prejudice. The state supreme court found this claim to be procedurally defaulted. *See Warrington*, 2006 WL 196437, *2 (Del. Supr. Ct. Jan. 24, 2006). Warrington, having failed to comply with Criminal Rule 61(i)(3), failed to comply with the relevant state procedural requirements. *See Lawrie v. Snyder*, 9 F. Supp.2d 428, 451 (D. Del. 1998); *Flamer v. Chaffinch*, 827 F. Supp. 1079, 1087-88 (D. Del. 1993) (finding that Criminal Rule 61(i)(3) is an adequate state ground to preclude federal habeas review), *aff'd*, 68 F.3d 710 (3d Cir. 1995) (*en banc*). Thus, federal habeas review of this claim is barred unless Warrington establishes cause for his procedural default in the state courts and actual prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992); *Dawson v. Snyder*, 988 F. Supp. 783, 804-05 (D. Del. 1997); *Johnson v. Ellingsworth*, 783 F. Supp. 215, 218-21 (D. Del. 1992).

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense" precluded his compliance with state procedural rules. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Murray v. Carrier*, 477 U.S. 478, 487 (1986);

*Dawson*, 988 F. Supp. at 805. To establish prejudice under the cause and prejudice standard, a petitioner "must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Carrier*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 179 (1982)); *Dawson*, 988 F. Supp. at 804-05.

Warrington has alleged ineffective assistance of trial counsel as cause for his failure to raise this issue at trial and on direct appeal. D.I. 1 at 8. As noted *supra*, Warrington presented his claim that his trial counsel was ineffective in failing to attack the indictment in his postconviction motion. *See Carrier*, 477 U.S. at 488-89 (an allegation of constitutionally ineffective assistance of counsel as cause for a procedural default in a state court must itself be independently exhausted). The state court rejected Warrington's claim that counsel was ineffective for failing to attack the indictment as merely conclusory, and found no basis in the record of a defective indictment. *See Warrington*, 2006 WL 196437 at *1; *Warrington*, letter op. at 5-6. In Delaware, "there is no judicial regulation of the kind or quantum of evidence a Grand Jury may consider in the performance of its common law accusatorial function." *Steigler v. Superior Court*, 252 A.2d 300, 304 (Del. 1969). Consequently, counsel's failure to challenge the evidence presented to the grand jury could not have been successful, and counsel is not required to raise futile claims. *See Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000) ("counsel cannot be deemed ineffective for failing to raise a meritless claim"). Thus, Warrington's claim of ineffective assistance as cause for his procedural default cannot be sustained, and this claim must be dismissed.

*Claim 3 – Vindictive prosecution*

The original police report by officers who responded to the scene indicated under a heading of "Homicide Circumstance" that a burglar had been killed by a private citizen. *See* Appellant's Appendix at A-93, in Del. Supr. Ct. No. 34, 2005. Based on this report, Warrington contends that the prosecution was vindictive because the police at the scene considered it a case of "'Criminal Killed by Private Citizen.'" D.I. 5 at 12. Warrington presented this claim to the state supreme court upon appeal from the denial of his postconviction motion, thus exhausting the claim. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. Warrington, however, failed to raise this claim on direct appeal, and thus the claim was procedurally barred under Criminal Rule 61(i)(3) for failure to have raised the claim during the proceedings leading to the judgment of conviction. As a result, federal habeas review of this claim is barred unless Warrington establishes cause for his procedural default in the state courts and actual prejudice. *See Coleman*, 501 U.S. at 750-51; *Caswell*, 953 F.2d at 861-62; *Dawson*, 988 F. Supp. at 804-05; *Ellingsworth*, 783 F. Supp. at 218-21. To the extent that Warrington has alleged ineffective assistance of counsel as cause for his failure to raise this issue at trial or on direct appeal, that claim was also rejected by the state courts. *Warrington*, 2006 WL 196437, *1; *Warrington*, letter op. at 6. Moreover, Warrington cannot establish a viable claim of vindictive prosecution. *See United states v.* Schoolcraft, 879 F.2d 64, 67 (3d Cir. 1989) ( holding that prosecutorial vindictiveness may occur when the government penalizes a defendant for invoking legally protected rights). Warrington failed to show that he exercised any right that would have triggered a reaction by the prosecutor. *See United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982) ("A charging decision does not levy an improper 'penalty' unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of

the societal interest in prosecution"); *see also United States v. Hooton*, 662 F.2d 628, 634 (9th Cir. 1981) (no prosecutorial vindictiveness where defendant could not show any animus on the part of the members of the Attorney General's office who made the charging decision). Because Warrington cannot establish cause or prejudice to overcome his procedural default in state court, his claim must be dismissed.

*Claim 4 – Inadmissible evidence*

Warrington next asserts that his conviction was obtained through inadmissible evidence consisting of an uncertified "expert", a statement given while under the influence of marijuana, and an untested piece of evidence collected by a paramedic. D.I. 5 at 13. Specifically, Warrington complains that the prosecution's fingerprint expert, Mr. Hegman, although having previously testified as an expert in Delaware courts, had not been certified by the F.B.I. as a latent print examiner and thus he should not have been allowed to testify as an expert. *See Appellant's Opening Brief* at 24-26, in Del. Supr. Ct. No. 34, 2005. Warrington also alleges that his statement to the police was made while he was under the influence of marijuana. *Id.* The third part of his claim of inadmissible evidence relates to the failure of the state to test a black sweatshirt for blood. *Id.* These claims were viewed by the trial court primarily as claims of ineffective assistance of counsel, *see Warrington*, letter op. at 9, and after his motion for postconviction relief was denied, Warrington presented these claims to the state supreme court as one claim of inadmissible evidence consisting of a mixture of trial court error and attorney ineffectiveness. *See Appellant's Opening Brief* at 24-26, in Del. Supr. Ct., No. 34, 2005. The state supreme court rejected all of Warrington's ineffectiveness claims because Warrington was unable to demonstrate that any alleged error on the part of trial counsel resulted in prejudice to him. *Warrington*, 2006 WL 196437, *1. Based on the record, the state court's determination that

Warrington had not demonstrated that his trial counsel was constitutionally ineffective was not an unreasonable application of the *Strickland* framework.

*Claim 5 – Insufficient evidence*

In his fifth claim, Warrington asserts that there was insufficient evidence presented at trial to convict him of first degree murder because there was no evidence that he intended to kill the "intruder."  D.I. 5 at 14.  Warrington presented this claim to the state supreme court on appeal from the denial of his postconviction motion, thus exhausting the claim.  *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295.  Warrington, however, failed to raise this claim on direct appeal, and thus the claim was procedurally barred under Criminal Rule 61(i)(3) for failure to have raised the claim during the proceedings leading to the judgment of conviction.  As a result, federal habeas review of this claim is barred unless Warrington establishes cause for his procedural default in the state courts and actual prejudice.  *See Coleman*, 501 U.S. at 750-51; *Caswell*, 953 F.2d at 861-62; *Dawson*, 988 F. Supp. at 804-05; *Ellingsworth*, 783 F. Supp. at 218-21.  To the extent that Warrington has alleged ineffective assistance of counsel as cause for his failure to raise this issue on direct appeal, that claim was also rejected by the state courts.  Moreover, the Delaware Supreme Court, considering the claim under the standards of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), found that "there was ample evidence presented at trial to support Warrington's convictions of Murder in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony, and Conspiracy in the First Degree."  *Warrington*, 2006 WL 196437 at *2.  Thus, had Warrington's counsel raised this claim either at trial or on appeal, the claim would not have been successful, and thus Warrington cannot demonstrate prejudice.  Because Warrington cannot establish cause or prejudice to overcome his procedural default in state court, his claim must be dismissed.

14

*Claim 6 – Brady violations*

Warrington asserts that the prosecution failed to disclose notes or materials that were used by the prosecution DNA expert during her trial testimony. D.I. 1 at 14; D.I. 5 at 15. Warrington presented this claim to the state supreme court on appeal from the denial of his postconviction motion, thus exhausting the claim. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. Trial counsel, when asked at the evidentiary hearing, knew of no factual basis for such a claim. *See Warrington*, letter op. at 14-15. The trial court, therefore, denied the claim as conclusory. *Id.* at 15. The state supreme court likewise found this claim to be lacking in merit upon its review of the record. *See Warrington*, 2006 WL 196437, *2. In light of the evidence presented in the state-court proceeding, the state court's decision is not objectively unreasonable.

*Claim 7 – Out of court statements*

Prosecution DNA expert Jennifer Luttman, during the course of her trial testimony, referred to a blood examination sheet filled out by a serologist who was in training under the direction of another serologist in Luttman's office at the time. *See Appellant's Appendix* at A-49a, in Del. Supr. Ct. No. 34, 2005. In his seventh claim, Warrington asserts that his conviction was improperly obtained through out of court statements consisting of the notes made by the trainee who did not testify. D.I. 1 at 16; D.I. 5 at 16. This claim was presented to the state courts in Warrington's postconviction proceeding, thus exhausting the claim. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. The trial court found no merit to this claim because under Delaware Rule of Evidence 703, an expert witness is entitled to rely upon information normally used in the expert's field of expertise. *Warrington*, letter op. at 15. The trial court also found trial counsel was not ineffective for not objecting to the expert's testimony. *Id.* On appeal from the denial of postconviction relief, the state supreme court also found no factual basis for

Warrington's assertion that inadmissible hearsay in the form of testimony by a DNA expert was admitted at trial, a decision that is not objectively unreasonable in light of the evidence presented in the state-court proceeding. *See Warrington*, 2006 WL 196437, *2.

*Claim 8 – Jury instructions*

Next, Warrington complains that the court improperly instructed the jury regarding defense in one's own home. D.I. 5 at 175. Warrington raised this claim on direct appeal from his conviction, thus exhausting the claim. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. Warrington, however, only advances a state law claim, and federal habeas review of the issue is unavailable. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Riley v. Taylor*, 277 F.3d 261, 310 n. 8 (3d Cir. 2001); *Guinn v. Carroll*, 2004 WL 758350, *1 (D. Del.). The Delaware Supreme Court determined that the trial court's instructions to the jury concerning the limitation on the defense of self-defense within a dwelling correctly stated the law. *Warrington*, 840 A.2d at 593-94. "State courts are the ultimate expositors of state law . . . ." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *accord Lambert v. Blackwell*, 387 F.3d 210, 239 n.24 (3d Cir. 2004); *Humanik v. Beyer*, 871 F.2d 432, 436 (3d Cir. 1989). A habeas petitioner challenging state jury instructions must demonstrate that the jury instructions deprived him of a defense which federal law provided to him. *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). Warrington has made no showing that federal law provides justification for the use of deadly force applicable to his actions in this case. *See id*. As a result, Warrington's claim does not rise to the level of a federal constitutional claim, and his state law claim is not cognizable in federal habeas review. *See Oliver v. Hendricks*, 2006 WL 1540823, *4-5 (D.N.J. May 31, 2006).

*Claim 9 – Denial of counsel at postconviction hearing*

16

In his final claim, Warrington asserts that he was improperly denied appointed counsel at his postconviction evidentiary hearing. Without question, Warrington had no right to counsel in the state postconviction proceedings. *Murray v. Giarratano*, 492 U.S. 1, 7-9 (1989) (plurality); *Pennsylvania v. Finley*, 481 U.S. 551, 555-57 (1987). Moreover, claims of error in state postconviction proceedings are collateral to the conviction and sentence, and do not give rise to a claim for federal habeas relief. *See Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2005) (quoting *Hassine v. Zimmerman*, 160 F.3d 941, 954-55 (3d Cir. 1998)). Because, under settled law, Warrington's complaint that he was denied appointed counsel at his postconviction evidentiary hearing does not describe constitutional error, he is not entitled to relief.

<u>Conclusion</u>

Based upon the Superior Court docket sheet, it appears that transcripts of Warrington's status conference (June 22, 2001), trial (Nov. 5-27, 2001), sentencing (Jan. 18, 2002), and postconviction evidentiary hearing (Oct. 28, 2004 & Dec. 9, 2004) have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court. Certified copies of the state supreme court records of Warrington's direct appeal (Del. Supr. Ct. No. 72, 2002 & 74, 2002) have been filed with the Court in *Robert W. Warrington*, Civ. Act. No. 06-67-SLR.

17

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/ Elizabeth R. McFarlan
Deputy Attorney General
Del. Bar ID No. 3759
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
elizabeth.mcfarlan@state.de.us
Counsel of Record

/s/ Kim Ayvazian
Deputy Attorney General
Del. Bar ID No. 2525
114 E. Market St.
Georgetown, DE 19947
(302) 856-5353

Date:  August 11, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2006, I electronically filed an answer to a habeas petition with the Clerk of Court using CM/ECF.  I also hereby certify that on August 11, 2006, I have mailed by United States Postal Service, the same documents to the following non-registered participant:

      Andrew E. Warrington
      SBI No. 339043
      Delaware Correctional Center
      1181 Paddock Road
      Smyrna, DE 19977

                         /s/ Elizabeth R. McFarlan
                         Deputy Attorney General
                         Department of Justice
                         820 N. French Street
                         Wilmington, DE 19801
                         (302) 577-8500
                         Del. Bar. ID No. 3759
                         elizabeth.mcfarlan@state.de.us

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

Page 1

Only the Westlaw citation is currently available.
United States District Court,N.D. New York.
Alan CAMPBELL, Petitioner,
v.
Gary GREENE, Superintendent, Marcy Corr.
Facility, Respondent.
**No. 9:02-CV-0705 (NPM).**

July 19, 2006.

**Background:** State prisoner petitioned for writ of
habeas corpus after his convictions on charges of
attempted first degree assault and reckless
endangerment in the first degree had been affirmed
on appeal, 279 A.D.2d 797, 718 N.Y.S.2d 744.

**Holdings:** The District Court, Neal P. McCurn,
Senior Judge, held that:

1(1) evidence was sufficient for jury to rationally
conclude beyond reasonable doubt that petitioner had
committed crime of first degree attempted assault;

5(2) evidence was sufficient for jury to rationally
conclude beyond reasonable doubt that petitioner had
committed crime of reckless endangerment in the
first degree;

6(3) federal habeas review of petitioner's Fourth
Amendment claim was not warranted;

8(4) petitioner had not been in custody when he made
statements to police officers;

14(5) claims based on alleged defects in state grand
jury proceedings were not reviewable;

16(6) prosecution of petitioner's trial, 14 months after
he was arrested on charges of attempted first degree
assault and reckless endangerment in the first degree,
did not violate his right to speedy trial;

17(7) petitioner's right to fair trial had not been
violated by his appearance at trial in prison clothes;
and

24(8) defense counsel did not provide ineffective
assistance.

Petition denied.

**[1] Habeas Corpus 197 0**

197 Habeas Corpus
Conclusion by state appellate court, that evidence
was sufficient for jury to rationally conclude beyond
reasonable doubt that petitioner had committed crime
of first degree attempted assault under New York
law, was not contrary to, or unreasonable application
of, United States Supreme Court due process
precedent, and thus petitioner was not entitled to
federal habeas relief; petitioner intended to cause
serious physical injury by means of deadly weapon
by firing his gun at law enforcement agents. U.S.C.A.
Const.Amend 14; 28 U.S.C.A. § 2254; McKinney's
Penal Law § 120.10(1).

**[2] Criminal Law 110 0**

110 Criminal Law
The Due Process Clause of the Fourteenth
Amendment protects a defendant in a criminal case
against conviction except upon proof beyond a
reasonable doubt of every fact necessary to establish
the crime with which the defendant is charged; this
inquiry does not focus on whether the trier of fact
made the correct guilt or innocence determination,
but rather whether it made a rational decision to
convict or acquit. U.S.C.A. Const.Amend 14.

**[3] Habeas Corpus 197 0**

197 Habeas Corpus
On a federal habeas petition claiming that there was
insufficient evidence supporting the conviction, a
court is to determine whether the evidence adduced at
trial could support any rational determination of
guilty beyond a reasonable doubt. 28 U.S.C.A. §
2254.

**[4] Habeas Corpus 197 0**

197 Habeas Corpus
When considering a state prisoner's challenge based
upon the sufficiency of evidence, a federal habeas
court must look to state law to determine the
elements of a crime. 28 U.S.C.A. § 2254.

**[5] Habeas Corpus 197 0**

197 Habeas Corpus

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

Conclusion by state appellate court, that evidence was sufficient for jury to rationally conclude beyond reasonable doubt that petitioner had committed crime of reckless endangerment in the first degree under New York law, was not contrary to, or unreasonable application of, United States Supreme Court due process precedent, and thus petitioner was not entitled to federal habeas relief; petitioner fired his gun on more than one occasion in darkened residence in which he was clearly aware that other persons were present. U.S.C.A. Const.Amend 14; 28 U.S.C.A. § 2254; McKinney's Penal Law § 120.25.

**[6] Criminal Law 110 0**

110 Criminal Law
Federal habeas review of petitioner's Fourth Amendment claim was not warranted, on basis that claim had been fully and fairly litigated in state court, where state trial court had conducted reasoned inquiry into relevant questions of fact and law concerning petitioner's suppression motion. U.S.C.A. Const.Amend. 4; 28 U.S.C.A. § 2254.

**[7] Habeas Corpus 197 0**

197 Habeas Corpus
The merits of a Fourth Amendment claim asserted in a federal habeas petition may only be properly reviewed by a district court where: (1) the state has provided no corrective procedures to redress the alleged Fourth Amendment violations, or (2) the state has provided a corrective mechanism, but the petitioner was precluded from availing himself of such procedure due to an unconscionable breakdown in the underlying process. U.S.C.A. Const.Amend. 4; 28 U.S.C.A. § 2254.

**[8] Habeas Corpus 197 0**

197 Habeas Corpus
Determination made by state appellate court, that petitioner had not been in custody when he made statements to police officers, was not clearly erroneous, for purpose of *Miranda*, and thus petitioner was not entitled to federal habeas relief; statements were made by petitioner at his residence, he was not told that he was not free to leave his home, and police officers specifically informed petitioner that they did not want to arrest him. U.S.C.A. Const.Amends. 5, 14.

**[9] Arrest 35 0**

35 Arrest

Under *Miranda,* a person questioned by law enforcement officers after being taken into custody or otherwise deprived of his freedom of action in any significant way must first be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. U.S.C.A. Const.Amends. 5, 14.

**[10] Arrest 35 0**

35 Arrest
When determining whether an individual is "in custody," such that *Miranda* warnings are constitutionally required, courts are to consider whether a reasonable person would have believed he was at liberty to end the interrogation, taking into account the specific circumstances surrounding the subject questioning. U.S.C.A. Const.Amends. 5, 14.

