# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANDREW E. WARRINGTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 06-66-GMS |
| | ) | |
| PERRY PHELPS, Warden, | ) | |
| and JOSEPH R. BIDEN, III, Attorney | ) | |
| General of the State of Delaware, | ) | |
| | ) | |
| Respondents.[1] | ) | |

Andrew E. Warrington. *Pro se* petitioner.

Elizabeth R. McFarlan and Kim Ayvzian, Deputy Attorney Generals, Delaware Department of Justice, Wilmington, Delaware. Attorneys for respondents.

## MEMORANDUM OPINION

March 16, 2009
Wilmington, Delaware

---

[1] Attorney General Joseph R. Biden, III replaced former Attorney General Carl C. Danberg, an original party to this case, and Warden Perry Phelps replaced Warden Thomas Carroll, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).

Sleet, Chief Judge

## I. INTRODUCTION

Petitioner Andrew E. Warrington ("Warrington") is an inmate at the Delaware

Correctional Center in Smyrna, Delaware. Warrington filed the pending petition for a writ of

habeas corpus ("petition") pursuant to 28 U.S.C. § 2254. (D.I. 1.) For the reasons that follow,

the court will dismiss his petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As detailed by the Delaware Supreme Court in Warrington's direct appeal, the facts of his

case are as follows:

> Robert Wesley Warrington ("Wes"), then 22, and Andrew Warrington, ["Warrington"],
> then 18, are brothers who lived with their father at 100 Port Lewes in Sussex County.
> Wes owed an acquaintance, Jesse Pecco, approximately $800 for drugs that Wes had
> consumed instead of selling. In order to partially repay the debt, Wes forged a check
> from his father's bank account, making it out to himself in the amount of $700. Wes
> gave the check to Pecco on Friday, August 11, 2000, and the two men agreed to meet on
> Monday to cash the check.
>
> Pecco did not go to the meeting place. Instead, he drove to 100 Port Lewes, and parked
> his car directly behind Wes's car so as to immobilize it. Pecco then entered the dwelling
> through its unlocked front door. [Warrington], who was upstair watching television,
> heard shouts coming from the first floor. When he went downstairs to see what was
> happening, he found Pecco involved in a physical struggle with Wes. [Warrington] soon
> realized that the two were fighting over control of a knife that Pecco was holding.
> [Warrington] struck Pecco from behind, causing him to release the knife. According to
> Wes, Pecco then had the opportunity to leave the house, but instead chased [Warrington],
> who had fled up the stairs. Both brothers maintain that Pecco was the aggressor in the
> fight, and that they believed he posed a threat.
>
> The two brothers testified that they gained the upper hand as Wes stabbed Pecco
> repeatedly with the knife and [Warrington] struck him repeatedly with a fireplace poker.
> Ultimately it was determined that Pecco sustained thirteen stab wounds, including one
> that penetrated his left lung, and one that penetrated his heart. Expert testimony at trial
> revealed that he also suffered eight blunt-force blows to the head, causing a fractured
> skull and subdural hemorrhaging. Among Pecco's injuries were deep incise stabs to his

1

hands, characteristic of defensive wounds.

> During the altercation, a 911 call was made from the Warrington residence. DNA from blood marks found on the telephone used to make the call matched Pecco's DNA. One of these marks was located next to the "one" button on the telephone, indicating that hit was Pecco who dialed the emergency number. [Warrington] gave a conflicting account, saying that it was he who dialed the number, only to have Pecco knock the phone from his hands. The jury listened to the sounds of the fight, as recorded on the 911 tape, before reaching its conclusion regarding self-defense. The tape revealed that, towards the end of the fight, Pecco was pleading with the brothers to stop attacking him. He asked, "Why are you guys trying to kill me?" To which one of the brothers responded, "good reasons." As he died, Pecco said, "Wes, show me some love. Give me a hug before I die. Give me a hug." Testimony demonstrated that [Warrington] responded by kicking him in the face and telling him to shut up.

*Warrington v. State*, 840 A.2d 590, 591 (Del. 2003).