**[11] Habeas Corpus 197 0**

197 Habeas Corpus
Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a state court's factual findings at a suppression hearing are presumed to be correct, and the habeas petitioner has the burden of overcoming that presumption by clear and convincing evidence; however, ultimate legal questions, such as whether a defendant has effectively waived his federal constitutional rights in a proceeding, are governed by federal standards. 28 U.S.C.A. § 2254(e)(1).

**[12] Arrest 35 0**

35 Arrest
For the purpose of *Miranda*, the determination as to the custodial status of an individual should be based upon the objective circumstances of the interrogation, rather than the subjective views harbored by either the interrogating officers or the person being questioned. U.S.C.A. Const.Amends. 4, 5, 14.

**[13] Arrest 35 0**

35 Arrest
Generally, absent an arrest, an individual is not in custody, unless the authorities affirmatively convey the message that the defendant is not free to leave; however, where the questioning was conducted in a custodial setting in which inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak existed, the individual is in custody for purposes of *Miranda*. U.S.C.A. Const.Amends. 4, 5, 14.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

**[14] Grand Jury 193 0**

193 Grand Jury
Claims based on alleged defects in state grand jury proceedings were not reviewable in federal petition for writ of habeas corpus relief unless they presented independent federal constitutional claim, since federal courts had not recognized constitutional right to indictment by grand jury in state criminal prosecutions. 28 U.S.C.A. § 2254.

**[15] Grand Jury 193 0**

193 Grand Jury
Any error in state grand jury proceedings was necessarily cured by his subsequent conviction by petit jury on charges contained in indictment, even assuming existence of federal right to indictment by grand jury.

**[16] Criminal Law 110 0**

110 Criminal Law
Decision of state appellate court, that prosecution of petitioner's trial, 14 months after he was arrested on charges of attempted first degree assault and reckless endangerment in the first degree, did not violate his right to speedy trial, was neither contrary to, nor unreasonable application of, United States Supreme Court precedent, and thus petitioner was not entitled to federal habeas relief; prosecution did not seek to delay criminal proceedings to hamper petitioner's defense, much of claimed delay was attributable to petitioner, no speedy trial claim had been asserted by petitioner until time of his appeal, and petitioner did not demonstrate that he had been prejudiced by delay. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. § 2254; McKinney's Penal Law § § 120.10, 120.25.

**[17] Criminal Law 110 0**

110 Criminal Law
Decision of state appellate court, that petitioner's Fourteenth Amendment right to fair trial had not been violated by his appearance at trial in prison clothes, was neither contrary to, nor unreasonable application of, United States Supreme Court precedent on petitioner's Fourteenth Amendment right to fair trial, and thus petitioner was not entitled to federal habeas relief; there was no evidence that petitioner had been forced to wear prison attire at his trial. U.S.C.A. Const.Amend 14; 28 U.S.C.A. § 2254.

**[18] Criminal Law 110 0**

110 Criminal Law
The failure of the defendant to make an objection to the court as to being tried in prison clothes, for whatever reason, is sufficient to negate the presence of a violation of a defendant's Fourteenth Amendment right to a fair trial. U.S.C.A. Const.Amend 14.

**[19] Habeas Corpus 197 0**

197 Habeas Corpus
Decision of state appellate court, that petitioner's claim alleging receipt of perjurious testimony at his trial was without merit, was neither contrary to, nor unreasonable application of, United States Supreme Court due process precedent, and thus petitioner was not entitled to federal habeas relief; prosecutor was not aware of allegedly perjurious testimony and such testimony did not undermine confidence in outcome of petitioner's trial. U.S.C.A. Const.Amend 14; 28 U.S.C.A. § 2254.

**[20] Criminal Law 110 0**

110 Criminal Law
Defendant did not establish that disputed testimony was perjurious, for purpose of his due process claim, through inconsistencies in testimony of some of prosecution witnesses and differences between testimony of prosecution witnesses and defendant's own trial testimony. U.S.C.A. Const.Amend 14.

**[21] Habeas Corpus 197 0**

197 Habeas Corpus
A showing that perjured testimony was introduced at a state trial, without more, does not establish a violation of due process rights and does not warrant federal habeas relief; rather, before relief may be granted on such a claim, the petitioner must demonstrate that the perjured testimony was material, i.e., that the receipt of such testimony undermined confidence in the outcome of the trial. U.S.C.A. Const.Amend 14; 28 U.S.C.A. § 2254.

**[22] Habeas Corpus 197 0**

197 Habeas Corpus
Where the prosecution is unaware of the claimed perjury, on a claim that perjured testimony was introduced at a state trial in violation of the petitioner's due process rights, a federal habeas petitioner must establish that the jury probably would have acquitted the defendant in the absence of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

false testimony. U.S.C.A. Const.Amend 14; 28 U.S.C.A. § 2254.

**[23] Criminal Law 110 0**

110 Criminal Law
The Sixth Amendment's right to the effective assistance of counsel requires that indigents be provided with effective counsel for their first appeal as of right. U.S.C.A. Const.Amend. 6.

**[24] Criminal Law 110 0**

110 Criminal Law
Defense counsel did not provide ineffective assistance by not conducting investigation, before defendant's trial on charges of attempted first degree assault and reckless endangerment in the first degree under New York law, into whether defendant was scheduled to receive check from insurance company; although defendant suggested that check would have demonstrated that he did not have motive to engage in criminal conduct, crimes charged did not require prosecution to establish motive for his actions and such evidence would not have cast doubt on detailed testimony regarding defendant's felonious conduct. U.S.C.A. Const.Amend. 6; McKinney's Penal Law § § 110.00, 120.10, 125.27.

**[25] Criminal Law 110 0**

110 Criminal Law
On an ineffective assistance of counsel claim, a bald assertion, that counsel should have conducted a more thorough pretrial investigation, fails to overcome the presumption that counsel acted reasonably. U.S.C.A. Const.Amend. 6.

**[26] Criminal Law 110 0**

110 Criminal Law
Defense counsel did not provide ineffective assistance by not securing evidence which could have established that defendant's residence was habitable, since such evidence would not have rendered investigation that had been undertaken by law enforcement agents at defendant's home improper, which ultimately resulted in defendant's arrest; agents were legally obligated to ensure that defendant, who had been recently released from sanitarium and had been declared person in need of supervision, was not danger to himself or other persons. U.S.C.A. Const.Amend. 6.

**[27] Habeas Corpus 197 0**

197 Habeas Corpus
Defense counsel did not provide ineffective assistance, by not engaging in demonstration at trial, pursuing justification defense, seeking dismissal of indictment, requesting change of venue, lodging unspecified objections at trial, and calling witnesses in defense to charges against him, for purpose of federal petition for writ of habeas corpus, since such decisions were strategic choices made by defense counsel, virtually unchallengeable in context of federal habeas corpus proceeding, petitioner did not establish that those strategic choices of counsel were objectively unreasonable, and petitioner did not demonstrate that he had been prejudiced in any way by those choices. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. § 2254.

**[28] Criminal Law 110 0**

110 Criminal Law
Although an individual's request for replacement counsel should be granted where such a conflict exists, a mere claim that a conflict existed was insufficient to warrant the granting of replacement counsel. U.S.C.A. Const.Amend. 6.

**[29] Criminal Law 110 0**

110 Criminal Law
A defendant's right to conflict-free representation of counsel is clearly established federal law as determined by the Supreme Court. U.S.C.A. Const.Amend. 6.

**[30] Criminal Law 110 0**

110 Criminal Law
A defendant's right to effective assistance of appellate counsel does not encompass the requirement that appellate counsel consult with his client to discuss the alleged trial errors that his client wishes to pursue. U.S.C.A. Const.Amend. 6.

**[31] Criminal Law 110 0**

110 Criminal Law
Appellate counsel need not, and should not, raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. U.S.C.A. Const.Amend. 6.

**[32] Criminal Law 110 0**

110 Criminal Law

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

On an ineffective assistance of counsel claim, there is a strong presumption of attorney competence, and the court's review of an appellate counsel's performance is highly deferential. U.S.C.A. Const.Amend. 6.

**[33] Habeas Corpus 197 0**

197 Habeas Corpus
To prevail upon a habeas claim alleging a failure on the part of appellate counsel to raise a particular argument on appeal, a petitioner must demonstrate that his counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. § 2254.

**[34] Criminal Law 110 0**

110 Criminal Law
An appellate attorney's failure to communicate with his or her client, by itself, does not constitute per se ineffective assistance of counsel. U.S.C.A. Const.Amend. 6.

**[35] Criminal Law 110 0**

110 Criminal Law
A right to a fair trial is a right protected by the due process clause of the Fourteenth Amendment. U.S.C.A. Const.Amend. 14.

**[36] Habeas Corpus 197 0**

197 Habeas Corpus
For federal habeas relief to be granted based on a claim of prosecutorial misconduct, the alleged misconduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. U.S.C.A. Const.Amend 14; 28 U.S.C.A. § 2254.

**[37] Criminal Law 110 0**

110 Criminal Law
On federal habeas review, when considering a due process claim of prosecutorial misconduct, a court is to focus on the fairness of the trial, not the culpability of the prosecutor. U.S.C.A. Const.Amend 14; 28 U.S.C.A. § 2254.

**[38] Criminal Law 110 0**

110 Criminal Law
To prove a *Brady* due process violation, a federal habeas petitioner must establish that: (1) the evidence

at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued from the withholding. U.S.C.A. Const.Amend 14.

**[39] Criminal Law 110 0**

110 Criminal Law
There is no violation under *Brady*, for failure of the government to promptly produce evidence material either to guilt or punishment, unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial. U.S.C.A. Const.Amend 14.

**[40] Criminal Law 110 0**

110 Criminal Law
The bad faith destruction of exculpatory evidence violates the Constitution's guarantee of due process of law. U.S.C.A. Const.Amend 14.

**[41] Criminal Law 110 0**

110 Criminal Law
Prosecutor did not violate defendant's due process rights under *Brady* to evidence material either to guilt or punishment by not providing defense counsel with copies of tape recordings made of telephone calls made to 911 operator and calls that were placed between law enforcement agents, since tapes were erased in light of standard practice of authorities to maintain such recordings only for period of 30 days absent specific request for copy of recording made prior to its erasure. U.S.C.A. Const.Amend 14.

**[42] Criminal Law 110 0**

110 Criminal Law
Discourteous conduct by prosecutor, in not permitting defendant to fully answer certain questions posed to him on three separate occasions during course of defendant's cross-examination, was not sufficient on federal habeas review to support claim of prosecutorial misconduct. U.S.C.A. Const.Amend 14; 28 U.S.C.A. § 2254.

**[43] Criminal Law 110 0**

110 Criminal Law
Any misconduct by prosecutor at defendant's sentencing, which necessarily occurred after his criminal trial had ended, could not have deprived

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

defendant of his right to fair trial. U.S.C.A. Const.Amend 14.

**[44] Habeas Corpus 197 0**

197 Habeas Corpus
Decision of state appellate court, denying petitioner's claim of misconduct by state trial judge, was not contrary to, or unreasonable application of, Supreme Court precedent, and thus petitioner was not entitled to federal habeas relief. 28 U.S.C.A. § 2254.

**[45] Criminal Law 110 0**

110 Criminal Law
To establish that a judge has engaged in misconduct sufficient to warrant redress, a party must demonstrate that the judge displayed such a high degree of favoritism or antagonism as to make fair judgment impossible.

**[46] Criminal Law 110 0**

110 Criminal Law
When reviewing a judicial misconduct claim, a court is to presume that public officials have properly discharged their official duties.

**[47] Criminal Law 110 0**

110 Criminal Law
Courts viewing a cold record may not reassess the jury's finding of credibility concerning the testimony of witnesses offered at trial.

**[48] Criminal Law 110 0**

110 Criminal Law
Jury's verdict, convicting defendant on charges of attempted first degree assault and reckless endangerment in the first degree under New York law, was not inconsistent or repugnant, since defendant may have intended to cause serious physical injury to one or more of police officers by firing his gun at law enforcement agents while simultaneously recklessly creating grave risk that different, more serious result, such as death, would have ensued from his wrongful actions. McKinney's Penal Law § § 120.10, 120.25; McKinney's CPL § 300.30(5).

**[49] Criminal Law 110 0**

110 Criminal Law
Whether verdicts are repugnant or inconsistent is

determined under New York law by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled. McKinney's CPL § 300.30(5).

**[50] Habeas Corpus 197 0**

197 Habeas Corpus
Federal district court on federal habeas review could not sua sponte dismiss petitioner's access-to-courts claim on procedural basis of failure to exhaust his state court remedies, where state did not argue that claim had to be dismissed due for failure to exhaust. 28 U.S.C.A. § 2254.

**[51] Criminal Law 110 0**

110 Criminal Law
Defendant had not been denied access to courts by not allowing him to provide oral argument in conjunction with his pro se appellate brief, where appellate court considered defendant's pro se brief in arriving at its decision denying his appeal, and result of defendant's appeal would not have been any different had defendant, as non-attorney with history of psychiatric illness, been afforded opportunity to orally argue points raised in his pro se appellate brief.

**[52] Criminal Law 110 0**

110 Criminal Law
Prisoners have a constitutional right of access to the courts.

**[53] Criminal Law 110 0**

110 Criminal Law
In order to establish a violation of the right of access to the courts, a prisoner must show that the alleged conduct resulted in actual injury to the prisoner such as the dismissal of an otherwise meritorious legal claim.

Alan Campbell, Romulus, NY, Petitioner, pro se.
Eliot Spitzer, Attorney General of the State of New York, Senta B. Siuda, Esq., Assistant Attorney General, of counsel, Syracuse, NY, for the Respondent.

*MEMORANDUM-DECISION AND ORDER*
NEAL P. McCURN, Senior United States District Judge.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

## I. *Background*

### A. *State Court Proceedings*

**\*1** According to the testimony adduced at trial, in March, 1998 Stephen Brozost was a senior caseworker employed by the Adult Protective Services Division of the Broome County Department of Social Services ("Broome County DSS"). *See* Transcript of Trial of Alan Campbell (5/4/99) ("Trial Tr.") at 181-83. On March 18, 1998, after numerous unsuccessful attempts by Brozost to contact one of his clients, petitioner, *pro se* Alan Campbell, Brozost drove to Campbell's home on Amsbry Street in Binghamton, New York. Trial Tr. at 183-84. Upon arriving at Campbell's residence, Brozost noticed that the back door to the home was ajar. Trial Tr. at 184. He then called out to Campbell on several occasions in the darkened home to no avail. Trial Tr. at 185. Although Brozost suspected that Campbell was in the residence, Brozost left the home and contacted the Binghamton police department when he heard what he believed to be rustling noises coming from within the residence. Trial Tr. at 185.

Richard Edwards, a patrolman with the police department, was dispatched to Campbell's Amsbry Street residence to assist in the developing situation at the home. Trial Tr. at 206. Upon arriving at Campbell's residence, Officer Edwards called out to Campbell that Officer Edwards was "with a case worker" and that the two were there to help Campbell. Trial Tr. at 207-08. As Officer Edwards was knocking on the rear door of the residence to gain entry, the door popped open and he, Brozost and Officer James Mooney of the Binghamton police department entered the dimly-lit home. Trial Tr. at 208-10. Soon after entering the residence, Officer Edwards noticed that Campbell was holding a dark, long-barreled revolver. Trial Tr. at 211. Brozost was then directed to leave the residence, Trial Tr. at 212, and the officers began a "back and forth" conversation with Campbell that lasted over one hour. Trial Tr. at 213. During that time, Officers Edwards and Mooney-both of whom were in police uniform-assured Campbell that they were police officers, Trial Tr. at 213, 240, however Campbell accused the men of attempting to burglarize his residence. Trial Tr. at 213.

After several hours during which Officers Edwards, Officer Mooney and other law enforcement agents attempted to persuade Campbell to leave his residence, he fired a shot which hit the ballistics shield of Police Officer James A. Grier. Trial Tr. at 286-89, 310. Soon thereafter, Campbell fired another shot in the direction of the police. Trial Tr. at 307. To end the increasingly dangerous situation that was unfolding at the scene, law enforcement agents injected tear gas into Campbell's home to force him to leave the residence. Trial Tr. at 290. Campbell soon left his home and was placed under arrest. Trial Tr. at 290-91.

On April 8, 1998, a Broome County grand jury returned an indictment against Campbell. *See* Indictment No. 98-229 ("Indictment"). In that accusatory instrument, Campbell was charged with, *inter alia:* i) attempted murder in the first degree, in violation of N.Y. Penal L. § § 110.00 and 125.27; ii) attempted first degree assault, in violation of N.Y. Penal L. § § 110 .00 and 120.10; and iii) reckless endangerment in the first degree, in violation of N.Y. Penal L. § 120.25. *See* Indictment, Counts One through Three. [FN1]

**\*2** By Order filed on May 18, 1998, Broome County Court Judge Martin E. Smith directed Campbell to undergo a psychiatric examination pursuant to New York's Criminal Procedure Law ("CPL") § 730. *See* Stipulated Record on Appeal ("Stipulated Record") at R7-10. Campbell was thereafter examined by two psychiatrists who prepared reports for the county court which addressed the issue of Campbell's fitness to proceed to trial. After reviewing those reports, Judge Smith committed Campbell to the custody of the New York State Office of Mental Health. *See People v. Campbell,* No. 98-229 (Broome Cty. Ct. June 15, 1998).

The following year, Judge Smith ordered Campbell to undergo another mental health examination, *see* Stipulated Record at R56-58, and after the court's review of the reports prepared following that examination, Judge Smith directed that a competency hearing be held relating to Campbell's fitness to stand trial. On May 3, 1999, Judge Smith presided over that hearing. At the conclusion of that proceeding, Judge Smith determined that Campbell was fit to proceed to trial. *See* Transcript of Competency Hearing in *People v. Campbell,* No. 98-229 (5/3/99) ("May, 1999 Competency Hearing") at 79.

Beginning on May 4, 1999, Campbell was tried in Broome County Court before a jury on the charges brought against him in the Indictment with Judge Smith presiding. After making several requests during the course of its deliberations, *see* Trial Tr. at 564-587, the jury advised the trial court that it had

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reached a verdict in the case. Trial Tr. at 587. In its verdict, the jury acquitted Campbell of the attempted murder charge but convicted him of the remaining counts in the Indictment that were submitted to the jury. Trial Tr. at 590-91.

On July 26, 1999, Judge Smith sentenced Campbell to a term of seven and one-half to fifteen years imprisonment on the first degree attempted assault conviction, and a lesser, concurrent sentence on the remaining conviction. See Transcript of Sentencing of Alan Campbell (7/26/99) at 11-12.