Warrington and his brother Wes were arrested and subsequently indicted on charges of first degree murder, two weapons offense, and first degree conspiracy. In November 2001, a Superior Court jury found both Warrington brothers guilty of first degree murder, possession of a deadly weapon during the commission of a felony, and first degree conspiracy. *Warrington v. State*, 2006 WL 196437, at 81 (Del. Jan. 24, 2006). Warrington was sentenced to life imprisonment plus twenty-five years, and his convictions and sentences were affirmed on direct appeal. *Warrington v. State*, 840 A.2d 590 (Del. 2003).

In March 2004, Warrington filed a motion for post-conviction relief pursuant to Delaware Superior Court Rule 61 ("Rule 61 motion") raising twelve grounds for relief, including numerous allegations of ineffective assistance of counsel. After holding an evidentiary hearing and considering the defense attorney's affidavit and the State's response, the Superior Court denied Warrington's Rule 61 motion. Warrington appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment. *See Warrington*, 2006 WL 196437, at *1.

Warrington timely filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254, the State filed an answer, and Warrington filed a reply. (D.I. 1; D.I. 17; D.I. 22.)

Warrington's petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to
the judgment of a State court shall not be granted unless it appears that –

3

> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines*, 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the

4

claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

5

clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Warrington asserts the following nine grounds for relief in his petition: (1) defense counsel provided ineffective assistance at trial and on appeal; (2) the grand jury indictment was faulty; (3) the prosecution was vindictive in nature; (4) his conviction was obtained by using inadmissible evidence; (5) there was insufficient evidence to support the conviction; (6) the

6

prosecution committed various *Brady* violations; (7) his conviction was obtained through the use of out-of-court-statements; (8) the jury instruction on self-defense was faulty; and (9) he was improperly denied counsel at the post-conviction evidentiary hearing. (D.I. 1; D.I. 5.)

The State contends that claims one, four, six, and seven do not warrant federal habeas relief under § 2254(d)(1); claims two, three, and five are procedurally barred from federal habeas review; and claims eight and nine do not present issues that are cognizable on federal habeas review. The court will review the claims in seriatim.

## A. Claim one: ineffective assistance of counsel

In claim one, Warrington contends that trial counsel provided ineffective assistance by: (1) failing to investigate or challenge the admissibility of improperly collected evidence; (2) failing to move for a change of venue in the face of massive pre-trial publicity; (3) failing to file a motion to sever Warrington's case from his brother's; and (4) failing to prepare himself or Warrington for trial because counsel was on vacation for three months prior to the starting date of the trial. Warrington also contends that counsel provided ineffective assistance on appeal by failing to re-argue the factual circumstances supporting the self-defense theory presented at trial. Warrington presented these claims to the Superior Court in his Rule 61 motion. The Superior Court denied the claims, and the Delaware Supreme Court affirmed that decision. In these circumstances, Warrington will only be entitled to relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S.

7

668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, the Delaware Supreme Court identified *Strickland* as the proper standard and analyzed Warrington's allegations regarding counsel's performance within its framework. Therefore, the state supreme court's decision is not contrary to *Strickland*. *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"). The court will separately review the adjudicated ineffective assistance of counsel allegations to determine whether the Delaware Supreme Court reasonably applied *Strickland* in denying those allegations.

> 1. Trial counsel failed to investigate the admission of improperly collected evidence and he failed to challenge the grand jury's indictment as being obtained by using "fruit of the poisonous tree."

8

After the Warrington brothers were arrested, the police collected several articles of clothing they were wearing as evidence, including a black sweatshirt and a blue sweatshirt. During the trial, trial counsel objected to the admission of the black sweatshirt, asserting that the police mislabeled it as belonging to Warrington when, in fact, it was Wes' sweatshirt. The trial court overruled the objection and admitted both sweatshirts as evidence on the basis of the testimony given by the officer who collected the clothing. (D.I. 20, App. to State's Ans. Br. in *Warrington v. State*, No.34,2005, at B-29 to B-45.)