Campbell appealed his convictions and sentences to the New York State Supreme Court, Appellate Division, Third Department. In support of that appeal, in addition to counsel's appellate brief, Campbell filed a *pro se* appellate brief with the Appellate Division in which Campbell asserted numerous points in support of his appeal. *See Pro Se* Appellate Brief (7/30/00) ("*Pro Se* Appellate Brief") at 1-54. Campbell's appeal was opposed by the Broome County District Attorney, and on January 18, 2001, the Third Department unanimously affirmed Campbell's convictions and sentences. *People v. Campbell,* 279 A.D.2d 797, 718 N.Y.S.2d 744 (3d Dept.2001). New York's Court of Appeals subsequently denied Campbell leave to appeal in its order dated May 16, 2001. *See People v. Campbell,* 96 N.Y.2d 826, 729 N.Y.S.2d 446, 754 N.E.2d 206 (2001).

### B. *Proceedings in this Court*

Campbell commenced this proceeding, *pro se,* on May 24, 2002. *See* Petition. After filing several motions seeking various forms of relief that were addressed by this Court, on September 2, 2003, Campbell filed a motion to file an amended petition in this action. Dkt. No. 26. The Office of the Attorney General for the State of New York, who had filed an appearance in this matter on respondent's behalf, took no position with respect to Campbell's application, Dkt. No. 29, and by order filed October 9, 2003, then-Magistrate Judge Gary L. Sharpe granted Campbell's motion to amend. *See* Dkt. No. 31. Petitioner filed that amended pleading on November 21, 2003. *See* Dkt. No. 33 ("Am.Pet.").

*3 In his amended petition, Campbell asserts numerous grounds in support of his request for federal habeas intervention. Specifically, Campbell argues in his amended pleading that: i) the prosecution failed to prove all elements of the

charges brought against him; ii) his conviction was the product of both an illegal arrest and seizure; iii) he was improperly questioned by law enforcement agents in violation of his *Miranda* rights; [FN2] iv) he was wrongfully denied the opportunity to testify before the grand jury that indicted him; v) perjurious testimony was presented to the grand jury; vi) he was denied his constitutional right to a speedy trial; vii) he was improperly forced to wear prison attire during the course of his criminal trial; viii) certain prosecution witnesses committed perjury during the course of the trial; ix) Campbell received the ineffective assistance of trial counsel; x) the prosecutor engaged in misconduct during the course of the criminal proceedings below; xi) the county court committed various errors that necessitate overturning Campbell's conviction; xii) the testimony of the police officers regarding what transpired March 18, 1998 was not credible; xiii) the jury's verdict was inconsistent; xiv) Campbell received the ineffective assistance of appellate counsel; and xv) Campbell was wrongfully denied the opportunity to orally present his appellate arguments to the Third Department. *See* Am. Pet. at 9-27. In opposing Campbell's amended petition, the Attorney General argues that none of petitioner's habeas claims have merit. *See* Dkt. Nos. 15 ("Resp.Mem."), 35.

## II. *DISCUSSION*

### A. *Applicable Standard of Review*

In *Rodriguez v. Miller,* 439 F.3d 68 (2d Cir.2006), the Second Circuit recently observed that under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Rodriguez,* 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177-78 (2d Cir.2003). The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden

of rebutting the presumption of correctness by clear and convincing evidence." 28 U .S.C. § 2254(e)(1); *see also* DeBerry, 403 F.3d at 66; *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001).

"A state court adjudication is 'contrary to' clearly established federal law only if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.' " *Rodriguez,* 439 F.3d at 73 (quoting *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause of the AEDPA, a federal habeas court may only grant the writ where the state court's decision "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Rodriguez,* 439 F.3d at 73 (quoting *Williams,* 529 U.S. at 413). A federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams,* 529 U .S. at 409; *see also Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir .2001). The *Rodriguez* court noted that although " 'some increment of incorrectness beyond error is required' " in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Rodriguez,* 439 F.3d at 73 (citing *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)).

## B. *Substance of Campbell's Claims*

### 1. *Sufficiency of Evidence*

*4 [1] In the first ground of his amended petition, Campbell argues that the prosecution failed to "prove all elements of the charge[s]." Am. Pet. at 9.

#### i. *Clearly Established Supreme Court Precedent*

[2][3] The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to establish the crime with which the defendant is charged. *See Fiore v. White,* 531 U.S. 225, 228-29, 121 S.Ct. 712,

148 L.Ed.2d 629 (2001); *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *Schlup v. Delo,* 513 U.S. 298, 323 n. 38, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson,* 443 U.S. at 319. Thus, federal courts are to determine "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." *United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citing *Jackson* )) (other citations omitted).

#### ii. *Contrary to, or Unreasonable Application of, Relevant Supreme Court Precedent*

[4] A habeas petitioner bears a "very heavy burden" when seeking to invalidate a conviction based upon a claim of insufficient evidence. *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir.2002) (citing *Quirama v. Michele,* 983 F.2d 12, 14 (2d Cir.1993)); *see also Clark v. Irvin,* 844 F.Supp. 899, 904 (N.D.N.Y.1994) (Hurd, M.J.). Specifically, the court is to determine whether:

the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt. In making this determination, [the court] must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

*Ferguson v. Walker,* No. 00CIV1356, 2001 WL 869615, at *4 & n. 4 (S.D.N.Y. Aug. 2, 2001) (Peck, M.J.) (quoting *United States v. Carson,* 702 F.2d 351, 361 (2d Cir.1983)) (citations omitted), *adopted, Ferguson v. Walker,* No. 00CIV1356, 2002 WL 31246533 (S.D.N.Y. Oct. 7, 2002). Furthermore, when considering a challenge based upon the sufficiency of evidence, a federal habeas court must look to state law to determine the elements of a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

crime. *See Jackson,* 443 U.S. at 324; *Ponnapula,* 297 F.3d at 179. This Court therefore considers Campbell's habeas claim that the prosecution failed to "prove all elements of the charge[s]" in conjunction with both of the crimes of which he was convicted. Am. Pet. at 9.

### a. *First Degree Attempted Assault*

**\*5** For the jury to have properly convicted Campbell of first degree attempted assault, the prosecution was required establish that Campbell, with the intent to cause serious physical injury to another person, did attempt to cause such an injury to another person by means of a deadly weapon. *See* N.Y. Penal Law § 120.10(1); [FN3] *Almonte v. Lape,* No. 05CIV.1995, 2006 WL 839073, at \*9 (S.D.N.Y. Mar. 30, 2006); *see also* Trial Tr. at 547-48.

In an apparent attempt to persuade this Court that the prosecution failed to establish that Campbell intended to cause serious physical injury to any of the individuals in his home on March 18, 1998, Campbell argues that the officers in his home at the time the shots were fired were behind a wall where they could not have been injured. Am. Pet. at 9. He further claims that at the time he fired his gun, he: i) was blinded by the lights that were being used by the law enforcement agents at the time of the shooting (thereby establishing that Campbell could not have intended to harm anyone); and ii) did not believe anyone was in the area at which his gun was pointed. Am. Pet. at 10. Campbell also seems to claim that the dark clothing worn by the law enforcement agents that were in his house rendered them "invisible," further demonstrating that he did not attempt to shoot anybody. *Id.* Campbell argues that "[r]eckless [c]onduct that comes within inches or even injures is not intentional." *Id.*

As noted above, the evidence established that Campbell fired a gun in the direction of police officers who had been engaged in lengthy discussions with Campbell in his home, and that the bullet petitioner fired lodged in the ballistics shield the officer was holding. Trial Tr. at 286-89, 305-07. Such officer testified that at the time the shield was struck by the bullet, it was protecting the right side of his chest. Trial Tr. at 310. Campbell also fired a second round at the officers. Trial Tr. at 307. Petitioner has offered nothing short of mere conjecture which supports his claim that he could not see the police officers with whom he was speaking, either because of the poor lighting in his home at the time or due to

the clothing that they were wearing. Moreover, the fact that the ballistics shield that was being held by one of officers was hit by Campbell's bullet establishes that the officers were not protected from danger by any wall in his home. Since the evidence clearly demonstrated that Campbell fired his gun at law enforcement agents, "no reasonable view of the evidence supports the conclusion that the defendant intended to cause the complainant anything less than 'serious physical injury ... by means of a deadly weapon.' " *People v. Brooks,* 278 A.D.2d 501, 501, 718 N.Y.S.2d 402 (2d Dept.2000). Thus, this aspect of Campbell's amended petition is without substance.

### b. *First Degree Reckless Endangerment*

**[5]** As to the remaining charge of which the jury found Campbell guilty, reckless endangerment in the first degree, the Court initially notes that it is unclear whether Campbell is challenging his conviction on that charge in the present action. As noted above, Campbell suggests that he engaged in reckless conduct-but not intentional conduct-at the time he fired his weapon. *See* Am. Pet. at 10 ("[r]eckless [c]onduct that comes within inches or even injures is not intentional").

**\*6** Nevertheless, this Court is cognizant of the fact that habeas actions are to be construed liberally in this Circuit. *Alexis v. Smith,* No. 03CIV.391, 2003 WL 22434154, at \*4 (S.D.N.Y. Oct. 24, 2003) (citing *Chambers v. United States,* 106 F.3d 472, 475 (2d Cir.1997)); *Montalvo v. Newton,* No. 98CIV8665, 2001 WL 1399527, at \*4 (S.D.N.Y. Mar.23, 2001) (citing *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *see, e.g., Phillips v. Gordich,* 408 F.3d 124, 130 (2d Cir.2005) (in construing *pro se* parties' submissions, "the court's imagination should be limited only by [party's] factual allegations, not by the legal claims set out in his pleadings") (citation omitted). This Court will therefore consider this ground for relief as one that also challenges the sufficiency of the evidence adduced at trial regarding Campbell's guilt of the reckless endangerment charge.

To establish petitioner's guilt of that crime, the prosecution was required to prove that on March 18, 1998, Campbell, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of danger to another person or persons. *See* N.Y. Penal Law § 120.25; *People v. Martinez,* 166 A.D.2d 882, 560 N.Y.S.2d 542 (4th Dept.1990); *see also* Trial Tr.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

at 548-49.

The trial testimony referenced above established that Campbell fired his gun on more than one occasion in a darkened residence in which he was clearly aware that others were present. That conduct is more than sufficient to demonstrate that Campbell was guilty of the crime of reckless endangerment in the first degree. *E.g., Rodriguez v. Hoke,* No. 86 C 3058, 1987 WL 9679, at *2-3 (E.D.N.Y. Apr.1, 1987) (evidence that petitioner fired gun in darkened room in which police officers were present established petitioner's guilt of crime of first degree reckless endangerment).

In sum, this Court concludes that the evidence adduced at trial established Campbell's guilt of the above charges, and was more than sufficient to surpass the relatively modest hurdle posed by *Jackson.* Therefore, the undersigned denies Campbell's first ground for relief.

### 2. *Fourth Amendment Violations*

[6] In his second ground, Campbell argues that the police did not have probable cause to enter his home on March 18, 1998, and that therefore all evidence obtained by law enforcement agents should have been suppressed by the county court. *See* Am. Pet. at 10. Campbell further claims that because there was no basis upon which the police could have reasonably believed that Campbell had committed a crime or was a danger to himself, his arrest was illegal . [FN4] *Id.* at 10-11. Petitioner additionally asserts that when the police returned to his home after his arrest on March 18, 1998, law enforcement agents only possessed a warrant which authorized the removal of weapons found in Campbell's house, and therefore all evidence they removed from his apartment which was not specifically authorized by the search warrant was illegally seized and should have been suppressed. *Id.* at 11-12.

*7 [7] In this circuit, the merits of a Fourth Amendment claim asserted in a federal habeas petition may only be properly reviewed by a district court where: 1) the state has provided no corrective procedures to redress the alleged Fourth Amendment violations; or 2) the state has provided a corrective mechanism, but the petitioner was precluded from availing himself of such procedure due to an unconscionable breakdown in the underlying process. *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992) (citing *Stone v. Powell,* 428 U.S. 465, 481-82, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)); *see also*

*Martinez v. Senkowski,* No. 6:97-CV-624, 2000 WL 888031, at *7 (N.D.N.Y. June 28, 2000) (Scullin, C.J.).

New York State has provided an opportunity for criminal defendants to fully and fairly litigate Fourth Amendment claims. *See* CPL § 710; *Capellan,* 975 F.2d at 70 n. 1; *Jackson v. Lacy,* 74 F.Supp.2d 173, 176 (N.D.N.Y.1999) (McAvoy, C.J.) (adopting Report-Recommendation of Magistrate Judge Ralph W. Smith, Jr.). Specifically, under the CPL, a criminal defendant may move to suppress evidence he believes was unlawfully or improperly obtained where the defendant "has reasonable cause to believe that such [evidence] may be offered against him in a criminal action." *See* CPL § 710.20. Accordingly, in light of *Stone* and *Capellan,* Campbell must demonstrate that he was precluded from fully and fairly litigating the present habeas claim in the state courts in order to establish a legal basis for this Court's review of his Fourth Amendment claim. *Chavis v. Henderson,* 638 F.2d 534, 538 (2d Cir.1980); *Devino v. Duncan,* No. 01 CIV. 9044, 2004 WL 884961, at *4 (S.D.N.Y. Apr.23, 2004); *Montalvo v. Annetts,* No. 02 CIV.1056, 2003 WL 22962504, at *16 (S.D.N.Y. Dec.17, 2003) (citing *Chavis* ) (other citations omitted).

Nowhere in Campbell's amended petition does he claim that he was denied a full and fair opportunity to litigate his Fourth Amendment challenges in the state court. *See* Am. Pet. Additionally, this Court's review of the transcript of the suppression hearing conducted by the county court establishes that the trial court's denial of Campbell's suppression motion was a reasoned decision based upon the facts presented to that court at such hearing. [FN5] Specifically, after considering all of the evidence adduced at that hearing, the county court made the following factual findings:

It is clear that the police were properly advised by Mr. Brozost of the Broome County Department of Social Services ... that [Campbell] had just recently been released from the Binghamton Psychiatric Center ..., that he suffered from a mental disease or defect and ... [he was] a danger to himself or others.... Mr. Brozost ... was under an obligation to attempt to locate the Defendant because he did have, in fact, a good faith basis to believe that the Defendant was one of those individuals which the statute defines as falling into the category of self-neglect. .... The information ... Mr. Brozost ... made available to the Binghamton police was specifically that the Defendant had been released from Binghamton Psychiatric Center upon the understanding and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

condition that he was going to be residing at the Volunteers of America for the simple reason that his home ... was totally uninhabitable, lacked all utilities. On top of that the Defendant had a history of having an open fire in that apartment which caused a further fire and the individuals had to be evacuated from the apartment.... Mr. Brozost had a good faith basis ... to attempt to locate the defendant and when he went to defendant's apartment on March 18 he heard a noise in the apartment.... And it is this Court's view that the police, likewise, had an affirmative obligation to go to defendant's apartment ... to attempt to locate him to determine whether or not he was in good health, in good shape and particularly given the information made available to them, so they had a right to go in to his apartment and check on his well-being given the history in this particular case.

*8 Suppression Tr. at 110-12. After reviewing the transcript of the suppression hearing, this Court endorses the above findings and conclusions of the county court.

Since Campbell has presented no evidence that the state courts failed to conduct a reasoned method of inquiry into the relevant questions of fact and law concerning his suppression motion, the Fourth Amendment claims asserted by Campbell in his second ground for relief must be denied. *See Capellan,* 975 F.2d at 70 (citation omitted); *Quick v. Allard,* No. 04-CV-2069, 2004 WL 2326376, at *2 (E.D.N.Y. Oct. 12, 2004), *Morales v. Walsh,* No. 02-CV-6045, 2003 WL 23185770, at *15 (E.D.N.Y. Oct.30, 2003) (denying Fourth Amendment claims, including claim of unlawful arrest, under *Stone* doctrine); *McPherson,* 2003 WL 22405449, at *15-16; *Martinez,* 2000 WL 888031, at *7.

### 3. *Miranda Claims*

[8] In his third ground for relief, Campbell argues that the county court improperly allowed the prosecution to use his statements to the police on March 18, 1998 as evidence against petitioner at his trial. Am. Pet. at 12-13.

### i. *Clearly Established Supreme Court Precedent*

[9][10] Under *Miranda,* "a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does

make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' " *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (quoting *Miranda,* 384 U.S. at 444). However, law enforcement agents are only required to administer *Miranda* warnings when the suspect interrogated by the police is "in custody." *Thompson v. Keohane,* 516 U.S. 99, 102, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). In determining whether an individual is "in custody" such that *Miranda* warnings are constitutionally required, courts are to consider whether a reasonable person would have believed he was at liberty to end the interrogation, taking into account the specific circumstances surrounding the subject questioning. *Thompson,* 516 U.S. at 111.

### ii. *Contrary to, or Unreasonable Application of, Relevant Supreme Court Precedent*

Initially, the Court notes that claims alleging a violation of one's *Miranda* rights are grounded in both the Fifth Amendment's guarantee that no person shall be compelled to be a witness against himself in a criminal case, as well as the Fourteenth Amendment's provision guaranteeing individuals the right to due process of law. *See Withrow v. Williams,* 507 U.S. 680, 688-89, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (citations omitted). Thus, the *Stone* doctrine-which relates to Fourth Amendment claims-does not preclude federal habeas review of *Miranda*-based claims. *See Reed v. Farley,* 512 U.S. 339, 348, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (citations omitted); *Bilbrew v. Garvin,* No. 97-CV-1422, 2001 WL 91620, at *6 (E.D.N.Y. Jan. 10, 2001) ("the Supreme Court [has] rejected [*Stone's* ] application to alleged *Miranda* violations") (citations omitted); *Hoover v. Leonardo,* No. 00-CV-2662, 1996 WL 1088204, at *6 (E.D.N.Y. June 11, 1996) ("[a]lthough *Stone* ... bars habeas review of unconstitutional search and seizure claims that have been fully litigated in state court, *Miranda* claims are excepted from this prohibition") (citing *Withrow); Ford v. Hoke,* No. CV-91-4093, 1994 WL 594283, at *4 (E.D.N.Y. Oct.25, 1994), *aff'd,* 122 F.3d 1056 (2d Cir.1995).