Warrington now contends that trial counsel erred by failing to challenge the admissibility of the black sweatshirt because it was incorrectly labeled as belonging to him. Warrington presented the same issue in his Rule 61 proceeding. The Delaware Superior Court denied the claim as conclusory, and the Delaware Supreme Court affirmed that decision while also finding that Warrington did not establish the requisite prejudice under *Strickland*. In light of the fact that counsel did, in fact, object to the admission of the black sweatshirt, the court concludes that the Delaware Supreme Court's decision does not warrant relief under § 2254(d)(1).

Warrington also contends that counsel should have challenged the validity of the indictment because it was obtained by using evidence that was "fruit of the poisonous tree." Although unclear, Warrington appears to assert that counsel should have objected to the indictment as being improperly based on a statement he gave to the police while he was under the influence of marijuana. Warrington presented this claim on post-conviction appeal, and the Delaware Supreme Court denied the claim for lack of prejudice.

Nothing in the record indicates that Warrington was under the influence of marijuana when he gave this statement. Therefore, the court concludes that the Delaware Supreme Court

9

reasonably applied *Strickland* in denying this claim.

## 2. Trial counsel failed to move for a change in venue

Warrington contends that trial counsel should have moved for a change in venue given the massive pre-trial publicity surrounding his case. When asked during the Rule 61 evidentiary hearing why he did not file such a motion, counsel explained that, in his experience, courts never granted them, and he preferred to use his time on other more attainable efforts. (D.I. 20, App. to State's Ans. Br. in *Warrington v. State*, No.34,2005, at B-144 to B-145.) In its written decision, the Superior Court agreed with counsel, stating that a change in venue motion would not have been granted even if counsel had filed one. The Superior Court noted that the amount of pre-trial publicity generated in Warrington's case was no different than any other murder case, and that the trial court did not have difficulty seating twelve impartial jurors. *State v. Warrington*, ID No. 0008014979(R-1), Letter Op., at pp. 6-7 (Del. Super. Ct. Jan. 6, 2005).

It is well-settled that an attorney does not provide ineffective assistance by failing to raise meritless objections or arguments. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). In turn, on habeas review, the court must defer to the Delaware state court's application of Delaware law. *See Bradshaw v. Richey*, 546 U.S. 74, 126 S.Ct. 602, 604 (2005)(citing *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991). Given the Superior Court's finding that a change in venue motion would not have been successful, and the Delaware Supreme Court's affirmation of that conclusion, counsel did not perform ineffectively by failing to seek a change in venue. Accordingly, the court concludes that this claim does not warrant relief under § 2254(d)(1).

## 3. Trial counsel failed to file a motion to sever

As he did in his Rule 61 proceeding, Warrington alleges that counsel performed

10

deficiently by failing to file a motion to sever his case from his brother's. The Delaware
Supreme Court denied this claim after determining that Warrington failed to demonstrate the
requisite prejudice under *Strickland.*

After reviewing the record, the court concludes that the Delaware Supreme Court's
decision did not involve an unreasonable application of *Strickland.* For instance, counsel
testified during the Rule 61 evidentiary hearing that he believed Warrington and his brother
wanted to be tried together. Counsel also explained that he saw an advantage in having the cases
tried together, because "two minds are better than one," and that there was a risk involved in
severing the cases because Warrington might not have had the benefit of his brother's testimony
if Warrington's case was tried first. (D.I. 20, Appellant's Op. Br. in *Warrington v. State*,
No.34,2005, at A-92) In addition, the record reveals that counsel for both defendants shared
resources, both lawyers cooperated in the pre-trial investigative portions of the cases as well as
during the trial, and there were no antagonistic defenses. Warrington, however, has provided
only his own unsubstantiated belief that he suffered prejudice by being tried with his brother.
Accordingly, the court concludes that the Delaware Supreme Court reasonably applied *Strickland*
in determining that Warrington failed to demonstrate prejudice stemming from counsel's failure
to file a motion to sever.