*9 The state court records reflect that at the conclusion of the March 22, 1999 suppression hearing, Judge Smith determined that all of the statements made by Campbell on March 18, 1998 until he left his residence were admissible because he was not in custody at the time he uttered those

statements. *See* Suppression Tr. at 113. However, the county court determined that once Campbell left his house and was placed in handcuffs, he was "in custody" for *Miranda* purposes and his statement to the police outside his residence on that date was therefore inadmissible at trial because petitioner had not both been advised of and waived his *Miranda* rights prior to making that statement. Suppression Tr. at 113-14.[FN6]

In his *pro se* appellate brief, Campbell argued that all of his statements to law enforcement agents on the day of his arrest should have been suppressed, and that the county court erred in allowing some of those statements to be introduced against him at his trial. *See Pro Se* Appellate Brief at 26. The Appellate Division found Campbell's *Miranda* claim to be without merit. *Campbell,* 279 A.D.2d at 798, 718 N.Y.S.2d 744.[FN7]

[11] Under the AEDPA, a state court's factual findings at a suppression hearing are presumed to be correct, and the petitioner has the burden of overcoming that presumption by clear and convincing evidence. *See Sorto v. Herbert,* 2004 WL 2852358, at *2 (E.D.N.Y. Dec.13, 2004) (citing 28 U.S.C. § 2254(e)(1)); *James v. Walker,* 2003 WL 22952861, at *6 (E.D.N.Y. Aug.28, 2003), *aff'd,* 2004 WL 2496742, at *6 (2d Cir.2004). However, "ultimately legal questions, such as whether a defendant has effectively waived his federal constitutional rights in a proceeding, are governed by federal standards." *Oyague v. Artuz,* 393 F.3d 99, 104 (2d Cir.2004). This Court therefore considers Campbell's habeas claim alleging a violation of *Miranda* (*see* Am. Pet. at 12-13) mindful of these principles.

[12][13] "The test used in determining whether a defendant was in custody is an objective one.[FN8] Generally, absent an arrest, an individual is not 'in custody,' "unless the authorities affirmatively convey the message that the defendant is not free to leave." *United States v. Mitchell,* 966 F.2d 92, 98 (2d Cir.1992). However, where the questioning was conducted in a custodial setting in which "inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak" existed, the individual is "in custody" for purposes of *Miranda. See United States v. Newton,* 369 F.3d 659, 669 (2d Cir.2004) (citation omitted).

In the case *sub judice,* the statements made by Campbell which he believes were improperly admitted into evidence against him were made by

him at his residence, a factor that weighs against a finding that he was in custody. *See Mitchell,* 966 F.2d at 99. Furthermore, Campbell does not allege, nor does the record support, a finding that he was told that he was not free to leave his home. This factor also supports the trial court's determination that Campbell was not in custody at the time he made the statements to law enforcement agents while in his residence. *E.g., United States v. Waters,* 786 F.Supp. 1111, 1119 (N.D.N.Y.1992) (Munson, S.J.). Furthermore, Campbell himself testified at trial that the officers specifically informed him that they did not want to arrest Campbell. *See* Trial Tr. at 443. Such a statement is an "an important factor" that weighs against a finding that a suspect was in custody. *United States v. Newton,* 181 F.Supp.2d 157, 174 (E.D.N.Y.2002). Thus, after considering this matter, the Court agrees with the county court's determination that until Campbell left his home and was placed under arrest by law enforcement agents, he was not "in custody" such that the police were required to advise Campbell of his *Miranda* rights. Therefore, his statements to the police prior to that time were properly admitted into evidence against him despite the fact that law enforcement agents had not advised Campbell of his *Miranda* rights. Therefore, the Court denies his third ground for relief.

#### *4. Grand Jury Claims*

\*10 [14] In his fourth ground for relief, petitioner argues that he was never notified by the district attorney as to when he was going to present his case against Campbell before the grand jury, and that therefore he was wrongfully denied his right to testify before that accusatory body. Am. Pet. at 13. In his fifth ground for relief, petitioner cites several comments purportedly made by individuals who testified before the grand jury and argues that such statements were "perjured and prejudicial." Am. Pet. at 14. Petitioner contends that because perjurious testimony was presented to the grand jury, his convictions should be overturned. *Id.*

[15] Unfortunately for petitioner, federal courts have not recognized a constitutional right to indictment by a grand jury in state criminal prosecutions. *See Smith v. Walsh,* No. 00-CV-5672, 2003 WL 22670885, at *7 (E.D.N.Y. Oct.20, 2003); *see also Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). Therefore, claims based on alleged defects in grand jury proceedings are not reviewable in a petition for a writ of habeas corpus

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

relief unless they present an independent federal constitutional claim.[FN9] *See Lopez v. Riley*, 865 F.2d 30, 32-33 (2d Cir.1989); *Barnes v. Giambruno*, No. 01 CIV. 8965, 2002 WL 850020, at *7 (S.D.N.Y. May 2, 2002) ("[i]t is clearly established in this Circuit that [grand jury claims are] not cognizable [under § 2254]") (citing *Lopez* ). Moreover, even assuming the existence of a federal right to indictment by a grand jury, Campbell would nonetheless not be entitled to habeas relief on this claim because any error in the grand jury proceedings was necessarily cured by his subsequent conviction by a petit jury on the charges contained in the Indictment. As the Supreme Court has explained:

[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendant[ ] w[as] guilty as charged, but also that [he is] in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*United States v. Mechanik*, 475 U.S. 66, 70, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986); *see also United States v. Morrison*, 153 F.3d 34, 55 (2d Cir.1998) (claim that "grand jury was presented with perjured testimony and with altered tape recordings" without substance, "[t]he jury's verdict of guilty ... rendered harmless any error resulting from the evidence used to indict him"); *Green v. Artuz*, 990 F.Supp. 267, 273 n. 8 (S.D.N.Y.1998) (petitioner's claim that he was denied right to testify before grand jury not cognizable in § 2254 proceeding); *see also Mariani v. Kelly*, No. 97-CV-384 (Dkt. No. 36), 2001 WL 1860961, at *5 (N.D.N.Y. Jan.17, 2001) (Sharpe, M.J.) (citations omitted), *adopted Mariani v. Kelly*, No. 97-CV-384 (Dkt. No. 38) (N.D.N.Y. Sept. 27, 2001) (Scullin, C.J.), *appeal dismissed, Mariani v. Kelly*, No. 97-CV-384 (Dkt. No. 45) (2d Cir. Nov. 13, 2001); *Beverly v. Walker*, 899 F.Supp. 900, 908 (N.D.N.Y.1995) (Scullin, J.) (citing *Mechanik), aff'd*, 118 F.3d 900 (2d Cir.1997).

**\*11** In light of the foregoing, this Court denies Campbell's fourth and fifth grounds for relief, both of which seek federal habeas intervention due to claimed deficiencies and/or improprieties relating to the grand jury proceedings below.

### 5. *Right to Speedy Trial*

[16] In his sixth ground, Campbell argues that his conviction must be reversed in that it was obtained in violation of his constitutional right to a speedy trial. Am. Pet., Ground Six.

#### i. *Clearly Established Supreme Court Precedent*

The Sixth Amendment provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const., Amend. VI. In considering whether this right to a speedy trial has been violated, a court must consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

#### ii. *Contrary to, or Unreasonable Application of, Supreme Court Precedent*

Campbell argued in his *pro se* appellate brief that, as a result of various matters that occurred subsequent to his arrest on March 18, 1998, his "trial was delayed for 15 months and [he] was only ... marginally more prepared [for trial] than the day I was arrested." *See Pro Se* Appellate Brief at 35. In evaluating Campbell's federal habeas claim which similarly alleges that a fifteen month delay between his arrest and the commencement of his trial violated his federal right to a speedy trial (*see* Am. Pet. at 14-16), this Court must determine whether the Third Department's decision rejecting Campbell's speedy trial claim, *see Campbell*, 279 A.D.2d at 798, 718 N.Y.S.2d 744, is either contrary to, or represents an unreasonable application of, *Barker* and its progeny.

Considering first the length of the delay, this Court notes that Campbell was arrested on March 18, 1998 (Trial Tr. at 284, 290-91) and his jury trial on the charges contained in the Indictment commenced May 4, 1999 (Trial Tr. at 1), less than fourteen months after his arrest. The United States Supreme Court, as well as courts within the Second Circuit, have found no constitutional speedy trial violation to have occurred in cases in which the period of time between a defendant's arrest and trial was substantially longer than one year. *See Barker*, 407 U.S. at 533-34 (over five years); *Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir.1988) (over seven years); *United States v. Lane*, 561 F.2d 1075, 1078 (2d Cir.1977) (fifty-eight months); *United States v. Penn*, ---F.Supp.2d ----, No. 93CR.1024, 2006 WL 1586561, at *1-2 (S.D.N.Y. June 9, 2006) (no speedy trial violation despite fact that nearly twelve *years* had elapsed between indictment and commencement of trial); *Holden v.*

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

*Miller,* No. 00Civ.0926, 2000 WL 1121551, at *10 (S.D.N.Y. Aug.8, 2000) (two and one-half year delay). Thus, this factor does not support Campbell's speedy trial claim.

*12 In analyzing the second *Barker* factor, the Supreme Court has noted that:

[D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker,* 407 U.S. at 531; *see also Flowers v. Warden,* 853 F.2d 131, 134 (2d Cir.1988). Nothing in the record suggests that the prosecution sought to delay the criminal proceedings concerning Campbell in order to hamper his defense. To the contrary, Campbell himself admits in his amended pleading that much of the claimed delay between his arrest and the commencement of his trial was attributable either to matters undertaken by defense counsel relative to his representation of Campbell or which related to issues concerning petitioner's competency to stand trial. *See* Am. Pet. at 15-16. Since there is no evidence that the State sought to delay Campbell's trial in an attempt to hamper petitioner's defense, this factor does not weigh in his favor. *Vaughn v. Giambruno,* No. 03CIV.5403, 2005 WL 1995391, at *6 (S.D.N.Y. Aug. 19, 2005); *Howard v. Lacy,* 58 F.Supp.2d 157, 168 (S.D.N.Y.1999) (citations omitted).

Addressing next the factor that considers the timeliness of the petitioner's assertion of his speedy trial right, this Court notes that because no speedy trial claim was asserted by Campbell until the time of his appeal, this factor also weighs against Campbell's speedy trial claim. *See Pjetrovic v. Bennett,* No. 00CIV.0398, 2002 WL 32780, at *6 (S.D.N.Y. Jan. 3, 2002) (petitioner who waited more than ten months after his indictment to assert speedy trial claim did not assert such claim in a timely fashion under *Barker* ).

In discussing the final *Barker* factor, the Second Circuit has explained that "[a]lthough 'a showing of prejudice is not a prerequisite to finding a Sixth Amendment violation, courts generally have been

reluctant to find a [constitutional] speedy trial violation in the absence of genuine prejudice.' " *United States v. Jones,* 129 F.3d 718, 724 (2d Cir.1997) (quoting *Rayborn,* 858 F.2d at 94); *see Dunavin v. Leonardo,* No. 95-CV-296, 1997 WL 151771 at *15 (N.D.N.Y. Mar.31, 1997) (Pooler, D .J.) ("[i]n the absence of a showing of prejudice, courts generally will not find a speedy trial violation unless all of the remaining *Barker* factors weigh heavily in favor of the [petitioner]"). In the present action, Campbell has not demonstrated that he was prejudiced by the delay in his arraignment or the other underlying criminal proceedings. Although Campbell argues that his "house and other evidence [was] irretrievably lost," as a result of the claimed delay, *see* Am. Pet. at 16, he fails to articulate how the claimed delay in the proceedings caused him to lose the title to his home, or how the claimed delay prevented Campbell from securing evidence favorable to his defense from either his home or from other sources. Thus, this factor does not weigh in his favor.

*13 Federal courts must "engage in a difficult and sensitive balancing process" when considering the *Barker* factors. *Howard,* 58 F.Supp.2d at 166 (citation omitted). Having considered these factors in conjunction with the facts of this case and the relevant circumstances, this Court finds that the county court properly denied Campbell's speedy trial claim. Therefore, the undersigned concludes that the Appellate Division's decision rejecting this claim in the context of Campbell's direct appeal, *see Campbell,* 279 A.D.2d at 798, 718 N.Y.S.2d 744, is neither contrary to, nor an unreasonable application of, *Barker.* Therefore, Campbell's sixth ground for relief is denied.

### 6. *Clothing Worn By Campbell At Trial*

[17] In his seventh ground for relief, Campbell claims that he was wrongfully forced to wear prison attire during the course of the criminal proceedings below, and that, as a result, he was deprived of his right to a fair trial. Am. Pet., Ground Seven. In support of this claim, Campbell cites to several instances during the course of his trial when individuals identified him by reference to his prison clothing, and further argues that although he advised his attorney that he did not wish to wear such clothing at his criminal trial, his counsel nevertheless failed to rectify the situation. Am. Pet. at 17.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

#### i. *Clearly Established Supreme Court Precedent*

[18] The right to a fair trial is guaranteed by the United States Constitution. *United States v. Martinez-Salazar,* 528 U.S. 304, 313, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000); *Bracy v. Gramley,* 520 U.S. 899, 904-05, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) ("the floor established by the Due Process Clause clearly requires a "fair trial in a fair tribunal") (citing *Withrow,* 421 U.S. at 46); *see also* U.S. Const., Amend. VI. (in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial, by an impartial jury"). In order to ensure a criminal defendant's right to a fair trial, the Supreme Court has determined that an accused cannot be forced "to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system." *Estelle v. Williams,* 425 U.S. 501, 504, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (citations omitted). However, the Supreme Court has observed that there is no *per se* defect in a criminal proceeding where the defendant wears prison attire without objection. *Estelle,* 425 U.S. at 511-12. Thus, "the failure [of the defendant] to make an objection to the court as to being tried in [prison] clothes, for whatever reason, is sufficient to negate the presence of ... a constitutional violation." *Estelle,* 425 U.S. at 512.[FN10]

#### ii. *Contrary to, or Unreasonable Application of, Supreme Court Precedent*

Initially, this Court notes that the record establishes that Campbell was wearing prison clothing during the course of his trial. For example, in instructing the jury at the conclusion of Campbell's trial, the county court specifically stated:
**\*14** And, ladies and gentlemen of the jury, as you no doubt observed the defendant, Mr. Campbell, has been wearing Broome County Sheriff's inmate coveralls and is incarcerated in the Broome County Jail.

Trial Tr. at 540. Thus, it is patent that Campbell wore jail clothing during the course of his criminal trial, including on those occasions during the trial when the jury was present. However, although Campbell now states that he "complained to [defense counsel] about being forced to trial in jail clothes," Am. Pet. at 17, he never cites any portion of the record that supports such claim or which otherwise suggests that he objected to wearing prison attire during the course of his trial. Additionally, although Campbell argues numerous theories in support of his claim that his

defense counsel rendered ineffective assistance, *see* Am. Pet. at 18-21, petitioner never asserts in his ineffectiveness claim that his trial counsel rendered ineffective assistance by failing to object to the clothing Campbell wore during the course of his trial.

Since there is no evidence that Campbell was forced to wear prison attire at his trial, this Court finds that the Third Department's decision denying this aspect of Campbell's appeal, *see Campbell,* 279 A.D.2d at 798, 718 N.Y.S.2d 744, is neither contrary to, nor represents an unreasonable application of, *Estelle* and its progeny. Therefore, Campbell's seventh ground for relief is denied.

#### 7. *Perjurious Testimony*

[19] In his eighth ground in support of his federal habeas petition, Campbell argues that numerous witnesses testified falsely for the prosecution during the course of his criminal trial, and that as a result he is entitled to federal habeas relief. Am. Pet., Ground Eight.

#### i. *Clearly Established Supreme Court Precedent*

Campbell's claim that he was convicted as a result of perjurious testimony is a matter which brings into play the above-referenced constitutional mandate concerning a criminal defendant's right to a fair trial. *E.g. Martinez-Salazar,* 528 U.S. at 313; *Bracy,* 520 U.S. at 904-05. Additionally, the Supreme Court has noted that a conviction obtained by the knowing use of perjured testimony on the part of the prosecution "is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (footnote omitted). Additionally, "[a] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

#### ii. *Contrary to, or Unreasonable Application of, Supreme Court Precedent*

The Appellate Division found Campbell's claim alleging the receipt of perjurious testimony at his trial to be "without merit." *See Campbell,* 279 A.D.2d at 798, 718 N.Y.S.2d 744. The undersigned must

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

therefore ascertain whether that finding is either contrary to, or represents an unreasonable application of, the above-cited Supreme Court precedent.

**\*15** [20] To prevail on this claim, Campbell must initially demonstrate that perjury was in fact committed at his trial. *See United States v. White,* 972 F.2d 16, 20 (2d Cir.1992); *Vail v. Walker,* No. 96-CV-578, 1997 WL 695583, at \*5 (N.D.N.Y. Nov.4, 1997) (Homer, M.J .) *(citing White),* adopted *Vail v. Walker,* No. 96-CV-578 (Dkt. No. 49) (N.D.N.Y. Aug. 24, 1999) (Scullin, J.), *appeal dismissed, Vail v. Walker,* No. 99-2554 (2d Cir. Mar. 23, 2001). In the present case, Campbell's claim of perjury is based upon discrepancies which he claims exists between the trial testimony of prosecution witnesses and: a) such witnesses' grand jury testimony; and/or b) Campbell's trial testimony. *See* Am. Pet. at 17-18. However, such discrepancies may well be the product of "flaws of memory as opposed to perjurious statements." *United States v. Shoals,* No. 05-CR-64, 2006 WL 1457707, at \*2 (N.D.Ind. May 23, 2006). "[D]iscrepancies and inconsistencies in the record" are not "proof" that perjury was committed at trial. *Edwards v. Dretke,* No. CIV.05-0526, 2005 WL 3504121, at \* 6 (S.D.Tex. Dec.21, 2005); *see also Johnson v. Walsh,* 01-CV-1651, 2005 WL 928616, at \*16 (N.D.N.Y. Apr.20, 2005) (DiBianco, M.J.) ("[t]he fact that the victim testified inconsistently may affect her credibility in the eyes of the jury, but it does not show that she was lying"), *adopted, Johnson v. Walsh,* 01-CV-1651 (Dkt. No. 26) (N.D.N.Y. May 13, 2005) (Sharpe, J.); *United States ex rel. Blumenberg v. Frey,* No. 04 C 3260, 2005 WL 326976, at \*2 (N.D.Ill. Feb.9, 2005) ("At most, the discrepancies in [witness's] testimony went to the weight of his testimony. It is the province of the trier of fact to resolve conflicts in testimony and to make credibility determinations"); *United States v. Huggins,* No. CR-03-091, 2004 WL 2434301, at \*1 (D.Del. Oct.21, 2004) (any discrepancies of record suggest, at most, misstatements, not perjury) (footnote and citation omitted). Since the only "proof" provided by Campbell in support of his claim of perjury is based upon inconsistencies in the testimony of some of the prosecution witnesses, as well differences between the testimony of prosecution witnesses and petitioner's own trial testimony, Campbell has not established that any of the testimony upon which this aspect of his amended petition is based was, in fact, perjurious.