### 4. Trial counsel was on vacation for three months prior to trial

Warrington generally contends that trial counsel did not adequately prepare for trial or
prepare Warrington for trial because counsel was away on vacation for the three months prior to
trial. The Delaware Supreme Court denied this claim for lack of prejudice. The court concludes
that the Delaware Supreme Court's decision does not warrant relief under § 2254(d)(1). First,

11

the record belies Warrington's assertion that counsel was "on vacation" for three months; defense counsel stated during the Rule 61 hearing that he was on vacation at some point in October 2001. (D.I. 20, Appellant's Op. Br. in *Warrington v. State*, No.34,2005, at A-94.) Moreover, as noted by the Superior Court during the post-conviction evidentiary hearing, pre-trial preparations extended over a full year. *Id.* at A-916. Considering the Superior Court's finding that counsel and/or his defense team met with Warrington numerous times and that they communicated with Warrington regularly, Warrington has failed to demonstrate how he was prejudiced by counsel's vacation in October 2001. *Id.* at A-94. Thus, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying this claim.

Warrington also alleges one specific failure of trial counsel in preparing for trial, namely, that trial counsel should have objected to the admission of the statement Warrington made to the police while under the influence of narcotics or marijuana. However, both the Superior Court and the Delaware Supreme Court denied this claim for lack of prejudice, and the court concludes that their denials constituted reasonable applications of *Strickland*. As previously discussed, the record does not support Warrington's assertion that he was under the influence of marijuana when he gave his statement to the police. Moreover, the State only used Warrington's statement in its case-in-chief to show that Warrington admitted having possession of a fireplace poker during the incident, and the element of possession was supported by Warrington's own testimony that he used the poker to knock the knife out of the victim's hand and that he hit the victim numerous times with the poker. Third, the issue at trial was whether the victim's death was the result of self-defense or murder; therefore, the tape-recorded 911 call containing the victim's voice pleading for his life, which was played during the State's rebuttal, was more likely to have

12

convinced the jury that Warrington was guilty of murder than was his statement concerning the fireplace poker. And finally, Warrington's statement may have actually resulted in his acquittal on the second deadly weapon count involving the knife. Accordingly, this claim does not warrant relief under § 2254(d)(1).

### 5. Counsel's performance on direct appeal

The premise of Warrington's defense theory was that he and his brother Wes acted in self-defense within their dwelling. To support that theory, both Warrington and Wes testified that Jesse Pecco, the victim, came to their home and was the initial aggressor, that he threatened Wes with a knife, and that he continued to lunge at them and refused to leave their home even after he was injured. In rebuttal, the State admitted the recorded 911 telephone call as evidence to support its theory that the brothers did not act in self-defense. At the close of the trial, the Superior Court instructed the jury on the doctrine of self-defense within a dwelling as follows:

A defense raised in this case is justification . . . The defense stems from the defendants' assertion that, at the time in question, their actions were justified. The elements of the defense of justification, in this case, are as follows: (1) That the defendants were in their own dwelling at the time of the incident. (2) That Mr. Pecco was an intruder unlawfully in defendants' dwelling at the time of the incident . . . . (3(b)) That the defendants reasonably believed that Mr. Pecco would inflict personal injury upon them . . .

In considering the defendants' reasonable belief . . . you may consider whether a reasonable man in the defendants' circumstances would have reasonably believed that the intruder would inflict personal injury upon them. You should, however, keep in mind, that it is the defendants' state of mind which is at issue here and that it is only required that they, in fact, believed the intruder would inflict personal injury upon them. If, after considering all the evidence to support the defense of justification, you find that such evidence raises a reasonable doubt in your minds as to the defendants' guilt, you should find the defendants not guilty of the crime charged.

*Warrington*, 840 A.2d at 592. At another point in the instruction, the judge clarified,

As to the justification defense of a person unlawfully in a dwelling, if you find Mr. Pecco

13

> an intruder unlawfully in the defendant's dwelling and if the defendant overcame Jesse Pecco so that the defendant no longer believed he was in danger of physical injury, and therefore, the defendant knew the use of deadly force was no longer necessary, then the continued use of deadly force was not justified. In other words, if a person is initially justified in defending himself, but then knows that the danger to him has passed, then the subsequent use of deadly force is not justified.