[21][22] Additionally, even assuming, *arguendo,* that some of the witnesses at Campbell's trial committed perjury, the undersigned notes that "[a] showing that

perjured testimony was introduced at trial, without more, does not establish a violation of due process and does not warrant habeas relief." *Chamberlain v. Mantello,* 954 F.Supp. 499, 507 (N.D.N.Y.1997) (Kahn, J.) (citing *Sanders v. Sullivan,* 863 F.2d 218, 222 (2d Cir.1988)). Rather, before relief may be granted on such a claim, the petitioner must demonstrate that the perjured testimony was "material," i.e., that the receipt of such testimony "undermine[d] confidence in the outcome of the trial." *Chamberlain,* 954 F.Supp. at 507 (quoting *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Where the prosecution is unaware of the claimed perjury, the petitioner must establish that the jury "probably would have acquitted [the defendant] in the absence of the false testimony." *United States v. Moore,* 54 F.3d 92, 99 (2d Cir.1995) (internal quotation marks and citation omitted); *see also Johnson,* 2005 WL 928616, at \*16 (citing *United States v. Wong,* 78 F.3d 73, 81 (2d Cir.1996)) (other citations omitted).

**\*16** In the present case, petitioner has not alleged-must less established-that the prosecutor was aware of the perjurious testimony allegedly provided by certain of the witnesses at Campbell's trial. Moreover, this Court has reviewed the instances of perjury cited by Campbell in support of this claim, *see* Am. Pet. at 17-18, and finds that such testimony, whether viewed individually or in the aggregate, was not "material" in the sense that the disputed testimony undermined confidence in the outcome of Campbell's trial. Specifically, this Court concludes that, in light of the substantial evidence presented at trial that established Campbell's guilt of the charged crimes, there is no possibility that the jury would have acquitted Campbell as to either charge even in the absence of the testimony that petitioner now claims is perjurious. Therefore, the Court denies Campbell's eighth ground for relief.

### 8. *Ineffective Assistance of Counsel*

In his ninth ground, Campbell argues that his trial attorney rendered ineffective assistance. *See* Am. Pet., Ground Nine. In his fourteenth claim for relief, he argues that he received the ineffective assistance of appellate counsel. *See* Am. Pet., Ground Fourteen.

#### i. *Clearly Established Supreme Court Precedent*

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., Amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: i) that counsel's representation fell below an objective standard of reasonableness, measured in light of the prevailing professional norms; and ii) resulting prejudice, i.e., a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688-90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland* ).

[23] Moreover, it is well-settled that the Sixth Amendment's right to the effective assistance of counsel requires that indigents be provided with effective counsel for their first appeal as of right. *Douglas v. California,* 372 U.S. 353, 358, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Consequently, an individual is entitled to the effective assistance of appellate counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The proper standard for evaluating a claim that appellate counsel was ineffective is the test enunciated in *Strickland. See Smith v. Robbins,* 528 U.S. 259, 287-89, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Penson v. Ohio,* 488 U.S. 75, 86-88, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988).

### ii. *Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent*

#### a. *Trial Counsel*

[24] In support of his federal claim that his trial attorney rendered ineffective assistance, Campbell argues, as he did in his *pro se* appellate brief, that trial counsel wrongfully failed to, *inter alia:* 1) utilize a demonstration at trial which Campbell claims would have established that he could not have seen the officer at whom he allegedly fired his weapon; 2) contact the insurance company with which Campbell had secured homeowners insurance in order to establish that Campbell anticipated receiving insurance proceeds with respect to his Amsbry Street residence; 3) failed to secure evidence favorable to Campbell's defense; 4) pursue a justification defense regarding the criminal charges; 5) seek dismissal of

the Indictment based upon an alleged speedy trial violation; 6) seek a change of venue due to the publicity that surrounded the criminal proceedings related to Campbell; 7) lodge appropriate objections during the course of petitioner's trial; and 8) call character witnesses to testify in Campbell's defense. *See* Am. Pet., Ground Nine. Additionally, imbedded in Campbell's ground for relief alleging a speedy trial violation is a claim that an attorney who represented Campbell during various pretrial matters labored under a conflict of interest. *See* Am. Pet. at 16; *see also Pro Se* Appellate Brief at 37-41.

*\*17* The Third Department found Campbell's claim alleging ineffective assistance of trial counsel to be without merit. *Campbell,* 279 A.D.2d at 798, 718 N.Y.S.2d 744. Therefore, the undersigned considers whether that determination is either contrary to, or represents an unreasonable application of, *Strickland.*

Addressing first petitioner's claim that his attorneys failed to gather evidence favorable to Campbell,[FN11] Am. Pet. at 21, the Court notes that the only specific allegations Campbell asserts in support of his claim that defense counsel failed to perform an adequate pretrial investigation relates to Campbell's argument that: i) he was scheduled to receive a check in the amount of $27,098.03 from an insurance company, which Campbell suggests would have demonstrated that he did not have a motive to engage in criminal conduct on March 18, 1998; *see* Am. Pet. at 2, 19; and ii) counsel did not verify that Campbell's residence was both heated and stocked with food on that date, which evidence petitioner argues could have been used by the defense to rebut the prosecution's claim that entry onto the property was necessary because the apartment was uninhabitable. *See* Appendix to Amended Petition ("Appendix") at (unnumbered) C61; [FN12] *see also* Am. Pet. at 19.

[25] As to Campbell's general assertion that his attorneys failed to perform an adequate investigation on behalf of petitioner, *see* Am. Pet. at 19, the Court notes that "[a] petitioner's 'bald assertion that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably.' " *Atkinson v. United States,* No. 05-CV-286, 2005 WL 3555946, at \*7 (N.D.N.Y. Dec.28, 2005) (McAvoy, S.J.) (quoting *Sheedy v. United States,* No. 96-CV-1289, 1997 WL 394664, at \*9 (N.D.N.Y. July 8, 1997) (Munson, S.J.)) (other quotation and citations omitted)).

Turning to the specific examples cited by Campbell in support of this aspect of his ineffectiveness claim,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Court notes that evidence that petitioner may have been entitled to receive insurance proceeds relating to his residence would in no way have cast doubt on the testimony of Brozost or the police officers who provided detailed testimony regarding Campbell's felonious conduct on March 18, 1998. Additionally, none of the crimes with which Campbell was charged required the prosecution to establish a motive for his actions. *See, e.g.,* N.Y. Penal L. § § 110.00, 125.27, 120.10 and 120.25.

[26] As to Campbell's claim that his attorney failed to secure evidence which could have established that petitioner's residence was habitable, the Court notes that Brozost testified at trial that the Broome County DSS was notified by a local utility company in October, 1997 that the heat to Campbell's residence had been turned off. *See* Trial Tr. at 199. Brozost further testified that he had discussed that fact with Campbell several times after that date and that Campbell never stated that utilities to his residence had been reconnected. Trial Tr. at 199. Furthermore, Judge Smith found that both Brozost and the police were legally obligated to ensure that Campbell-who had been recently released from a sanitarium and had been declared a person in need of supervision by the Broome County DSS-was not a danger to himself or others. *See* Suppression Tr. at 110. Accordingly, even assuming, *arguendo,* that Campbell's counsel had presented evidence which suggested that Campbell could properly inhabit the Amsbry Street residence, such evidence would not have rendered the investigation undertaken by law enforcement agents at Campbell's home, which ultimately resulted in Campbell's arrest, improper. Thus, this aspect of Campbell's amended petition is meritless.

*18 [27] Next, the Court notes that much of the remaining conduct upon which Campbell relies in support of his claim alleging ineffective assistance clearly relates to the trial strategy employed by his counsel. For example, counsel's failure to: 1) engage in a demonstration at trial; 2) pursue a justification defense; 3) seek dismissal of the Indictment; 4) request a change of venue; 5) lodge unspecified objections at trial; and 6) call witnesses in Campbell's defense to the charges against him are all examples of strategic choices made by Campbell's counsel. Such choices on the part of counsel "are virtually unchallengeable" in the context of federal habeas corpus proceedings. *Wiggins,* 539 U.S. at 521-22; *see also Gersten v. Senkowski,* 426 F.3d 588, 607 (2d Cir.2005) (citing *Strickland), cert. denied Artuz, Supt., Clinton v. Gersten, Ben,* --- U.S. ----, 126 S.Ct. 2882, ---L.Ed.2d ----, 2006 WL 1584454 (June 12, 2006). As the court sagely noted in *Nieves v. Kelly,* 990 F.Supp. 255 (S.D.N.Y.1997):

Generally, the decision whether to pursue a particular defense is a tactical choice which does not rise to the level of a constitutional violation.... [T]he habeas court will not second-guess trial strategy ... especially where the petitioner has failed to identify any specific evidence or testimony that would have helped his case if presented at trial.

*Nieves,* 990 F.Supp. at 264 (citations and internal quotations omitted). Petitioner has wholly failed to establish that the above-mentioned strategic choices of counsel were objectively unreasonable. Nor has petitioner demonstrated that he was prejudiced, in any way, by the actions (or inactions) of counsel cited above.

[28][29] Finally, as to Campbell's claim which argues that his pretrial counsel labored under a conflict of interest, *see* Am. Pet. at 16, this Court acknowledges that a defendant's right to conflict-free representation of counsel is clearly established federal law as determined by the Supreme Court. *See Frase v. McCray,* No. 01-CV-1704, 2003 WL 57919, at *6 (N.D.N.Y. Jan. 8, 2003) (Sharpe, M.J.) (citing *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Cuyler v. Sullivan,* 446 U.S. 335, 346, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)) (other citation omitted), *adopted Frase v. McCray,* No. 01-CV-1704, Dkt. No. 18 (N.D.N.Y. July 22, 2003) (Hurd, J.). However, Campbell has utterly failed to demonstrate that: 1) any conflict of interest existed between his pretrial counsel and Campbell; and 2) such claimed conflict prejudiced Campbell in any way. In this regard, the Court notes that at a pretrial hearing relating to Campbell's request for replacement counsel at which he argued to the county court that a conflict of interest existed between himself and attorney O'Leary, the trial court noted that although an individual's request for replacement counsel should be granted where such a conflict exists, a mere claim that a conflict existed was insufficient to warrant the granting of replacement counsel. Specifically, that court sagely observed that "just telling [the court] there is a conflict doesn't mean that there is, in fact, a conflict." *See* Transcript of Pretrial Hearing in *People v. Campbell,* No. 98-229 (10/9/98) ("October, 1998 Transcript") at 4. Since Campbell failed to articulate the basis for his claimed conflict, the trial court denied his request for replacement counsel at that time. *Id.* at 4-5. [FN13] Petitioner has similarly failed to establish in the present action that any attorney who represented Campbell in the criminal proceedings below labored

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

under a conflict of interest. Thus, this final theory in support of his ineffective assistance of trial counsel claim is without substance.

### b. *Appellate Counsel*

**\*19** [30] In both his *pro se* appellate brief and the present action, Campbell claimed that his appellate counsel was ineffective because he failed to "communicate" with petitioner. *See Pro Se* Appellate Brief at 53; Am. Pet., Ground Fourteen. Campbell further argues that although he provided his appellate counsel with a copy of the *pro se* appellate brief so that counsel could incorporate those arguments in his appellate brief, counsel "never responded or used the information [petitioner] sent" and instead argued "worthless issues" on appeal. Am. Pet. at 26. Petitioner additionally claims that counsel never obtained Campbell's consent to assert the arguments which counsel ultimately raised on appeal. Am. Pet. at 26.

The Appellate Division denied this aspect of Campbell's appeal. *See Campbell,* 279 A.D.2d at 798, 718 N.Y.S.2d 744. This Court must therefore determine whether that determination is either contrary to, or represents an unreasonable application of, the above-cited Supreme Court precedent.

[31][32][33] An appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins,* 528 U.S. at 287-88. There is a "strong presumption of attorney competence," and the court's review of an appellate counsel's performance is "highly deferential." *Kimmelman v. Morrison,* 477 U.S. 365, 381, 383, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). As the Second Circuit observed in *Sellan,* the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Sellan,* 261 F.3d at 317 (internal quotation and citations omitted); *see also Brown v. Filion,* No. 03 CIV. 5391, 2005 WL 1388053, at \*16 (S.D.N.Y. June 13, 2005) (citations omitted), *adopted,* 2005 WL 2159675 (S.D.N.Y. Sept.6, 2005). Thus, to prevail upon a habeas claim alleging a failure on the part of appellate counsel to raise a particular argument on appeal, a petitioner must demonstrate that his counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson,* 214 F.3d 315, 322 (2d Cir.2001).

[34] As to Campbell's claim that his appellate counsel failed to communicate with petitioner, this Court notes that " '[a]n appellate attorney's failure to communicate with his or her client, by itself, does not constitute *per se* ineffective assistance of counsel.' " *See McIntyre v. Duncan,* No. 03-CV-0523, 2005 WL 3018698, at \*3 (E.D.N.Y. Nov. 8, 2005) (quoting *Buitrago v. Scully,* 705 F.Supp. 952, 955 (S.D.N.Y.1989)). Thus, "[a]lthough it may be desirable and productive, the Constitutional right to effective assistance of counsel does not encompass the requirement that an attorney consult with his client to discuss the alleged trial errors that his client wishes to pursue." *McIntyre,* 2005 WL 3018698, at \*3 (citation omitted). Therefore, Campbell's assertion that his appellate counsel failed to consult with petitioner prior to filing the appellate brief, or incorporate in that appellate brief the arguments asserted by petitioner in his *pro se* appellate brief, does not, without more, establish that Campbell received ineffective assistance.

**\*20** As to Campbell's claim that his attorney failed to argue "significant and obvious issues" and instead asserted "worthless" claims on appeal, *see* Am. Pet. at 25, the undersigned notes that this claim is principally rooted in his argument that his appellate counsel wrongfully failed to assert any of the claims Campbell raised in his *pro se* appellate brief in the counsel's brief. *See* Am. Pet. at 26. However, as is more fully discussed in this Memorandum-Decision and Order in conjunction with the denial of Campbell's federal habeas petition, the claims asserted by Campbell in his *pro se* appellate brief (and argued by petitioner as grounds for relief herein) are meritless. Petitioner's appellate counsel therefore cannot be found to have rendered ineffective assistance by failing to assert such claims on appeal. *See Funches v. Walsh,* No. 05 CIV. 2839, 2006 WL 1063287, at \*14 (S.D.N.Y. Apr. 21, 2006) (citing *Mitchell v. Scully,* 746 F.2d 951, 955 (2d Cir.1984)); *see also Stapleton v. Greiner,* No. 98 CV-1971, 2000 WL 1207259, at \*13 (E.D.N.Y. July 10, 2000).

In sum, applying the required, deferential standard to the Appellate Division's rulings on Campbell's claims of ineffective assistance concerning both trial and appellate counsel, the undersigned finds that petitioner has not demonstrated that the Third Department's rejection of those claims is either contrary to, or represents an unreasonable application of, the above-cited Supreme Court precedent. Therefore, this Court denies Campbell's ninth and fourteenth grounds for relief.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

### 9. *Prosecutorial Misconduct*

In his tenth ground, Campbell argues that the prosecutor engaged in misconduct during the course of the criminal proceedings below, and that the district attorney's misconduct "is grounds for [*sic*] overturn my conviction and prohibition from retrial." Am. Pet., Ground Ten. Subsumed within this claim is Campbell's assertion that the prosecutor violated Campbell's right to timely receive all *Brady* material [FN14] to which he was entitled. Am. Pet. at 22.

#### i. *Clearly Established Supreme Court Precedent*

[35][36][37] A criminal defendant's right to a fair trial is mandated by the due process clause of the United States Constitution. *Albright v. Oliver,* 510 U.S. 266, 273 n. 6, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citing *Agurs,* 427 U.S. at 107).[FN15] For habeas relief to be granted based on a claim of prosecutorial misconduct, however, the alleged misconduct must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

#### ii. *Contrary to, or Unreasonable Application of, Supreme Court Precedent*

##### a. *Brady Claims*

*21 [38] Addressing first Campbell's *Brady* claims, the Court notes that to prove a *Brady* violation, a habeas petitioner must establish that: 1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued from the withholding. *Moore v. Illinois,* 408 U.S. 786, 794-95, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *see also Strickler v. Greene,* 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

Campbell alleged on appeal, and asserts in the present application, that the prosecutor wrongfully failed to provide petitioner's attorney with Campbell's wallet, which was apparently taken by the police from petitioner on the day of his arrest, until after Brozost "left the stand," thereby precluding Campbell from being able to effectively impeach Brozost's testimony.[FN16] Am. Pet. at 22; *see also Pro Se* Appellate Brief at 42. Petitioner also argues that although his defense attorney requested copies of tape recordings made of calls placed to the 911 emergency operator on March 18, 1998, as well as tape recordings made of the radio calls between law enforcement agents on that date relating to Campbell, such copies were never provided to Campbell's trial attorney. Am. Pet. at 22; *see also Pro Se* Appellate Brief at 42.

As to Campbell's claim regarding the failure of the prosecution to turn over petitioner's wallet to defense counsel, the Court notes that at the conclusion of the May 3, 1999 competency hearing, Campbell's counsel requested that the district attorney turn Campbell's wallet over to defense counsel. *See* May, 1999 Competency Hearing at 82. Defense counsel never claimed that the prosecution failed to turn over that wallet in a timely fashion after such request. [FN17]

[39] "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *In re United States (United States v. Coppa),* 267 F.3d 132, 142 (2d Cir.2001) (*"Coppa"*); *United States v. Earls,* No. 03 CR. 0364, 2004 WL 350725, at *8 (S.D.N.Y. Feb.25, 2004) (citing *Coppa); United States v. Patterson,* No. 02 CR. 0283, 2002 WL 31890950, at *11 (S.D.N.Y. Dec.27, 2002) (citing *Coppa* ). Thus, "[t]here is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial." *Coppa,* 267 F.3d at 142 (citing *Leka v. Portuondo,* 257 F.3d 89, 100 (2d Cir.2001)). Since Campbell did not demonstrate that the District Attorney failed to timely provide defense counsel with Campbell's wallet, this aspect of petitioner's *Brady* claim is plainly without merit.[FN18]

[40][41] Turning to Campbell's claim regarding tape recordings made of the telephone calls made to the 911 operator and calls that were placed between law enforcement agents on March 18, 1998, the Court notes that defense counsel requested that such evidence be provided to him in his pretrial omnibus motion. *See* Record on Appeal at R25, ¶ ¶ 6-7. In

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

responding to that request, the District Attorney suggested that the requested tapes no longer existed. Record on Appeal at R33, ¶¶ 6-7. Although the bad faith destruction of exculpatory evidence violates the Constitution's guarantee of due process of law, *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *see also Edmonds v. McGinnis,* 11 F.Supp.2d 427, 436 (S.D.N.Y.1998) (citing *Youngblood* ), Campbell has not alleged, much less demonstrated, that the erasure of the requested tapes was motivated by bad faith on the part of the district attorney. To the contrary, the record establishes that such tapes were erased in light of the standard practice of the authorities to only maintain such recordings for a period of thirty days absent a specific request for a copy of a recording made prior to its erasure. *See* Record on Appeal at R33, ¶ 6. Since copies of the tape recordings no longer existed at the time of defense counsel's request, the prosecutor did not violate petitioner's *Brady* rights by failing to provide defense counsel with copies of those tape recordings. *E.g., Graham v. Ricks,* No. 9:02-CV-0303, 2004 WL 768579, *5 (N.D.N.Y. Apr.7, 2004) (McCurn, S.J.) (to prevail on *Brady* claim, a party must initially establish that the evidence sought, in fact, existed) (citations omitted), *appeal dismissed, Graham v. Ricks,* No. 04-2650 (2d Cir. Dec. 20, 2004).