*Id.* The jury ultimately found Warrington guilty of murder.

The only issue raised by counsel on direct appeal concerned the trial court's jury instruction on self-defense, particularly with respect to the judge's clarification that, "if a person is initially justified in defending himself, but then knows that the danger to him has passed, then the subsequent use of deadly force is not justified." *Warrington*, 840 A.2d at 592. Counsel argued that the clarification was improper, asserting that the right of self-defense was triggered due to an aggressor being in Warrington's dwelling, then that right continued and Warrington had a "license to kill" even after Pecco had been totally subdued. The Delaware Supreme Court disagreed with counsel's argument, specifically holding that the trial court correctly stated the law in Delaware, and that self-defense in a dwelling would only be a justification in Warrington's case if Warrington's use of force against Pecco occurred contemporaneously with his reasonable belief that Pecco would inflict physical injury upon him or his brother. *Id.* at 593.

Now, in this proceeding, Warrington alleges that counsel performed ineffectively on direct appeal because he argued "from the standpoint that [Warrington] willed the intruder's death, which is not true"; according to Warrington, counsel should have argued that Warrington was trying to stay alive and protect his brother's life. (D.I. 6, at p. 10) Although not entirely clear, Warrington appears to find fault with the manner in which counsel presented the issue on appeal, asserting that counsel should have reargued the facts of the case to demonstrate that

14

Warrington acted in self-defense. Warrington presented the same claim during his state collateral proceeding, but both the Superior Court and the Delaware Supreme Court rejected the argument on the basis that Warrington had failed to establish both deficient performance and prejudice.

In order to establish ineffective assistance of counsel due to counsel's failure to raise certain issues on appeal, Warrington must show that the outcome of the appeal would have been different but for counsel's failure to raise those issues. *See Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). When determining if counsel performed ineffectively, a reviewing court must keep in mind that an appellate attorney is only obligated to present the issues he or she deems most likely to succeed on appeal, rather than every non- frivolous claim suggested by his client, and that such choices are owed deference under *Strickland*. Moreover, methods of case presentation are within counsel's professional judgment, to which this court must also give great deference under *Strickland*. *Strickland*, 466 U.S. at 688-89; *See Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). And finally, when evaluating Warrington's claim within the framework established by *Strickland*, the court must defer to the Delaware Supreme Court's holding that the defense of justification in Delaware is only available when the defendant's use of deadly force against an intruder occurred contemporaneously with the defendant's reasonable belief that the intruder would inflict personal injury upon the defendant or others in the dwelling. *See Bradshaw v. Richey*, 546 U.S. 74, 126 S.Ct. 602, 604 (2005)(explaining the well-established precedent that a federal court on habeas review is bound by a state court's interpretation of state law).

In Warrington's case, defense counsel's appellate argument that the trial court improperly

15

instructed the jury on self-defense in one's home focused on Delaware statutory and case law
without any specific reference to the factual circumstances supporting Warrington's self-defense
claim. *See* (D.I. 18 in *Warrington v. Phelps*, 06-67-GMS (Appellant's Op. Br. in *Warrington v.
State*, No.72,2002)). Nevertheless, counsel's decision to focus on the law does not constitute
ineffective assistance. The evidence demonstrated that Warrington continued to attack Pecco
with the fireplace poker even after Pecco was incapable of inflicting injury upon Warrington or
his brother. Consequently, merely reiterating the factual circumstances without challenging the
trial court's instruction on self-defense would only have underscored the fact that Warrington's
belief that Pecco would harm him was not contemporaneous with his use of force against Pecco.
Considering that counsel could not change the facts of the situation, the best alternative was to
challenge the trial court's determination that the use of force had to be contemporaneous with the
reasonable belief of harm. Interestingly, Warrington does not assert that his use of force against
Pecco occurred contemporaneously with his belief that Pecco was going to harm him or his
brother. Accordingly, the court concludes that the Delaware Supreme Court did not
unreasonably apply *Strickland* in denying the instant ineffective assistance of appellate counsel
claim.