### b. *Remaining Claims Alleging Prosecutorial Misconduct*

**\*22** Addressing the remaining aspect of this claim, the Court notes that Campbell's argument that the prosecutor engaged in misconduct by suborning perjurious testimony, *see* Am. Pet. at 22, is without merit because, as is discussed more fully above, petitioner has not established either: i) that perjury was committed at his trial; or ii) that the district attorney was aware of the allegedly perjurious testimony.

As to Campbell's claim that at the time of trial, the ballistics shield was "covered to hide the broken window," *see* Am. Pet. at 22, the undersigned notes that such shield was received into evidence at trial. Trial Tr. at 304-05. Testimony specifically addressing the fact that the shield was broken was adduced by the prosecutor, *see* Trial Tr. at 304-07, and defense counsel cross-examined Officer Grier about the crack in the shield. Trial Tr. at 320-21. Nothing in the record supports petitioner's apparent claim that the prosecution attempted to deceive the jury concerning the nature of the damage sustained

by that shield as a result of Campbell's conduct.

Petitioner next argues that during the course of Brozost's testimony, that witness improperly referred to a criminal charge that was pending against Campbell. However, Campbell does not cite any portion of the trial transcript where this statement was made by Brozost, and the Court's review of Brozost's trial testimony, Trial Tr. at 181-204, failed to reveal any improper conduct on the part of Brozost (or the prosecution) regarding this issue.

[42] Next, although the prosecutor admittedly did not permit Campbell to fully answer certain questions posed to him by the district attorney on three separate occasions during the course of Campbell's cross-examination, *see* Trial Tr. at 457, 463 and 471, the Court finds that such conduct, while perhaps discourteous, falls far short of the misconduct necessary to support a claim seeking federal habeas intervention based upon alleged prosecutorial misconduct.

[43] Finally, the Court has reviewed the prosecutor's summation in conjunction with Campbell's claim that the district attorney's closing argument amounted to prosecutorial misconduct. *See* Am. Pet. at 22-23; *see also* Trial Tr. at 506-27. The Second Circuit has "repeatedly held that final arguments of counsel may be vigorous and robust if based on the evidence in the record." *United States v. Smith,* 778 F.2d 925, 929 (2d Cir.1985); *Trupin v. United States,* No. 99 CIV. 105, 2000 WL 145102, at *7 (S.D.N.Y. Feb. 3, 2000) (citing *Smith* ). As noted by the court in *United States v. Myerson,* 18 F.3d 153 (2d Cir.1994), counsel "are entitled to broad latitude" in their closing arguments, "provided they do not misstate the evidence." *Myerson,* 18 F.3d at 163; *see also United States v. Suarez,* 588 F.2d 352, 354 (2d Cir.1978) ( "[b]oth prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments"); *King v. Mantello,* No. CV 98-7603, 2002 WL 32100251, at *14 (E.D.N.Y. Nov.19, 2002) (Go, M.J.) (citation omitted), *adopted,* 2003 WL 1873618 (E.D.N.Y. Apr.11, 2003); *de la Cruz v. Miller,* No. 97CIV.7785, 2000 WL 1279753, at *3 (S.D.N.Y. Sept.8, 2000) (prosecutor is not precluded from "vigorous advocacy or the use of colorful adjectives during summation") (quotation and citation omitted). This Court finds that the prosecutor's remarks during his summation did not rise to the level of misconduct sufficient to warrant federal habeas intervention.[FN19]

**\*23** Since Campbell has not established that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

prosecutor engaged in misconduct during the criminal matter below, he has necessarily failed to demonstrate that the Appellate Division's decision denying that aspect of his appeal, *Campbell,* 279 A.D.2d at 798, 718 N.Y.S.2d 744, is either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent. Therefore, the undersigned denies Campbell's tenth ground for relief.

### 10. *Judicial Misconduct*

[44] In his eleventh ground, Campbell argues that the trial court engaged in misconduct during the course of the criminal proceedings below. Am. Pet., Ground Eleven. In support of this argument, Campbell claims that the county court denied petitioner's request for replacement counsel until that court "knew [that petitioner's] house and evidence [that was] ... needed for trial was lost." Am. Pet. at 24. He further claims that Judge Smith wrongfully "ordered 3 psychiatric evaluations" relating to petitioner despite the fact that the court "knew [Campbell] was competent." *Id.* Campbell also argues that Judge Smith wrongfully permitted the district attorney to engage in misconduct by "mak[ing] unsworn statements, interrupt[ing] [petitioner's] answers, [and] ask[ing] questions about [Campbell] not retreating ... and questions with no factual basis." Am. Pet. at 24. Petitioner additionally asserts that the Judge Smith "gave an altered version" of a statement upon which the county court apparently relied in determining Campbell's sentence, *id.,* and wrongfully denied Campbell's request for transcripts that were necessary to pursue his appeal. *Id.*

### i. *Clearly Established Supreme Court Precedent*

[45][46] To establish that a judge has engaged in misconduct sufficient to warrant redress, a party must demonstrate that the judge displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *see also Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (to succeed on a judicial misconduct claim, a party must "overcome a presumption of honesty and integrity in those serving as adjudicators"). In reviewing a judicial misconduct claim, courts are to presume that public officials have properly discharged their official duties. *See Bracy,* 520 U.S. at 909 (internal quotations and citations omitted).

### ii. *Contrary to, or Unreasonable Application of, Supreme Court Precedent*

Nothing in the record supports Campbell's spurious claim that the county court denied his request for replacement counsel until the court was aware that evidence favorable to the defense had been destroyed. To the contrary, the record establishes that Campbell advised the county court that his home had been "sold at auction" prior to May 13, 1998. *See* Transcript of Pretrial Hearing in *People v. Campbell,* No. 98-229 (5/13/98) ("May, 1998 Transcript") at 2. Campbell did not request replacement counsel until several months later, on September 9, 1998. *See* October, 1998 Transcript at 2. Since Campbell did not own his home at the time he made his request for replacement counsel, his claim that the county court's denial of Campbell's initial motion for replacement counsel [FN20] was, in any way, conditioned upon his ownership interest in his residence is patently specious.

**\*24** Next, although Campbell now claims that the county court wrongfully ordered him to undergo psychiatric testing in order to ensure that he was competent to stand trial, Am. Pet. at 24, this argument appears to overlook the fact that petitioner himself argued that he was *not* competent to stand trial less than four months before his criminal trial was scheduled to begin. *See* January, 1999 Transcript at 3 (Campbell arguing that his trial attorney "lied to the psychiatrist to get [Campbell] clear and competent to stand trial"). Furthermore, at that same time, Campbell complained to the county court that he had been wrongfully denied a competency hearing. *See* January, 1999 Transcript at 9. Thus, petitioner's claim that the trial court wrongfully ordered Campbell to undergo psychiatric testing prior to his trial is utterly meritless.

Additionally, Campbell's claim that the trial court improperly allowed the prosecutor to engage in misconduct is without substance because, as is discussed more fully above, the Court finds that the prosecutor did not engage in misconduct during the course of Campbell's criminal trial.

Additionally, petitioner's argument that the county court misrepresented the contents of a letter to which it referred at sentencing is: i) not supported by any evidence; and ii) not a basis upon which this Court could properly find that Campbell's rights were violated during the course of the criminal trial (which

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

necessarily preceded his sentencing hearing).

Finally, the county court's refusal to provide Campbell with a complimentary copy of the transcripts generated during the course of his criminal proceeding in March, 2002 could not have deprived Campbell of his right to appeal his convictions. Specifically, Campbell did not *request* such copies until November 15, 2001-the date on which he signed his motion seeking such transcripts. *See* Dkt. No. 46. The Third Department addressed the merits of Campbell's appeal on January 18, 2001, approximately ten months *prior to* petitioner's request for transcripts. *See Campbell,* 279 A.D.2d at 797, 718 N.Y.S.2d 744.

In sum, this Court finds that all of Campbell's claims alleging judicial misconduct on the part of Judge Smith to be utterly without merit. He has therefore *a fortiori* failed to demonstrate that the Appellate Division's decision denying this aspect of his appeal, *Campbell,* 279 A.D.2d at 798, 718 N.Y.S.2d 744, is either contrary to, or represents an unreasonable application of, the above-cited Supreme Court precedent. Accordingly, the undersigned denies his eleventh ground for relief.

### 11. *Testimony of Law Enforcement Agents*

Campbell's next ground claims that the testimony provided by the police officers who testified on behalf of the prosecution was "not credible." Am. Pet., Ground Twelve. In support of this claim, Campbell argues that Officer Grier-whose ballistics shield was struck by a bullet fired by Campbell-provided testimony that was unworthy of belief. In support of that claim, petitioner argues that such officer's testimony during which he stated that he held onto the shield after it was struck by the bullet, *see* Trial Tr. at 307-08, was incredible, and that "[u]nless Grier managed to suspend the laws of physics the bullet should have either ripped the shield from his hand or slammed him ... into the wall...." Am. Pet. at 25; *see also Pro Se* Appellate Brief at 46.

**\*25** [47] Unfortunately for Campbell, it is well established that courts viewing a cold record may not properly reassess the jury's finding of credibility concerning the testimony of witnesses offered at trial. As the Supreme Court observed in *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980):
The most careful note ... often fail[s] to convey the evidence fully in some of its most important

elements.... It cannot give the look or manner of the witness: his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration; ... the dead body of the evidence, without its spirit; which is supplied, when given openly and orally, by the ear and eye of those who receive it.

*Raddatz,* 447 U.S. at 670 (quotation and citation omitted); *see also Keller v. Bennett,* No. 98CV1437, 2002 WL 975306, at \*4 (N.D.N.Y. Mar. 21, 2002) (Sharpe.M.J.) ("a habeas court, viewing a cold record, may not properly reassess the jury's finding of credibility concerning the testimony of witnesses offered at trial") (citations omitted), *adopted, Keller v. Bennett,* No. 98CV1437 (Dkt. No. 18) (N.D.N.Y. Apr. 15, 2002) (Kahn, J.), *appeal dismissed,* No. 02-2328 (2d Cir. Dec. 12, 2003). Thus, on collateral review, [a federal habeas court] "must presume that the jury resolved any questions of credibility in favor of the prosecution." *Bellezza v. Fischer,* 01CV1445, 2003 WL 21854749, at \*15 (E.D.N.Y. Aug.6, 2003) (quoting *Vera v. Hanslmaier,* 928 F.Supp. 278, 284 (S.D.N.Y.1996)) (internal quotation and other citations omitted); *see also Cottrel v. New York,* 259 F.Supp.2d 300, 308 (S.D.N.Y.2003) (citing *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)).

Based upon the foregoing, this Court declines Campbell's invitation to assess the credibility of officer Grier-or any other prosecution witness-as a basis for granting petitioner's habeas application. Accordingly, his twelfth ground seeking federal habeas relief is denied.

### 12. *Inconsistent Verdict*

[48] In his thirteenth ground for relief, Campbell argues that the jury's verdict was inconsistent. Am. Pet., Ground Thirteen. Specifically, he argues that to properly convict him of the attempted assault charge, the jury necessarily found that he *intentionally* engaged in the alleged conduct. Am. Pet. at 25 (emphasis added). Petitioner next claims that to be found guilty of the reckless endangerment charge, the jury was required to find that Campbell acted *recklessly* in firing his handgun. *Id.* (emphasis added). Campbell argues that the jury's verdict-which found petitioner guilty of both counts referenced above-was therefore inconsistent and a basis for granting his request for federal habeas relief. *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

### i. *Clearly Established Supreme Court Precedent*

The Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See Powell,* 469 U.S. at 65-66; *Dowling v. United States,* 493 U.S. 342, 353-54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) ("inconsistent verdicts are constitutionally tolerable") (citation omitted); *Harris v. Rivera,* 454 U.S. 339, 345, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside").

### ii. *Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent*

**\*26** Since the present habeas claim is rooted in the premise that the jury's verdict was inconsistent, *see* Am. Pet., Ground Thirteen, this Court initially considers whether the subject verdict was, in fact, inconsistent.

[49] Under New York law, "[t]wo counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other." CPL § 300.30(5). "Whether verdicts are repugnant or inconsistent ... is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled." *People v. Loughlin,* 76 N.Y.2d 804, 806, 559 N.Y.S.2d 962, 559 N.E.2d 656 (1990) (citing *People v. Tucker,* 55 N.Y.2d 1, 6-7, 447 N.Y.S.2d 132, 431 N.E.2d 617 (1981)). Thus, this Court examines the trial court's charge to the jury to determine whether petitioner's claim that the verdict is inconsistent has substance.

In instructing the jury on the first degree attempted assault charge, the trial court charged the jury that the prosecution was required to establish, *inter alia,* that on or about March 18, 1998, Campbell, "with intent to cause *serious physical injury* to another person, did attempt to cause such injury to such person by means of a deadly weapon." Trial Tr. at 547-48 (emphasis added). In sharp contrast to that charge, when instructing the jury as to the first degree reckless endangerment charge, the county court instructed the jury that the prosecution was required to establish that on or about March 18, 1998, "under circumstances evincing a depraved indifference to human life, [Campbell] recklessly engage[d] in conduct which created a *grave risk of death* to another person." Trial Tr. at 548-49 (emphasis

added). In denying Campbell's appellate claim relating to the alleged inconsistency of the jury's verdict which found Campbell guilty of both of the foregoing crimes, the Third Department opined:

We find no merit to defendant's contention that the verdict is inconsistent because the crimes of attempted assault and reckless endangerment require different mental states and cannot be committed by the same physical act. Here, the act of shooting is the same for the attempted assault and the reckless endangerment, but because the two crimes contemplate entirely distinct results there can be no inconsistency in the verdict. As the Court of Appeals has instructed, "[a] defendant could certainly intend one result-serious physical injury-while recklessly creating a grave risk that a different, more serious result-death-would ensue from his actions.... Thus, a finding that defendant was guilty of attempted first degree assault [does] not 'necessarily negate [his] guilt' of first degree reckless endangerment.

*Campbell,* 279 A.D.2d at 797, 718 N.Y.S.2d 744.

This Court agrees with the Third Department's determination that Campbell may well have intended to cause serious physical injury to one or more of the officers on March 18, 1998, while simultaneously recklessly creating a grave risk that a different, more serious result-death-would ensue from his wrongful actions. *E.g., Campbell,* 279 A.D.2d at 797, 718 N.Y.S.2d 744. Since the jury's verdict is in no way inconsistent or repugnant, Campbell cannot prevail on his thirteenth ground for relief, which is premised upon the assumption that the verdict was inconsistent.

**\*27** Additionally, since an allegedly inconsistent verdict is not a sufficient reason for setting it aside, *Harris,* 454 U.S. at 345; *see also Brunson v. Tracy,* 378 F.Supp.2d 100, 110 (E.D.N.Y.2005) ("[i]t is well-settled that federal habeas relief is unavailable for inconsistent verdicts") (citations omitted), the Appellate Division's decision denying this aspect of Campbell's appeal is neither contrary to, nor an unreasonable application of, the above-cited clearly established Supreme Court authority. Therefore, for this reason as well, this Court must deny this ground for relief. *E.g., Brunson,* 378 F.Supp.2d at 110 (E.D.N.Y.2005) ("[i]t is well-settled that federal habeas relief is unavailable for inconsistent verdicts") (citations omitted); *Vassell v. McGinnis,* No. 04-CV-0856, 2004 WL 3088666, at \*6 (E.D.N.Y. Dec. 22, 2004); *Muldrow v. Herbert,* 299 F.Supp.2d 166, 170 (W.D.N.Y. Feb.3, 2004) ("an allegedly inconsistent verdict does not present a constitutional violation.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

Page 26

Therefore, such a claim is not even cognizable on habeas review"), *appeal dismissed,* No. 04-1839pr (2d Cir. Jan. 20, 2005).

### 13. *Right of Access to the Courts*

[50][51] In his final claim for relief, Campbell appears to argue that he was denied his right of access to the courts because the Third Department did not permit him to argue the issues raised in his *pro se* appellate brief through a teleconference and/or video connection. *See* Am. Pet., Ground Fifteen. [FN21]

[52][53] Prisoners "have a constitutional right of access to the courts." *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *accord Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *see, e.g., Murray v. Giarratano,* 492 U.S. 1, 11 n. 6, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) ("The prisoner's right of access has been described as a consequence of the right to due process of law, and as an aspect of equal protection") (internal citations omitted); *see also Christopher v. Harbury,* 536 U.S. 403, 415 n. 12, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). The Supreme Court has explained that this right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828. However, the Supreme Court has observed that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Lewis,* 518 U.S. at 351. Rather, "[t]he right that *Bounds* acknowledged was the (already well-established) right of access to the courts." *Lewis,* 518 U.S. at 350. "[I]n order to establish a violation of the right of access to the courts the [petitioner] must show that the ... alleged conduct resulted in actual injury to the [petitioner] such as the dismissal of an otherwise meritorious legal claim." *Stubbs v. de Simone,* No. 04CIV.5755, 2005 WL 2429913, at * 17 (S.D.N.Y. Sept.30, 2005) (citing *Cancel v. Goord,* No. 00 CIV 2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001)).

**\*28** Petitioner has failed to demonstrate that the Appellate Division's failure to allow Campbell to provide oral argument in conjunction with his *pro se* appellate brief and/or appeal denied him his constitutional right of access to the courts. That court specifically acknowledged that it had considered Campbell's *pro se* brief in arriving at its decision denying his appeal, *see Campbell,* 279 A.D.2d at 798,

718 N.Y.S.2d 744, and there is no basis upon which this Court could properly conclude that the result of Campbell's appeal would have been any different had petitioner-a non-attorney with a history of psychiatric illness-been afforded an opportunity to orally argue the points raised in his *pro se* appellate brief. Furthermore, this Court-like the Third Department-was fully capable of considering the substance of the claims raised in that brief without the necessity of oral argument. Thus, the Court denies Campbell's fifteenth and final claim for relief.