### B. Claim two: invalid grand jury indictment

In claim two, Warrington contends that the grand jury indictment was not "perfected,"
and that the evidence allegedly presented to the grand jury was improperly collected and
"enhanced" to his detriment because it included statements elicited from Warrington while he
was under the influence of marijuana. Warrington exhausted state remedies for claim two by
presenting it to the Delaware Supreme Court on post-conviction appeal, but the Delaware

16

Supreme Court denied the claim as procedurally barred by Rule 61(i)(3) because Warrington did not raise the issue on direct appeal.

The court will not address the procedural default issue in this proceeding, however, because claim two fails to pass the threshold test of cognizability. More specifically, there is no federal right to indictment by a grand jury in state criminal prosecutions, therefore, absent an allegation of an independent federal constitutional violation, a grand jury claim is not cognizable on federal habeas review.[2] *See Id.; United States v. Console*, 13 F.3d 641, 671 (3d Cir. 1993). . *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972). In this proceeding, Warrington does not allege an independent constitutional issue in claim two. Accordingly, the court will deny claim two because it does not present a proper basis for federal habeas relief.

## C. Claims three and five: procedurally barred

In claim three, Warrington alleges that the prosecution was vindictive because it was based on a police report that was titled "Criminal Killed by Private Citizen." In claim five, Warrington contends that there was insufficient evidence to support his conviction for first degree murder because there was no evidence that he intended to kill the intruder. Although Warrington exhausted state remedies for claims three and five by presenting them to the Delaware Supreme Court on post-conviction appeal, the Delaware Supreme Court denied the claims as procedurally barred by Rule 61(i)(3) because Warrington did not raise them on direct appeal.

---

[2]As explained by the Supreme Court in *United States v. Mechanik*, 475 U.S. 66, 70-72 (1986), "the petit jury's guilty verdict render[s] any prosecutorial misconduct before the indicting grand jury harmless." *United States v. Mechanik*, 475 U.S. 66, 70-72 (1986).

17

By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1989) that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claims three and five absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claims are not reviewed.

Warrington alleges ineffective assistance of counsel as cause for his default of these two claims. In order for counsel's failure to preserve a claim for review in the state courts to constitute cause for a procedural default on federal habeas review, the ineffective assistance of counsel claim must have been presented to the state courts as an independent claim and counsel's assistance must have been so ineffective that it violated the Constitution. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986) (explaining that counsel's ineffectiveness in failing to preserve a claim for review in the state courts can constitute cause for a procedural default if the ineffective assistance of counsel claim was presented to the state courts and counsel's assistance was so ineffective that it violated the Constitution.) On post-conviction appeal, Warrington alleged that counsel "failed to challenge . . . the prosecution's vindictive nature in pursuing murder one charges when it was clear that no intent was present." (D.I. 20, Appellant's Op. Br. in *Warrington v. State*, No.34,2005, at p.18) The Delaware Supreme Court denied all of Warrington's allegations regarding counsel's performance due to his failure to establish prejudice. Given the cursory method by which

18

Warrington alleged ineffective assistance of counsel with respect to claims three and five in his state collateral proceeding, in addition to his failure to provide more concrete examples of prejudice in this proceeding, the court concludes that the Delaware Supreme Court's denial of the arguments constituted a reasonable application of *Strickland*. Accordingly, counsel's performance does not constitute cause for Warrington's default of these claims.

In the absence of cause, the court does not need to address the issue of prejudice.[3] In addition, Warrington cannot excuse his default under the "miscarriage of justice" doctrine because he has not provided any colorable evidence of his actual innocence. Thus, the court will deny claims three and five as procedurally barred.