### III. *Certificate of Appealability*

Finally, the undersigned notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:
Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from-
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court.... [FN22]

A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE,** based upon the above, it is hereby

**ORDERED,** that the amended petition in this matter is **DENIED** and **DISMISSED,** and it is further

**ORDERED,** that the state court records be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party), and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Decision and Order upon the parties by regular or electronic mail.

> FN1. The Indictment also charged Campbell with two counts of criminal menacing, *see* Indictment, Counts Four, Five, however the parties stipulated at trial that those charges would not be submitted to the jury for its consideration. *See* Trial Tr. at 489-90.
>
> FN2. *Miranda v. Arizona,* 384 U.S. 436, 86

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

S.Ct. 1602, 16 L.Ed.2d 694 (1966).

FN3. New York Penal Law defines "serious physical injury" as "physical injury which creates a substantial risk of death...." *See* N.Y. Penal L. § 10.00(10); *Almonte,* 2006 WL 839073, at *9.

FN4. Campbell's claim that his arrest was illegal is rooted in the Fourth Amendment to the United States Constitution. *See Rodriguez v. Zon,* No. 01-CV-2036, 2004 WL 1752418, at *7 (E.D.N.Y. Aug. 5, 2004); *McPherson v. Greiner,* No. 02 CIV.2726, 2003 WL 22405449, at *16 (S.D.N.Y. Oct.22, 2003).

FN5. Judge Smith presided over a suppression hearing on March 22, 1999, the purpose of which was to determine, *inter alia,* whether the arrest of Campbell on March 18, 1998 was lawful and additionally whether evidence seized from Campbell's home, and the statements he made to law enforcement agents following his arrest, could properly be introduced as evidence against Campbell at his trial. *See* Transcript of Suppression Hearing (3/22/99) ("Suppression Tr.").

FN6. After he was placed in handcuffs on March 18, 1998, Campbell stated, in substance, that he "intended to engage in a shoot out with the police." Suppression Tr. at 114.

FN7. This Court notes that although the Third Department denied Campbell's *Miranda* claim-and other arguments asserted by him in his *pro se* appellate brief without referring explicitly to relevant federal case law, the Appellate Division nevertheless noted that it had considered the "remaining contentions" raised by Campbell in his appeal (including his *pro se* appellate brief) and found them "equally without merit." *Campbell,* 279 A.D.2d at 798, 718 N.Y.S.2d 744. Since there is no basis for believing that the Third Department rejected such claims on non-substantive grounds, that determination of the Appellate Division must be reviewed under the deferential standards prescribed in 28 U.S.C. § 2254(d)(1). *See Sellan,* 261 F.3d at 311; *Stallings v. Woods,* No. 04 CV 4714, 2006

WL 842380, at *13 (E.D.N.Y. Mar.27, 2006) (citing *Aparicio v. Artuz,* 269 F.3d 78, 94 (2d Cir.2001).

FN8. Although respondent argues that Campbell's *subjective* belief that the individuals who identified themselves as law enforcement agents were not, in fact, police officers, is a factor that this Court should consider in evaluating Campbell's *Miranda* claim, *see* Resp. Mem. at 12-13, *see also* Trial Tr. at 442, this argument appears to overlook the fact that courts are to make a determination as to the custodial status of an individual based upon "the objective circumstances of the interrogation," rather than the "subjective views harbored by either the interrogating officers or the person being questioned." *Harris v. Woods,* No. 05 CIV. 5582, 2006 WL 1140888, at *18 (S.D.N.Y. May 1, 2006) (internal quotations and citations omitted).

FN9. A criminal defendant's right to testify before the grand jury in New York is statutorily derived. *See* CPL § 190.50(5)(a) ( [a]lthough not called as a witness by the people or at the instance of the grand jury, a person has a right to be a witness in a grand jury proceeding ... (a) When a criminal charge against a person is being or is about to be or has been submitted to a grand jury....").

FN10. The *Estelle* Court suggested that it could be a reasonable defense strategy "to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Estelle,* 425 U.S. at 507-08.

FN11. Campbell was initially represented by Robert O'Leary of the Broome County Public Defender's Office, however prior to trial the county court granted Campbell's request for replacement counsel and appointed Michael Sullivan, Esq. to represent petitioner. *See* Transcript of Pretrial Hearing in *People v. Campbell,* No. 98-229 (1/21/99) ("January, 1999 Hearing") at 10-11.

FN12. Although Campbell did not number the page in his supporting appendix as "C61," the page immediately following the cited page was numbered by Campbell at

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

"C62."

FN13. On January 21, 1999, the County Court appointed replacement counsel for Campbell after determining that he was unwilling to work with attorney O'Leary or any other attorney at the Broome County Public Defender's Office. *See* January, 1999 Hearing at 10-11. Significantly, however, Judge Smith never determined at that hearing-or at any other time during the course of the criminal proceeding below-that any conflict of interest existed between attorney O'Leary and Campbell.

FN14. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87.

FN15. "A right to a fair trial is a right ... protected by the due process clause of the Fourteenth Amendment." *Adamson v. People of State of California,* 332 U.S. 46, 53, 67 S.Ct. 1672, 91 L.Ed. 1903 (1947) (footnote omitted).

FN16. Petitioner asserts that his wallet contained a check in the amount of $325.00, and that had Campbell been able to refer to such check during the cross-examination of Brozost, Campbell would have established that Brozost had "lied" during the course of his testimony. Am. Pet. at 22; *see also Pro Se* Appellate Brief at 42.

FN17. The Court notes that Campbell's counsel referred to the contents of Campbell's wallet, and successfully moved for the wallet's admission into evidence, at Campbell's trial. *See* Trial Tr. at 366-69.

FN18. Campbell's related argument that he is entitled to federal habeas relief because the district attorney could not provide Campbell with either his wallet or its contents in April, 2002 following a Freedom of Information Act request apparently made by Campbell, *see* Am. Pet. at 23; *see also* Appendix at C122, is similarly meritless

because the defense was in possession of the wallet, and its contents, at the time of Campbell's trial. Moreover, Campbell and his attorney were specifically advised by the trial court that once petitioner's wallet was received into evidence, that wallet "would remain a permanent part of [the trial] record and therefore inaccessible" after the trial. Trial Tr. at 368.

FN19. Campbell's habeas claim which alleges that he is entitled to a new trial because of prosecutorial misconduct that purportedly occurred at Campbell's sentencing is rejected for two reasons. First, any misconduct on the part of the prosecutor at Campbell's sentencing-which necessarily occurred *after* his criminal trial had ended-could not have deprived Campbell of his right to a fair trial. Second, petitioner has not demonstrated that the prosecutor in fact engaged in any misconduct at the sentencing hearing. *See, e.g.,* Sentencing Tr.

FN20. The trial court denied Campbell's initial request for replacement counsel due to his obstinate refusal to advise the trial court of the basis for his claim that his counsel labored under a conflict of interest. *See* October, 1998 Transcript at 2-5. The county court subsequently granted Campbell's request for replacement counsel on January 21, 1999. *See* January, 1999 Hearing at 10-11.

FN21. Although it does not appear as though Campbell ever asserted an access-to-courts claim in the state courts below, respondent has not argued that this ground must be dismissed due to petitioner's failure to exhaust his state court remedies. *See* Resp. Mem. Therefore, it would be improper for this Court to *sua sponte* dismiss this claim on this procedural basis. *E.g., Acosta v. Artuz,* 221 F.3d 117, 121 (2d Cir.2000) (courts should generally not raise *sua sponte* nonjurisdictional defenses not raised by the parties); *Klem v. Brunelle,* 96-CV-0807, 1999 WL 603824, at *2 n. 3 (W.D.N.Y. Aug.9, 1999) (exhaustion requirement applicable to habeas petitions is not jurisdictional but rather a principle of comity) (citation omitted). Accordingly, this Court has not *sua sponte* considered whether this final ground for relief is procedurally

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

barred because it was not fully exhausted by him in the state courts.

FN22. Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed.R.App.P. 22(b).

N.D.N.Y.,2006.
Campbell v. Greene
--- F.Supp.2d ----, 2006 WL 2040062 (N.D.N.Y.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 758350 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Kenneth L. GUINN, Petitioner,
v.
Thomas L. CARROLL, Warden, Respondent.
**No. Civ.A. 03-524-JJF.**

Feb. 24, 2004.

Kenneth L. Guinn, Petitioner, pro se.
Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, for Respondent.

*MEMORANDUM OPINION*

FARNAN, J.

### I. INTRODUCTION

*1 Petitioner Kenneth L. Guinn is a Delaware inmate in custody at the Delaware Correctional Center in Smyrna, Delaware. Currently before the Court is Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and a Motion for the Appointment of Counsel. (D.I.2, 3.) For the reasons that follow, the Court concludes that Petitioner's habeas petition does not assert a claim cognizable on federal habeas review. Accordingly, the Court will deny his petition without reaching the merits of his claim, and deny his Motion for the Appointment of Counsel as moot. (D.I.s 2, 3.)

### II. BACKGROUND

On February 8, 2000, Petitioner pled guilty to one count of aggravated menacing (11 DEL. C. ANN. § 602(b)) and one count of possession of a firearm by a person prohibited (11 DEL. C. ANN. § 1148). The Delaware Superior Court sentenced him to a total of five years incarceration on the aggravated menacing, and three years imprisonment on the weapons offense, to be suspended for decreasing levels of probation. State prosecutors entered a nolle prosequi on the remaining counts in the indictment.

Petitioner did not appeal his conviction or sentence, nor did he apply for state post-conviction relief.

However, Petitioner did file at least two *pro se* Motions for the Modification or Reduction of Sentence.[FN1] The Superior Court denied these Motions, and Petitioner has never appealed any of these denials to the Delaware Supreme Court. (D.I.s 2,15,16.)

> FN1. Petitioner attached a copy of a Motion for Modification of Sentence dated December 20, 2000 to his habeas petition. He also attached a copy of a Delaware Superior Court Order, dated April 30, 2003, denying a Motion for Modification of Sentence for being repetitive. (D.I.2, Attachments.) In his "Reply to Respondent's Answer," Petitioner appears to allege that he followed the advice of counsel in waiting to file a Motion for Reduction or Modification of Sentence. (D.I.16.) Petitioner attached copies of correspondence with the Superior Court, his June 18, 2002 Motion for Reduction of Sentence, and the Superior Court's November 7, 2001 Order denying his Motion. *Id.*

On May 30, 2003, Petitioner filed the federal habeas petition currently before the Court. Reading the petition in conjunction with Petitioner's "Reply to Respondent['s] Answer," (D.I.s 2, 16.), Petitioner appears to challenge the Delaware Superior Court's denial of his first Motion for Modification of Sentence for being time-barred. (D.I.16.)

Respondent has filed an Answer asking the Court to dismiss Petitioner's federal habeas claim for failure to assert a claim cognizable on federal habeas review.

Petitioner's federal habeas petition is now ripe for review.

### III. DISCUSSION

A federal district court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based on errors of state law are not cognizable on federal habeas review. *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Riley v. Harris,* 277 F.3d 261, 310 n. 8 (3d Cir.2001). Moreover, "habeas

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 758350 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

corpus relief is not available when a prisoner challenges errors in state postconviction procedures ." *Ferguson v. State,* 1996 WL 1056727, at *13 (D.Del. Dec. 13, 1996).

In the present case, Petitioner appears to be challenging the Delaware Superior Court's denial of his first Motion for Modification of Sentence for being time-barred. However, as Respondent correctly argues, this claim fails to assert a cognizable ground for federal habeas review.[FN2] Rather, Petitioner's claim asserts a state law error. Accordingly, the Court cannot consider the merits of the claim.

> FN2. Because this claim is not cognizable, the Court need not consider whether it is exhausted. *See Tillett v. Freeman,* 868 F.2d 106, 108 (3d Cir.1989).

**\*2** Additionally, Petitioner has filed with the Court a Motion for the Appointment of Counsel. (D.I.3.) Petitioner asserts that counsel should be appointed because: 1) he is incarcerated; 2) he is unskilled in the law; 3) his access to the law library is limited; and 4) appointment of counsel would serve "the best interests of justice." *Id.*

It is well settled that Petitioner does not have a Sixth Amendment right to counsel in this habeas proceeding. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). However, a district court may appoint counsel to represent an indigent habeas petitioner "if the interest of justice so requires." Rule 8(c), 28 U.S.C. *foll.* § 2254. As explained above, the Court is dismissing Petitioner's § 2254 petition because it fails to allege a ground cognizable on federal habeas review. In this circumstance, the "interests of justice" do not require the appointment of counsel. *See* 18 U.S.C. § 3006A(a)(2)(B). Thus, the Court will deny Petitioner's Motion for the Appointment of Counsel.

### IV. Certificate of Appealability

Finally, the Court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that

reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

For the reasons stated above, the Court concludes that Petitioner has failed to present the Court with a claim cognizable on federal habeas review. Reasonable jurists would not find this conclusion unreasonable. Consequently, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

### V. CONCLUSION

For the foregoing reasons, Petitioner's request for habeas relief filed pursuant to 28 U.S.C. § 2254 will be denied.

An appropriate Order will be entered.

### ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:
1. Petitioner Kenneth L. Guinn's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.I.2.) is DENIED.
2. Petitioner's Motion for Appointment of Counsel (D.I.3.) is DENIED as moot.
3. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

D.Del.,2004.
Guinn v. Carroll
Not Reported in F.Supp.2d, 2004 WL 758350 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00524 (Docket) (May. 30, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1540823 (D.N.J.)
**(Cite as: Slip Copy)**

Page 1

Briefs and Other Related Documents
Only the Westlaw citation is currently available.NOT
FOR PUBLICATION
United States District Court,D. New Jersey.
Gregory OLIVER, Petitioner,
v.
Roy L. HENDRICKS, et al., Respondents.
**No. Civ.A. 04-4219(JAG).**

May 31, 2006.

Gregory Oliver, # 295179A, New Jersey State Prison,
Trenton, New Jersey, Petitioner pro se.
Terry Bogorad, Senior Assistant Prosecutor, Passaic
County Prosecutor's Office, Paterson, New Jersey, for
Respondents.

*OPINION*
GREENAWAY, Jr., District Judge
**\*1** Gregory Oliver filed a Petition for a Writ of
Habeas Corpus, pursuant to 28 U.S.C. § 2254(a),
challenging a judgment of conviction in the Superior
Court of New Jersey. Respondents filed an Answer,
arguing that the Petition should be dismissed on the
merits. Petitioner filed a Traverse. For the reasons
expressed below, this Court shall dismiss the Petition
with prejudice and decline to issue a certificate of
appealability. *See* 28 U.S.C. § § 2253(c), 2254(a),
(b), (c).

*I. BACKGROUND*

Petitioner challenges a judgment of conviction, filed
on November 8, 1996, in the Superior Court of New
Jersey, Law Division, Passaic County, after a jury
convicted him of first degree robbery and aggravated
assault.[FN1] The Law Division sentenced Petitioner to
a life sentence with no eligibility for parole under the
Persistent Offender Accountability Act or Three
Strikes Law, N.J. Stat. Ann. § 2C:43-7.1a. Petitioner
appealed, challenging the constitutionality of the
Persistent Offender Accountability Act. The
Appellate Division of the Superior Court of New
Jersey affirmed. *State v. Oliver,* 316 N.J.Super. 592
(App.Div.1998). The Supreme Court of New Jersey
granted certification and, on February 28, 2000,
affirmed. The Court ruled that the Three Strikes Law
was constitutional, and that Petitioner's 1979 pre-
code robbery conviction qualified as a "strike." *State*

*v. Oliver,* 162 N.J. 580 (2000).

> FN1. According to the New Jersey Supreme
> Court, on December 10, 1995, Petitioner
> struck the victim in the head with a metal
> pipe and stole $100 and crack cocaine. *State
> v. Oliver,* 162 N.J. 580, 584 (2000). The
> assault caused a blood clot in the brain of
> the victim and permanent brain damage. *Id.*

On or about November 1, 2000, Petitioner filed a
State petition for post-conviction relief in the Law
Division. After conducting an evidentiary hearing, on
April 16, 2002, the Law Division denied relief.
Petitioner appealed and in an opinion filed January
23, 2004 the Appellate Division affirmed the order
denying post-conviction relief. *State v. Oliver,* No. A-
5400-01T1 slip op. (App.Div. Jan. 23, 2004). The
Supreme Court of New Jersey denied certification on
June 4, 2004. *State v. Oliver,* 180 N.J. 453 (2004)
(table).

Petitioner executed the Petition which is now before
this Court on August 26, 2004. The Clerk received it
on August 31, 2004. This Court notified Petitioner of
the consequences of filing such a Petition under the
Antiterrorism and Effective Death Penalty Act
("AEDPA") and gave him an opportunity to
withdraw the Petition and file one all-inclusive
Petition, pursuant to *Mason v. Meyers,* 208 F.3d 414
(3d Cir.2000). The Petition presents eleven grounds,
which are set forth below verbatim:
Ground One: AN INADEQUATE JURY
INSTRUCTION ON ACCOMPLICE LIABILITY,
WHICH FAILED TO EXPLAIN THAT
DEFENDANT HAD TO SHARE THE PURPOSE
TO COMMIT AN ARMED ROBBERY RATHER
THAN A ROBBERY, DEPRIVED DEFENDANT
OF THE RIGHT TO DUE PROCESS OF LAW
AND A FAIR TRAIL. *U.S. CONST.* AMEND. XIV.
Ground Two: IMPROPER SUMMATION
COMMENTS, DESIGNED TO INVOKE
SYMPATHY FOR A VIRTUOUS VICTIM,
DEPRIVED DEFENDANT OF THE RIGHT TO
DUE PROCESS OF LAW AND A FAIR TRIAL.
*U.S. CONST.* AMEND. XIV.
Ground Three: THE STATE FAILED TO
ESTABLISH THAT DEFENDANT WAS
ELIGIBLE FOR AN EXTENDED TERM OF LIFE
IMPRISONMENT WITHOUT PAROLE.
**\*2** Ground Four: THE MANDATORY EXTENDED

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TERM SENTENCE OF LIFE WITHOUT PAROLE IMPOSED UNDER NEW JERSEY'S "THREE STRIKE" LAW, *N.J.S.A.* 2C:43-7.a, CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT. *U.S. CONST.* AMENDS. VIII, XIV. Ground Five: THE VIDEOTAPED DEPOSITION WAS EXTREMELY DEFECTIVE, PREJUDICIAL, UNRELIABLE AND VIOLATED RIGHT TO CONFRONTATION UNDER N.J. COURT RULE 3:13-2(B)(C); AND NEW JERSEY RULES OF EVIDENCE, RULE 804(A)(B).

Ground Six: JUDGE FALCONE'S INVOLVEMENT IN STATE WITNESS CASE WAS BIAS PREJUDICE DUE TO HIS PARTICIPATION IN CO-DEFENDANT'S VIDEOTAPE DEPOSITION AGAINST APPELLANT.