**D. Claim four: inadmissible evidence**

In claim four, Warrington asserts that his conviction was improperly obtained through the presentation of the following inadmissible evidence: (1) a police statement that was obtained while Warrington was under the influence of marijuana; (2) a black sweatshirt collected by a paramedic that the State failed to test for traces of blood; and (3) the testimony provided by the

---

[3]Nevertheless, Warrington has not demonstrated prejudice stemming from his default of claim three. Warrington's vindictive prosecution claim is based on his belief that the prosecutors turned his act of self-defense into a murder charge once they learned that he and his co-defendant brother were drug dealers and users. As explained by the United States Supreme Court, "[a] charging decision does not levy an improper 'penalty' unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution." *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982). In order to present a viable claim of prosecutorial vindictiveness, the defendant must satisfy the initial burden of proof and establish the appearance of vindictiveness. *See United States v. Schoolcraft*, 879 F.2d 64, 67 (3d Cir. 1989). Here, Warrington has not demonstrated that he exercised any right that would have triggered a penalizing reaction by the prosecutor, and the court has found nothing in the record to indicate an improper or vindictive motive on the part of the prosecution. Therefore, Warrington has failed to demonstrate prejudice because he has failed to establish a viable claim of vindictive prosecution.

19

prosecutions's fingerprint expert, Hegman, because the FBI did not certify Hegman as a latent print examiner.

On post-conviction appeal, Warrington presented the three claims as one claim of inadmissible evidence consisting of a mixture of trial court error and attorney ineffectiveness. To the extent the Delaware Supreme Court considered these claims, it appears that the state supreme court denied them because Warrington did not demonstrate that any alleged error on the part of counsel resulted in prejudice to him. In this proceeding, Warrington asserts these claims independent of his ineffective assistance of counsel allegations. However, for the following reasons, the court concludes that the claims do not warrant habeas relief.

First, as for Warrington's allegation that his police statement was improperly admitted at trial because he was under the influence of marijuana when he gave the statement, nothing in the record supports that contention. Therefore, the court concludes that the claim lacks a factual basis.

Second, with respect to Warrington's claim regarding the State's failure to test the black sweatshirt for traces of blood, the court questions whether this claim even asserts an issue cognizable on federal habeas review because it appears to allege an evidentiary error under Delaware state law. Nevertheless, to the extent the claim is cognizable, Warrington has not demonstrated why the failure to test the sweatshirt for blood rendered the item inadmissible. Therefore, the court concludes that the Delaware Supreme Court's denial of this claim for lack of prejudice does not warrant habeas relief.

Finally, as for Warrington's contention regarding the failure to certify Hegman as an expert forensic latent print examiner, the record reveals that the expert had been qualified as an

20

expert in Delaware courts on more than fifty occasions. During the trial, Hegman recounted his
qualifications as a forensic latent fingerprint expert, and it was only after counsel for
Warrington's co-defendant brother questioned Hegman further that the trial court accepted him
as an expert in forensic fingerprint examinations. As a result, Warrington cannot demonstrate
that an objection to Hegman's testimony would have been sustained even if his trial counsel had
objected. Accordingly, the court concludes that the Delaware Supreme Court's denial of this
claim does not warrant relief under § 2254(d)(1).

### E. Claim six: *Brady* violations

In claim six, Warrington contends that the prosecution violated *Brady* by failing to
disclose notes or materials that were used by the DNA expert during her trial testimony.
Warrington presented this same *Brady* claim to the Superior Court in his Rule 61 motion. The
Superior Court denied the claim as conclusory, in part due to the fact that defense counsel
testified during the Rule 61 evidentiary hearing that he did not know of any basis for such a
claim. The Delaware Supreme Court affirmed that decision, stating that its review of the record
"does not reflect any factual basis whatsoever for [this] assertion." *Warrington*, 2006 WL
196437, at *2. In these circumstances, Warrington will only be entitled to habeas relief on this
claim if the Delaware Supreme Court's decision was either contrary to, or an unreasonable
application of, clearly established federal law.

A violation of *Brady v. Maryland,* 373 U.S. 83 (1963) occurs when the government fails
to disclose evidence materially favorable to the accused. The *Brady* duty extends to
impeachment evidence as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667,
676 (1985). Here, Warrington does not allege, and the record does not suggest, that the notes or

21

materials relied upon the DNA expert were exculpatory in nature, or that they constituted impeachment evidence. Therefore, the court concludes that the Delaware Supreme Court's denial of this claim does not warrant relief under § 2254(d)(1).