Ground Seven: STATE WITNESS EXTRA-JUDICIAL TESTIMONY WHICH CONSTITUTED IN-COURT IDENTIFICATION WAS INADMISSIBLE NOTWITHSTANDING PRIOR INCONSISTENT HEARSAY STATEMENT.

Ground Eight: WHETHER TRIAL COURT SHOULD HAVE GAVE JURY INSTRUCTION ON IDENTIFICATION, WHERE MISIDENTIFICATION WAS POSSIBLE IN VIOLATION OF THE DEFENDANT'S DUE PROCESS OF LAW.

Ground Nine: THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT.

Ground Ten: TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ADVISE THE DEFENDANT OF THE PENAL CONSEQUENCES CONCERNING THE THREE STRIKES LAW, WHICH RESULTED IN THE DEFENDANT NOT ACCEPTING THE PLEA BARGAIN THAT HAD BEEN OFFERED AND WHICH WOULD HAVE LED TO A SHORTER TERM OF INCARCERATION.

Ground Eleven: COUNSEL WAS INEFFECTIVE FOR NOT REQUESTING PROPER JURY CHARGES AND THUS THE CHARGE TO THE JURY IN ITS ENTIRETY WAS CONFUSING, MISLEADING AND PREJUDICED THE DEFENDANT.

(Pet., Addendum II, Grounds I to XI.)

The State filed an Answer, arguing, *inter alia,* that the Petition should be dismissed on the merits. Petitioner filed a Traverse.

## II. STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); *accord Barry v. Bergen County Probation Dept.,* 128 F.3d 152, 159 (3d Cir.1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips,* 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." *Engle v. Isaac,* 456 U.S. 107, 120 n. 19 (1982).

**\*3** In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[FN2] Nor may the Court recharacterize a ground asserted under state law into a federal constitutional claim.[FN3] "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Johnson v. Rosemeyer,* 117 F.3d 104, 110 (3d Cir.1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." *Smith v. Horn,* 120 F.3d 400, 414 (3d Cir.1997) (citation omitted); *see also Smith v. Zimmerman,* 768 F.2d 69, 71, 73 (3d Cir.1985).

> FN2. *See, e.g., Withrow v. Williams,* 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying *Miranda,* the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the *Miranda* warnings to be involuntary under due process criteria"); *Baker v. Barbo,* 177 F.3d 149, 156 n. 7 (3d Cir.1999) (where petition contains ground

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

FN3. *See Engle,* 456 U.S. at 119-20 & n. 19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); *Kontakis v. Beyer,* 19 F.3d 110, 116-17 & n. 10 (3d Cir.1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

A district court must give deference to determinations of state courts. *Duncan v. Morton,* 256 F.3d 189, 196 (3d Cir.), *cert. denied,* 534 U.S. 919 (2001); *Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir.1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." *Stevens v. Delaware Correctional Center,* 295 F.3d 361, 368 (3d Cir.2002). Where a federal claim was "adjudicated on the merits" [FN4] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

FN4. "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Rompilla v. Horn,* 355 F.3d 233, 247 (3d Cir.2004) (quoting *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001)). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever. *Rompilla,* 355 F.3d at 247.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the

Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is " 'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Rompilla v. Horn,* 355 F.3d 233, 250 (3d Cir.2004) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)).

Under the " 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. *Id.* at 409-10.

A court begins the analysis by determining the relevant clearly established law. *See Yarborough v. Alvarado,* 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams,* 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71, 72 (2003).

### III. DISCUSSION

#### A. Instructions

\*4 In Ground One, Petitioner asserts that the instruction on accomplice liability for first degree robbery violated due process because the judge did not properly explain that defendant had to share the purpose to commit an armed robbery. He argues:
Although the judge noted that he would later explain that responsibility as an accomplice may be equal and the same as who actually committed the crimes or

Slip Copy
Slip Copy, 2006 WL 1540823 (D.N.J.)
(Cite as: Slip Copy)

there may be responsibility in a different degree, the promised explanation was never provided. Instead the judge immediately asserted that the theory of accomplice liability was that both defendants were equally responsible for the crime charged. Nothing in the instructions suggested that the jurors might find one defendant guilty of armed robbery and the other guilty of robbery.

(Pet., Addendum II at 7.)

In rejecting Petitioner's challenge to the accomplice liability instructions, the Appellate Division found:
As a threshold matter, it is questionable whether an accomplice liability charge should have been given at all in this case because neither the State nor defendant presented that scenario.... Even if the judge should have instructed the jury that it could convict defendant of the lesser included offense of second degree robbery as Fisher's accomplice if it found that defendant's purpose was only to participate in the robbery, and not to commit armed robbery, the failure to give a *Bielkiewicz* charge is not plain error where a jury could not reasonably conclude that defendant was an accomplice. Here, there was no evidence presented that the principal may have acted with a different purpose than the accomplice. Hence, even if the judge should have more fully instructed the jury on accomplice liability, the error was harmless.

*State v. Oliver,* 316 N.J.Super. at 597.

In Ground Eight, Petitioner asserts that the failure to instruct the jury on identification violated due process because the primary issue in the case was one of identification. The Appellate Division rejected this claim on direct appeal without discussion.

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense ... must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer,* 117 F .3d 104, 110 (3d Cir.1997). As the Third Circuit explained,
It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the

instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it.

*5 *Johnson,* 117 F.3d at 110.

Petitioner is not entitled to habeas relief on Grounds One or Eight because he does not point to a federal requirement that jury instructions must include the requested particular provisions, nor does he show that the absence of these instructions deprived him of a defense which federal law provided to him. *Johnson* at 111. Moreover, Petitioner has not shown that the state's adjudication of his claims was contrary to, or involved an unreasonable application of, Supreme Court precedent. Under these circumstances, he is not entitled to habeas relief on Grounds One and Eight.

### B. Extended Term

In Grounds Three and Four, Petitioner challenges the imposition of an extended term, i.e., a life sentence without parole, under the Persistent Offender Accountability Act. In Ground Three, Petitioner argues that the New Jersey courts erred in finding that he had three predicate convictions under the Act. The New Jersey courts found that Petitioner's 1973 and 1979 "pre-Code robbery convictions under N.J.S.A. 2A:141-1 were each for a crime that is substantially equivalent to a crime of first-degree robbery, and therefore should be counted as strikes." *State v. Oliver,* 162 N.J. at 592. Habeas relief is not warranted because eligibility for an extended term under the Persistent Offender Accountability Act is a question of state law. *See Chapman v. United States,* 500 U.S. 453, 465 (1991) (under federal law, "the court may impose ... whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment"); *see also Wainwright v. Goode,* 464

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1540823 (D.N.J.)
**(Cite as: Slip Copy)**

U.S. 78 (1983).

In Ground Four, Petitioner argues that the mandatory term of life imprisonment without parole, imposed under the Persistent Offender Accountability Act for Petitioner's third robbery conviction, was contrary to, or an unreasonable application of, clearly established Eighth Amendment jurisprudence, as determined by the Supreme Court.

This argument fails, however, because the Supreme Court specifically rejected this argument in *Lockyer v. Andrade,* 538 U .S. 63, 77 (2003) (because the gross disproportionality principle under the Eighth Amendment "reserves a constitutional violation for only the extraordinary case," in applying this principle for § 2254(d)(1) purposes, the Supreme Court held that it was not an unreasonable application of clearly established Eighth Amendment law for the state court to affirm petitioner's sentence of two consecutive terms of 25 years to life for a "third strike" conviction). Further, Petitioner cites no Supreme Court precedent presenting a contrary view to *Lockyer.*

### C. Prosecutorial Misconduct

In Ground Two, Petitioner argues that the prosecutor's statements during summation violated due process because they improperly invoked sympathy for the victim. Specifically, Petitioner argues that "[t]he prosecutor's extensive praise of the victim's good character and use of his own experience to help others was nothing less than an inflammatory appeal for sympathy. The prosecutor was not content simply to point to the victim's efforts to change his life and his drug use. He went so far as to tell the jurors that the counseling and assistance to children should drive their analysis in this case." (Pet., Ground Two.)

*6 The record shows that in his summation, defense counsel noted that the victim's credibility was affected by his criminal record. (Defendant's Appellate Division Brief on Direct Appeal at 13; Ex. 3 to Answer) As he began his summation, defense counsel argued:
I recall Abraham Lincoln saying during the course of the civil war when things weren't going too good for the union, that he who stands alone stands best. Well, I'm here with him and we are standing alone against the power of the State of New Jersey. Don't you think that I feel sorry for Leon Johnson? So he's a crack dealer, so he deals in drugs, so he's got five

convictions, at least. But no one should undergo that type of injury, nor the treatment that he had to undertake.

(Transcript of Sept. 19, 1996, p. 11, lines 7 to 14.)

The prosecutor responded to this argument in his summation:
Mr. Kaiser began his remarks by referring to Leon Johnson, "Baldy," as a crack head and by applying to him a number of descriptions which were somewhat disparaging, somewhat suggesting, I submit, that he was some sort of lesser being who was not entitled to the protection of the law, that he is and was some sort of lesser being who is not worthy of your attention, is not worthy of the law, is not worthy of the protection that the law provides not only to you to me, but to him as well. And nothing could be further from the truth....

(Transcript of Sept. 19, 1996, page 19, lines 4 to 12.)

The Appellate Division rejected both claims without discussion on direct appeal.

Prosecutorial misconduct may "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974). Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them." *Id.* at 642. The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. *Darden v. Wainwright,* 477 U.S. 168, 182 (1986); *Donnelly,* 416 U.S. at 644; *Moore v. Morton,* 355 F.3d 95, 111 (3d Cir.2001).

In this case, the prosecutor's comments about the victim were made in response to an argument raised by the defense. However, the prosecutor's comments did not infect the trial with unfairness as to make the resulting conviction a denial of due process under *Donnelly,* 416 U.S. at 643. Thus, Petitioner is not entitled to habeas relief under Ground Two.

### D. Confrontation Clause

In Ground Five, Petitioner asserts that the trial judge's admission of a videotaped deposition of Petitioner's co-defendant violated his rights under the Confrontation Clause. Respondents argue that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1540823 (D.N.J.)
**(Cite as: Slip Copy)**

admission of the videotaped testimony of co-defendant Fisher did not violate the Confrontation Clause because Fisher was unavailable at trial and defense counsel cross-examined him during the videotaped deposition.

**\*7** The admissibility of evidence is generally a question of state law. *See Keller v. Larkins,* 251 F.3d 408, 416 n. 2 (3d Cir.2001); *Hickey v. Jeffes,* 571 F.2d 762, 766 (3d Cir.1978). However, the Sixth Amendment's Confrontation Clause confers rights that cannot be satisfied merely by meeting the requirements of the rules of evidence. The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This guarantee applies to both federal and state prosecutions. *Pointer v. Texas,* 380 U.S. 400 (1965). The Confrontation Clause prohibits the admission of out-of-court testimony unless "the declarant is unavailable, and ... the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington,* 541 U.S. 36, 68 (2004); *see also United States v. Lore,* 430 F.3d 190, 209 (3d Cir.2005); *United States v. Hinton,* 423 F.3d 355, 358 (3d Cir.2005).

In this case, the record shows that, prior to trial, the state moved to depose James Fisher, Petitioner's co-defendant, by videotape because Fisher suffered from cancer and might not live to testify at trial. On July 24, 1996, Fisher's oncologist testified that Fisher had a recurrence of a locally invasive malignancy of the tongue, that he was not physically fit to receive additional chemotherapy or radiation therapy, that he was terminally ill, and it was likely that he would not survive longer than six months. After cross-examining the oncologist, Petitioner's attorney stated that he did not object to deposing Mr. Fisher. (Transcript of July 24, 1996, p. 49, lines 23-25.) Fisher was brought into court and his deposition was videotaped. Although it was difficult for Fisher to speak, Petitioner's attorney cross-examined him. Fisher answered the questions posed by using hand gestures and garbled speech. Petitioner was present during the deposition. (*Id.,* pp. 78 to 97 .)

On September 10, 1996, during the trial, the trial court conducted a hearing outside the presence of the jury on the admissibility of James Fisher's deposition. After hearing testimony and cross-examination of Fisher's physician and his sister, the trial judge watched the videotaped deposition. The next day, the trial judge allowed the videotaped deposition to be shown to the jury, finding that because Fisher was

unavailable to testify at that time, Petitioner's Sixth Amendment confrontation rights were not violated.

Admission of the videotaped deposition did not violate the Confrontation Clause because Fisher was unavailable to testify at trial and he was cross-examined on the videotape. *See Crawford,* 541 U.S. at 51; *Hinton,* 423 F.3d at 359. Because the admission of a videotaped deposition was not contrary to, or an unreasonable application of, the Supreme Court's Confrontation Clause precedent, Petitioner is not entitled to habeas relief on Ground Five.

### E. Judicial Bias

**\*8** In Ground Six, Petitioner argues that the judge who entered the order permitting the videotaped deposition of James Fisher was biased because the judge was also involved in the criminal proceeding against Jamie Sisco, another co-defendant. However, a judge's failure to *sua sponte* disqualify himself does not rise to the level of a constitutional claim. *See Liteky v. United States,* 510 U.S. 540, 551 (1994) ("Also not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant"); *United States v.. Schreiber,* 599 F.2d 534 (3d Cir.1979) (trial judge did not commit plain error in failing *sua sponte* to recuse himself in a non-jury criminal trial where judge had previously presided over a jury trial in which same defendant had been found guilty of similar charges).

Here, the judge's failure to *sua sponte* disqualify himself was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, Petitioner is not entitled to habeas relief on Ground Six.

### F. Admission of Evidence

Petitioner argues in Ground Seven that "State Witness Extra-Judicial Testimony Which Constituted In-Court Identification Was Inadmissible Notwithstanding Prior Inconsistent Hearsay Statement." (Pet., Ground 7.) As factual support, Petitioner asserts that the admission of Jamie Sisco's testimony that he was present during the crime and that Petitioner was a participant was inconsistent with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Sisco's prior written statement read to the grand jury. The government argues that Ground Seven does not state a federal claim and that, in any event, Sisco's inconsistent statements inured to Petitioner's benefit.

Petitioner does not assert that the admission of Sisco's testimony violated his federal constitutional rights, and the admissibility of evidence is generally a question of state law which is not cognizable under habeas review. *See Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir.2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"); *Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir.1978) ("As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling ... that error was at best one of interpretation of the state's law of evidence and did not [ ]rise to constitutional dimensions").

The state court's adjudication of Petitioner's claim regarding the admission of Sisco's testimony did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Petitioner is not entitled to habeas relief under Ground Seven.

### G. Ineffective Assistance of Counsel

*9 In Grounds Nine, Ten, and Eleven, Petitioner argues that trial counsel was constitutionally ineffective in failing to investigate properly, failing to ensure that the table in the room where the incident occurred was tested for fingerprints, failing to object to the introduction of prejudicial hearsay testimony from Detective Jordan, failing to advise Petitioner that he was subject to a life term under the Persistent Offender Accountability Act before Petitioner rejected a plea offer of 20 years, and failing to request proper jury charges.

The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. "A convicted defendant making a claim of ineffective

assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.* Second, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

In this case, Petitioner presented his ineffective assistance of counsel claims on post-conviction review. The Appellate Division rejected these claims for the reasons set forth by Judge Riva in his letter opinion of March 26, 2002. *State v. Oliver*, No. A-5400-01T4 slip op. (App.Div. Jan. 23, 2004). Judge Riva conducted an evidentiary hearing on Petitioner's ineffective assistance of counsel claims and heard the testimony of defense counsel. Judge Riva determined that Petitioner had not shown deficient performance or prejudice.

Applying the *Strickland-Cronic-Fritz* standard to the facts of this case, I hold ... that Oliver has failed to prove by a preponderance of the credible evidence that either his trial or appellate counsel was constitutionally ineffective. There is no credible evidence that either trial or appellate counsel was "deficient." The record is devoid of evidence suggesting a complete denial of Oliver's right to counsel. In fact, Oliver does not assert such a claim. Likewise, no credible evidence exists that Oliver was "actually prejudiced." In other words, there is no rational basis for me to conclude that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceedings would have been different....

*10 (Opinion of Law Div. dated March 26, 2002, Ex. 16 to Answer.) [FN5]

> FN5. For example, Judge Riva determined that counsel was not deficient in failing to have the table tested for fingerprints because "the failure of the State to secure such evidence inured to Oliver's benefit since there was no fingerprint or DNA evidence tending to inculpate Oliver by placing him at the crime scene." p. 14.

This Court has carefully reviewed the record on post-conviction review regarding Petitioner's claim that counsel failed to inform him during plea negotiations

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1540823 (D.N.J.)
**(Cite as: Slip Copy)**

Page 8

of his exposure to an extended term as a persistent offender. The Third Circuit has held that counsel's failure to inform the defendant about his sentencing exposure constitutes deficient performance. *See Baker v. Barbo,* 177 F .3d 149 (3d Cir.1999) ("we must hold that an attorney who does not know the basic sentence for an offense at the time that his client is contemplating entering a plea is ineffective"); *United States v. Day,* 969 F.2d 39, 43 (3d Cir.1992).

Petitioner's trial counsel testified before Judge Riva. Judge Riva found that counsel knew during plea negotiations that the prosecution intended to seek an extended sentence under the Persistent Offender Accountability Act, that counsel informed Petitioner about the applicability of the Act, and that Petitioner rejected the state's initial plea offer of 20 years, with 10 years of parole ineligibility, based upon his belief that Fisher's health would prevent him from testifying against Petitioner.

Factual determinations, such as those made by Judge Riva, "are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003).

Judge Riva's factual determinations are not objectively unreasonable in light of the testimony heard by Judge Riva, and Petitioner has not presented clear and convincing evidence to the contrary. Under these circumstances, Petitioner has not shown that the advice he received was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer." *Day,* 969 F.2d at 43; *see also Hill v. Lockhart,* 474 U.S. at 56-57; *Von Moltke v. Gillies,* 332 U.S. 708, 721 (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered").

Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims because he has not shown that the adjudication of the claims by the New Jersey courts resulted in a decision that was contrary to, or involved an unreasonable application of, Supreme Court jurisprudence.

### *H. Certificate of Appealability*

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2). *See Miller-El v. Cockrell,* 537 U.S. 322 (2003).

### *IV. CONCLUSION*

**\*11** Based on the foregoing, this Court shall dismiss the Petition with prejudice and decline to issue a certificate of appealability under 28 U.S.C. § 2253(c).

D.N.J.,2006.
Oliver v. Hendricks
Slip Copy, 2006 WL 1540823 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2:04cv04219 (Docket) (Aug. 31, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.