### F. Claim seven: improperly admitted out-of-court statements

During the course of prosecution DNA expert Jennifer Luttman's testimony, Luttman referred to a blood examination sheet filled out by a serologist who was in training under the direction of another serologist in Luttman's office at the time. In claim seven, Warrington contends that his conviction was improperly obtained through out of court statements consisting of the notes made by the trainee who did not testify. Warrington presented this claim in his Rule 61 motion, and the Superior Court denied it as meritless under Delaware Rule of Evidence 703. In turn, the Superior Court also held that trial counsel was not ineffective for not objecting to the expert's testimony on this basis. On post-conviction appeal, the Delaware Supreme Court affirmed the Superior Court's judgment, also finding that there was no factual basis for Warrington's argument.

It is well-settled that a state evidentiary error does not provide a basis for federal habeas relief absent a showing that the error deprived the petitioner a fair trial. *See Reynolds v. Ellingsworth*, 843 F.2d 712, 717 n.10 (3d Cir. 1988). To the extent Warrington's contention that his right to due process was violated by the admission of the DNA expert's testimony without her accompanying notes constitutes an issue cognizable on habeas review, the record reveals that Warrington did not fairly present the issue to the Delaware Supreme Court in terms of a federal constitutional right. Because, at this juncture, Delaware procedural rules would bar Warrington from returning to the state courts to present this federal habeas claim in a new Rule 61 motion,

22

the court must treat the claim as exhausted but procedurally defaulted. Warrington does not allege any cause for his default, and therefore, the court will not address the issue of prejudice. In turn, Warrington's default cannot be excused under the miscarriage of justice exception because he has not presented any colorable evidence of his innocence. Accordingly, the court will deny claim seven as procedurally barred.

## G. Claim eight: improper jury instructions

In his eighth claim, Warrington asserts that the trial court improperly instructed the jury regarding the definition of self-defense in one's own home. It is well-settled that habeas petitioner challenging state jury instructions will only be entitled to habeas relief by demonstrating that the jury instructions deprived him of a defense which federal law provided to him. *See Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). Here, however, Warrington only argues that the jury instructions were improper under Delaware law; he does not assert, or attempt to demonstrate, that federal law provides justification for the use of deadly force applicable to the actions in this case. *Id.* Therefore, the court will deny claim eight for failing to assert a proper basis for federal habeas relief.

## H. Claim nine: denial of counsel at Delaware post-conviction hearing

In his final claim, Warrington contends that he was improperly denied appointed counsel at his post-conviction evidentiary hearing. However, it is well-settled that Warrington had no right to counsel in his state post-conviction hearing. *Murray v. Giarratano*, 492 U.S. 1, 7-9 (1989). It is also well-settled that claims based on alleged errors occurring during a state collateral proceeding do not provide a basis for federal habeas relief. *See Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2005). Therefore, the court will deny claim nine because it fails to

23

assert an issue cognizable on federal habeas review.

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also

decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule

22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing

of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. §

2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without

reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason

would find it debatable: (1) whether the petition states a valid claim of the denial of a

constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529

U.S. at 484.

The court concludes that Warrington's petition does not warrant federal habeas relief.

Reasonable jurists would not find this conclusion to be debatable. Consequently, the court

declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, the court will deny Warrington's petition for habeas relief pursuant

to 28 U.S.C. § 2254. An appropriate order shall issue.

24

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ANDREW E. WARRINGTON, )
)
       Petitioner, )
)
v. ) Civ. A. No. 06-66-GMS
)
PERRY PHELPS, Warden, )
and JOSEPH R. BIDEN, III, Attorney )
General of the State of Delaware, )
)
       Respondents. )

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Petitioner Andrew E. Warrington's petition for the writ of habeas corpus filed

pursuant to 28 U.S.C § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I.

1.)

2. The court declines to issue a certificate of appealability for failure to satisfy 28 U.S.C.

§ 2253(c)(2) .

Dated:    March 16 , 2009

CHIEF UNITED STATES DISTRICT JUDGE